IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| CHRISTINE JONES | § | |
| | § | CIVIL ACTION NO. 1:14-CV-00103 |
| VS. | § | |
| | § | Judge Keith Giblin |
| | § | |
| TAMARA SPIKES and | § | |
| BEAUMONT INDEPENDENT | § | |
| SCHOOL DISTRICT POLICE | § | |
| DEPARTMENT | § | |

**PLAINTIFF'S OPPOSITION TO SPIKES' MOTION TO DISMISS AND IN THE
ALTERNATIVE MOTION FOR SUMMARY JUDGMENT
OR, ALTERNATIVELY,
PLAINTIFF'S MOTION TO GRANT LEAVE TO AMEND THE COMPLAINT**

## I. INTRODUCTION

1.      Plaintiff, Christine Jones, brought a § 1983 claim against Tamara Spikes ("Spikes")

and claims against Beaumont Independent School District Police Department ("BISD") in

the 136th Judicial District Court, Jefferson County, Texas. (Doc.1-2, Page ID#35)

2.      Spikes' only answer in the lawsuit has been a General Denial filed in the 136th

District Court. (Doc.1-2, Page ID#45)

3.      On February 18, 2014, Spikes filed her Notice of Removal to the United States

District Court for the Eastern District of Texas. (Doc.1)

4.      On August 7, 2014, Jones filed her Amended Complaint in the Eastern District of

Texas, Beaumont Division. (Doc.19)

5.      On August 28, 2014, Spikes filed her "Motion to Dismiss and in the Alternative,

Motion for Summary Judgment." (Doc. 25)

6.      Spikes' Motion to Dismiss was filed pursuant 12(b)(1) and 12(b)(6), or alternatively

12(c), and in the alternative, as a Motion for Summary Judgment under FRCP 56. (Doc.25)

7.    Spikes' Motion to Dismiss (Doc. 25) was also docketed as a Motion for Summary Judgment, with reference to the Motion to Dismiss. (Doc. 28)

8.    Plaintiff, Jones, files this Response to Spikes' Motion to Dismiss and Summary Judgment in a single document as the response to defendant's Doc. 25 and Doc. 28, explaining that Spikes' motion to dismiss and summary judgment should be denied because sufficient evidence exists to show:

A.    Jones' complaint satisfies the legal standards of 12(b)(6);

B.    Jones has produced sufficient evidence to satisfy Spikes' 12(b)(1) factual attack;

C.    Spikes is not entitled to qualified immunity. Spikes' actions violated clearly established statutory or constitutional rights of which a reasonable person in her situation would have known. Spikes' actions were objectively unreasonable in light of clearly established law at the time of the incident;

D.    Jones has alleged and provided sufficient facts and evidence to support a claim for excessive force;

E.    Jones' excessive force claims are controlled by the Fourth Amendment;

F.    Jones' claims against Spikes are individual claims; and

G.    Spikes' summary judgment and 12(c) motion to dismiss should be denied.

## II. STATEMENT OF FACTS

9.    On May 2, 2013, Jones pulled into the Vincent Middle School driveway to pick up her daughter from school. (Ex.1 ¶ 2)  There were cars already lined up on the right hand side of the school's driveway, so Jones pulled in through the left hand side of the driveway. (Ex.1 ¶ 3)  There was a space on the right hand side, but she could not fit her vehicle in that space.  (Ex.1 ¶ 3 & Ex. 2A-B)  There was a vehicle directly behind her and a gray vehicle a few car lengths ahead of her.  (Ex.1 ¶ 3 & Ex. 2A-B)  The driver in the gray

vehicle had exited his car and entered the school building.  (Ex.1 ¶ 3)

10.    While Jones waited in her vehicle, a lady came to her driver's side window and said, "They don't want you pulling in from the left hand side." (Ex.1 ¶ 4). [There were no signs or any traffic laws prohibiting such left hand turns.]  The lady did not advise Jones she was a police officer, and Jones did not know she was a police officer.  All Jones could see was a name tag that said, "Spikes." *Id.*  Spikes was very irritated. *Id*.  Jones told her, "Okay," and Spikes continued to tell her the reason for not pulling in from the left was because there had been a lot of accidents. (Ex.1 ¶ 5)

11.    Spikes told Jones to pull up.  (Ex.1 ¶ 6) Jones told Spikes there was nobody in the gray car because the driver had gone into the building. *Id.*  Jones asked Spikes if she would go look in the vehicle to make sure he was not there.  *Id.*  Spikes did not acknowledge what Jones had told her, and she walked away toward the back of Jones' vehicle. *Id.*

12.    Spikes came back up to Jones' vehicle and asked her again to pull up.  (Ex.1 ¶ 7) Jones told her she did not want to pull up too close to the gray vehicle since the driver was not in it, and she did not want to get trapped in behind him.  *Id.*  Spikes still had not identified herself as a police officer. *Id.*

13.    Spikes then asked Jones for her license and insurance.  (Ex.1 ¶ 8) Jones asked her if there was a problem.  *Id.*  Spikes walked to the side of Jones' vehicle to look at the vehicle identification number.  *Id.*  She then walked toward the front of the vehicle to look at the license plate. *Id.*  Spikes went to the rear of Jones' vehicle, and then made her way back to the front *side* of the vehicle.   (Ex.1 ¶ 8-9 & Ex.2C)  Jones still did not know Spikes was a police officer.  (Ex.1 ¶ 9)

14.    At that time, the traffic in the driveway began moving. (Ex.1 ¶ 10) Jones told Spikes she could pull over to the side because the gray vehicle and the truck next to it had moved. *Id.* Jones began to pull forward. *Id.* Spikes was not standing in front of Jones' vehicle, but stuck her leg out, and Jones stopped. *Id.* Jones' vehicle did not touch Spikes. *Id.* Jones turned her head to make sure it was clear for her to pull forward. *Id.* While still on the front *side* of Jones' vehicle, Spikes hollered that Jones had hit her. *Id.* Jones had not hit her and Spikes was not knocked to the ground. *Id.* Spikes remained at the front side of Jones' vehicle. *Id.* Spikes had still not identified herself as a police officer. (*Id.* & Ex. 2C-E)

15.    Jones pulled forward into the open spot in order to get out of the way of the vehicles behind her. (Ex.1 ¶ 11 & Ex. 2 F) Jones attempted to get out of her vehicle when Spikes came to her window with her gun pointing at Jones' head.  (Ex.1 ¶ 11 & Ex. 2G-I)

16.    With her gun to Jones' head, Spikes first words were, "I'm going to shoot, I'm going to fire my gun." (Ex.1 ¶ 12) She still had not identified herself as a police officer. *Id.* With her gun pointed at Jones' head, she began hollering at Jones to get out of the car. *Id.*

17.    Police officers began to arrive on the scene.  (Ex. 2 K-L [truck at top of picture coming into driveway] and Ex. 2 M [motorcycle coming from behind Jones' vehicle]) Jones got out of her vehicle as other police arrived on the scene.  (Ex.1 ¶ 13 & Ex. 2N)  Officer Spikes was the only officer to have her gun drawn, still pointing at Jones' head. *Id.* Jones was ordered  to her knees and to lay face down. (Ex.1 ¶ 13)  An officer put a knee in her back as they handcuffed her and brought her to a police car. *Id.*

18.    While the event took place, children from the middle and elementary schools were walking around. (Ex.1 ¶ 14, Ex. 2 G-O, Doc. 25-1, Exhibit A)  Many of the kids were in the line of fire, and Jones heard Mrs. Douglas, the Attendance Clerk at the school, attempt to

get the kids inside. *Id.* The other officers arrived on the scene, but they did not have their weapons drawn and apparently never determined any need to draw their weapons. (Ex.1 ¶ 14) Jones' daughter saw her mother on the ground getting handcuffed and hauled away. *Id.* Her daughter's friends saw the event happen. *Id.*

19.     Jones suffered abrasions and pain on her knees and wrists. (Ex.1 ¶ 15) Her back was sore from the officer putting a knee into it. *Id.* Jones, a registered nurse, was required to report the arrest to the Board of Nursing. (Ex.1 ¶ 16) The event caused Jones depression and anxiety. (Ex.1 ¶ 17) During the event, she feared for her life. *Id.* In her life, Jones never had someone point a gun at her head while yelling that they were going to shoot her. *Id.* She had never been involved in any kind of altercations. *Id.* Up to that day, the only law enforcement issues she ever had were minor traffic tickets. *Id.*

20.     Spikes and BISD caused criminal charges to be filed against Jones for an alleged felony aggravated assault against a public servant and a misdemeanor failure to identify by giving false or fictitious information. (Ex.1 ¶ 18) Both the criminal charges were subsequently dismissed without trial because of insufficient evidence to support the claims against Jones. *Id.*

### III. ARGUMENT AND AUTHORITIES

21.     Jones relies on the following argument and authorities, coupled with her pleadings and attached evidence (discussed in Statement of Facts above) to respond to defendant's motion to dismiss and summary judgment. The discussion and standards discussed below address: (A) satisfaction of the 12(b)(6) pleading standards; (B) satisfaction of the 12(b)(1) standard and factual attack; (C) authority and arguments proving Spikes is not entitled to qualified immunity; (D) Jones states a claim for unreasonable force and seizure; (E) Jones'

excessive force claims are controlled by the Fourth Amendment; (F) Jones' claims against Spikes are individual claims; and (E) summary judgment and the 12(c) motion to dismiss should be denied.

A.    Jones' Complaint Satisfies the Legal Standards of 12(b)(6)

Legal Standard for a 12(b)(6) Motion to Dismiss

22.    Dismissal of an action for failure to state a claim is highly disfavored by law. *Turner v. Pleasant,* 663 F.3d 770, 775 (5th Cir. 2011) (*citing Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)); *Rodriguez v. Rutter*, 310 F. App'x 623, 626 (5th Cir. 2009) (*citing Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); *Kaiser Alum. & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982)); *Thomas v. Hous. Cnty. Precinct*, No. Civ. A 9:05-CV-85, 2005 WL 1629793, at *1 (E.D. Tex. Jul. 11, 2005). The Court should not dismiss a complaint on a 12(b)(6) motion "unless it appears *beyond a doubt* that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Thomas*, 2005 WL 1629793, at *1. At this stage of litigation, the Court should construe the complaint liberally in favor of the plaintiff. *Vera v. Frisco Indep. Sch. Dist.*, No. 4:12-CV-733, 2013 WL 2297211, at *2 (E.D. Tex. May 24, 2013). A Rule 12(b)(6) motion should be denied if the complaint allows "the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The *Iqbal* standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of liability. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 566 (2007). "[D]etermining whether a complaint states a plausible claim is *context-specific*, requiring the reviewing court to draw on its experience and common sense." *Iqbal*, 556 U.S. at 663. In deciding a motion to dismiss, courts may consider facts stated in the

documents attached to the complaint.  *See, e.g., Batiste v. City of Beaumont*, 421 F.Supp.2d 969, 978 (E.D. Tex. 2005) (*citing Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996).

The 8(a)(2) Pleading Standard

23.     Under Federal Rule of Civil Procedure 8(a)(2), a claimant need only plead, "a short and plain statement . . . showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Unlike the state court factual pleading requirement, these claims need only include enough facts "to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555. A heightened fact pleading of specifics is not required, but only enough facts to state a claim to relief that is plausible on its face.  *Id.* at 570.

24.     In her First Amended Complaint, Jones pled facts giving rise to her claims. (Doc.19 ¶¶ 8-15). Jones' pleading sets out, in clear language, the claims against Spikes. Jones' pleading begins with a summary of claims against Spikes:

> Plaintiff asserts  a civil rights personal injury claim pursuant to the federal civil rights statute, 42 U.S.C. §1983, against defendant Spikes, individually, for her violations of plaintiff's constitutional rights under the Fourth and Fourteenth Amendments of the United States Constitution to be free from the use of unreasonable, unnecessary, and excessive force against her and from unreasonable seizure of her person under color of state law. (Doc.19 ¶6)

25.     Jones' First Amended Complaint, under the heading, "Count 1 - 42 U.S.C. §1983 Claim Against Defendant Spikes Individually," further identifies claims against Spikes:

· Spikes acted willfully, deliberately, maliciously, or with reckless disregard for plaintiff's clearly established constitutional rights.   (Doc.19 ¶ 16)

· Spikes violated plaintiff's constitutional rights provided to her by the Fourth and Fourteenth Amendments by her use of unreasonable, unnecessary, and/or excessive force.  Spikes pointed a gun at plaintiff, forced her to the ground, and handcuffed her in front of her daughter and other school children and parents, all while verbally attacking plaintiff.  These actions were

done willfully, deliberately, maliciously, and/or with reckless disregard for plaintiff's clearly established constitutional rights. (Doc.19 ¶ 17)

• Spikes violated plaintiff's constitutional rights provided to her by the Fourth and Fourteenth Amendments by unreasonable seizure of her person when Spikes seized, cuffed, and jailed plaintiff. (Doc.19 ¶ 18)

Jones' pleading gives Spikes notice of the injuries resulting from her violations and the damages she seeks. Her First Amended Complaint states Sikes' violations of plaintiff's civil rights caused her to sustain in varying degrees: (Doc.19 ¶ 23)

• Physical harm during and after the events at issue, including physical pain, disability, disfigurement, and discomfort in the past. *Id.*

• Emotional and mental harm during and after the events at issue, including fear, humiliation, and mental anguish which plaintiff is reasonably certain to continue to suffer to some degree for some time into the future. *Id.*

• The reasonable value of any health care expenses reasonably needed and actually obtained. *Id.*

• Other economic losses sustained by plaintiff. *Id.*

• Reasonable value of any property damage or destroyed. *Id.*

• Reasonable value of legal services needed and actually obtained by plaintiff to defend and clear herself of criminal charges. *Id.*

26. Jones' pleading properly sets forth a claim (constitutional violations) upon which relief could be granted and provides Spikes fair notice of what her claims are and the grounds upon which they rest.

27. Spikes asserts that Jones' pleadings are guided by heightened pleading standards. (Doc.25, ¶10) However, she cites cases where the defendant, when being sued in her individual capacity, asserted a qualified immunity defense. In her only answer to this lawsuit, Spikes failed to assert any defense and offered only a general denial. Spikes is claiming qualified immunity, for the first time in the case, in her motion to dismiss. Plaintiff

notes that she has not been required, under the 8(a)(2) standard, to plead under the heightened standard because no qualified immunity defense has been raised by Spikes. However, plaintiff's response to Spikes 12(b)(1) factual attack based on qualified immunity below provides the facts that would satisfy the heightened pleading standard, which requires allegations of fact focusing specifically on the conduct of the individual who caused the plaintiff's injury.

28.    Jones has satisfied the low bar of the 8(a)(2) standard as interpreted by *Iqbal* because she has (a) set forth a claim upon which relief could be granted; and (b) given Spikes fair notice of what her claim is and the grounds upon which it rests. In addition, plaintiff has provided enough factual evidence to satisfy a heightened pleading standard. Therefore, the court should deny Spikes' motion to dismiss pursuant to FRCP 12(b)(6) or, in the alternative, grant Jones leave to amend her pleadings.

B.    Jones' Complaint Satisfies the Legal Standards of 12(b)(1)

29.    A 12(b)(1) "factual attack" challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).  Plaintiff bears the burden of proof that jurisdiction does in fact exist. *Id.*

30.    Defendant attached medical records and a video of the incident as evidence in its motion to dismiss. (Doc.25, Ex. A & B). In her motion, Spikes asserts the court lacks subject matter jurisdiction over Jones' lawsuit.  Spikes' argument for lack of subject matter jurisdiction is based on qualified immunity. (That argument in itself is interesting in that the case is in federal court solely because defendants removed the case from state court to federal court.) Attached to her response, Jones' submits evidence proving Spikes is not

9

entitled to qualified immunity. The attached evidence and authorities discussed below satisfy the 12(b)(1) requirement, therefore, the court should deny defendant's motion to dismiss under FRCP 12(b)(1).

C.     Spikes Is Not Entitled to Qualified Immunity

31.     When determining whether a government official is entitled to qualified immunity, a two-step analysis is followed.  *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004).  First, the court assesses whether a statutory or constitutional right would have been violated on the facts alleged. *Id. Citing Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).  If the court finds a violation is properly alleged, it proceeds to the second step, in which it determines whether the defendant's actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Flores* at 395 *citing Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982)).

First Step:  Whether a Statutory or Constitutional Right Would Have Been Violated on the Facts Alleged

32.     Jones had statutory and constitutional rights protecting her from having her liberty restrained by physical and excessive force.

Illegal Seizure

33.     An officer seizes a person when he, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Flores*, 381 F.3d at 396 *citing Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The Fourth Amendment does apply to claims for excessive force used before the seizure.  *Flores* at

10

396.

34.     Spikes seized Jones by use of physical force, i.e. pointing a gun at her and threatening to shoot.  At the point she threatened Jones with the gun, Jones' liberty was restrained. The excessive force continued through Jones being forced to the ground, handcuffed, and brought to the police car.

<u>Deadly Force</u>

35.     The use of a gun to threaten a person with imminent bodily injury is aggravated assault under the Texas Penal Code.  Tex. Pen. Code Ann. § 22.02(a)(2). "Deadly force" is defined as "force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." Tex. Pen. Code § 9.01(3). A peace officer is justified in using deadly force in the course of an arrest if he reasonably believes that there is a substantial risk that the person to be arrested will cause death or serious bodily injury to the officer or another if the arrest is delayed. Tex. Pen. Code § 9.51(c)(2). Using force "carrying with it a substantial risk of causing death or serious bodily harm" is "deadly force."  *Flores v. City of Palacios*, 381 F.3d 391, 401 (5th Cir. 2004)

36.     There is no evidence showing Spikes reasonably believed Jones would cause death or serious bodily injury to her or another. As discussed, Jones had parked her vehicle, was at a school, and her vehicle was surrounded by other vehicles. She was unarmed, and had complied with Spikes' instructions to move her vehicle. Spikes used force (pulling a gun and threatening to shoot) that had a substantial risk of causing death or serious bodily harm to Jones (and others).  Spikes unlawfully used deadly force in seizing Jones.

<u>Excessive Force</u>

37.    Other jurisdictions have ruled that police officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever." *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir.1996) Holding a gun to a person's head and threatening to pull the trigger is a use of deadly force.  *McDonald by McDonald v. Haskins*, 966 F.2d 292, 295 (7th Cir. 1992). It has been held that an officer pulling a gun out on a woman, with children present, pursuant to a warrant, without suspecting any of the suspects were armed, is excessive force.  *Christian v. Orr,* CIV.A. 08-2397, 2011 WL 710209 (E.D. Pa. Mar. 1, 2011) aff'd as amended, 512 Fed. Appx. 242 (3d Cir. 2013). It has also been held that for an unidentified police officer to brandish his revolver eighteen inches from a person's head and then threaten to shoot is conduct that shocks the conscience so as to deprive plaintiff of constitutional rights.  *Black v. Stephens*, 662 F.2d 181, 189 (3d Cir. 1981).

38.    To succeed on an excessive force claim, a plaintiff bears the burden of showing "(1) an injury (2) which resulted directly and only from the use of force that was excessive to the need and (3) the force used was objectively unreasonable." *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir.2001) (quoting *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir.2000)).

<u>Jones Suffered an Injury</u>

39.    An injury does not need to be "significant" to support an excessive force claim. *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir.2001).  Substantial psychological injuries along with bruising are sufficient enough injuries to demonstrate the violation of a clearly established constitutional right.  *Flores* at 398 *citing Dunn v. Denk*, 79 F.3d 401, 402 (5th

Cir.1996).

40.     Evidence attached to this response shows significant injuries resulting from the actions of Spikes.  Jones suffered abrasions and pain in her knees and wrists, as well as an injury to her back.  The deepest injuries Jones suffered are psychological. She had never experienced anyone pointing a gun at her head while threatening to shoot her. She was in fear for her life. Weighed against the authorities, Jones injuries are significant enough to support an excessive force claim.

<u>Jones Injury Resulted Directly and Only from the Use of Force That Was Excessive to the Need</u>

41.     The Supreme Court, in *Graham v. Connor*, established three factors for determining whether a particular use of force was "excessive to the need":

    a)    the severity of the crime at issue;
    b)    whether the suspect posed an immediate threat to police officers or civilians; and
    c)    whether the suspect was actively resisting arrest or attempting to evade arrest by fleeing the scene.

*Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

The "Graham factors" remain the guiding framework for judging whether an officer's use of force was excessive to the need. *Ramirez v. Martinez*, 716 F.3d 369, 378 (5th Cir.2013); *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir.2009).

    *First Graham Factor:  Severity of the Crime at Issue*

42.     The first factor to be addressed is the severity of the crime at issue. Jones was charged with aggravated assault against a public servant and a misdemeanor failure to identify by giving false or fictitious information. Jones did not even know Spikes was a police officer. Spikes never identified herself as an officer. Spikes asked for Jones' driver's

license, but she never told Jones she was a police officer. She never advised Jones she had committed a crime. Evidence attached to this response indicates Jones did not hit Spikes with her vehicle. Spikes was not knocked to the ground as she claims in her motion. The video attached to defendant's motion as Exhibit A does not show Spikes being hit and thrown to the ground. There is certainly no evidence that Spikes was "thrown an unknown distance" by a car "traveling at moderate speed," as she indicated to her doctor. (Doc. 25-2, Exhibit B, SPIKES-00313, ¶18:45) Jones pulled forward, as she had been instructed to do by Spikes.  She pulled into the open parking spot and stopped her vehicle.  Jones had committed no crime. Jones did not commit (nor was it alleged she committed)  an offense severe enough to have a gun pulled on her and pointed at her head while threatened to be shot. She did not commit an offense requiring her to be pulled out of her car at gunpoint in front of her children, handcuffed, and sent to jail.

### *Second Graham Factor:  Whether the suspect posed an immediate threat to police officers or civilians*

43.    Analyzing the second *Graham* factor, Jones posed no immediate threat to police officers or civilians. As discussed above, she had not committed a crime. She was in the line at the school to pick up her daughter who attended the middle school. She was unarmed, and her vehicle was surrounded by other vehicles containing parents who were also there to pick up their children. Jones advised Spikes she would pull up, and she did just that. Jones had pulled over into the open parking space and *stopped* her vehicle. At no point was she a threat to police officers or civilians, and she most certainly was not a threat when Spikes decided to pull her gun on Jones and threaten to shoot her.

*Third Graham Factor: Whether the suspect was actively resisting arrest or attempting to evade arrest by fleeing the scene.*

44.    Until she pointed her gun and threatened to shoot Jones, Spikes had shown no indication she was a police officer.  To anyone's guess, Spikes could have been a crossing guard. Jones was not resisting arrest or attempting to flee, as she was not notified she was even under arrest until she got out of her vehicle. Spikes presented no evidence to indicate she even thought Jones was going to flee the scene.  There were cars all over the driveway, so even if Jones wanted to flee, the traffic would have prevented it. She had pulled over to park her car.  Not surprisingly, she was afraid to get out of her car with a woman pointing a gun at her and threatening to kill her. Jones was not actively resisting arrest or attempting to evade arrest by fleeing the scene.

45.    As discussed, the force Spikes used is considered deadly and the situation did not require the use of deadly force. Even if it does not rise to the level of deadly force, in weighing the evidence against the *Graham* factors, Spikes obviously used force that was excessive to the need.

The Force Spikes Used was Objectively Unreasonable

46.    The objective reasonableness of a particular use of force is highly fact-and context-specific. *Tarver v. City of Edna*, 410 F.3d 745, 753 (5th Cir.2005) ("To determine the objective reasonableness of an officer's use of force, 'we pay careful attention to the facts and circumstances of each particular case[.]' ") (quoting *Gutierrez v. City of San Antonio*, 139 F.3d 441, 447 (5th Cir.1998)). It must be judged in light of the information available to the officer at the time. *Graham*, 490 U.S. at 397; see also *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

47.    When an officer uses deadly force, the "objective reasonableness" balancing test is constrained.  It is objectively unreasonable to use deadly force "unless it is necessary to prevent [a suspect's] escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Flores* at 399 quoting *Garner*, 471 U.S. at 3, 105 S.Ct. 1694.

48.    The standard is an objective one – whether the use of force was "'objectively reasonable' in light of the facts and circumstances confronting [the officer]" at the time force was employed. *Graham*, 490 U.S. at 397. In such an analysis, the subjective intent of the defendant in question plays no meaningful role. *Poole v. City of Shreveport*, 691 F.3d 624, 630 (5th Cir.2012) ("Officers' subjective intent is irrelevant [to qualified immunity]."). "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Graham*, 491 U.S. at 397.

49.    Spikes' actions constitute the use of deadly force. Her use of deadly force was objectively unreasonable because she did not believe that Jones posed a threat of imminent danger.

50.    Even if her acts are not defined as "deadly force", Spikes' actions were excessive and objectively unreasonable. Analyzing her actions based on the facts and circumstances confronting her at the time force was employed, the information available to Spikes at the time of the incident was as follows:  Jones was in line to pick up her daughter at school, along with other parents. Jones was unable to pull up because the person in the car in front of her had gone into the school. The line was filled with other vehicles waiting to pick up their children.  When a spot was made available ahead of Jones, Jones notified Spikes

she was going to move up, and did so. Spikes had not identified herself as a police officer and she had not notified Jones of any violations. There were many children running around the scene. After Jones pulled forward a few car lengths, she pulled to the side, parked in the open space and then parked her vehicle. Jones was not fleeing, she was not threatening Spikes or anyone else.

51.     Analyzing Spikes' actions in light of the facts confronting her, even if Spikes felt Jones had committed a violation that required arrest, she chose the most life threatening method available to her. She pulled a gun and threatened another human being's life. As she pointed her gun at Jones, children could be seen directly in her line of fire. When other officers appeared on the scene, they did not pull their guns on Jones and threaten to shoot her. Although "shock the conscious" is not the standard Jones must prove, Spikes' actions unmistakably shock the conscious. As pointed out in *Tarver v. City of Edna*, whether Spikes' actions were objectively reasonable is highly fact-and context-specific. The evidence, arguments, and authorities presented in this response provide more than sufficient evidence to allow a jury to comfortably find that Spikes acted objectively unreasonably.

52.     Pursuant to the arguments and authorities presented above, it is clear that a statutory constitutional right would have been violated on the facts Jones alleges as she suffered an injury which resulted directly and only from the use of force that was excessive to the need, and the force used was objectively unreasonable. Therefore, Jones has satisfied the first step in the test of determining qualified immunity.

Second Step:  Whether the Defendant's Actions Violated "Clearly Established Statutory or Constitutional Rights of Which a Reasonable Person Would Have Known".

53.    To gauge the objective reasonableness of the force used by a law enforcement officer, the amount of force used must be balanced against the need for force.  *Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004).

54.    The objective reasonableness analysis focuses on whether the alleged constitutional deprivation was objectively unreasonable under clearly established law. This step is comprised of two separate, but related, inquiries: "whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the defendant's conduct was objectively reasonable in the light of that then clearly established law." *Tolan v. Cotton*, 713 F.3d 299, 305 (5th Cir.2013)

Jones' Rights Were Clearly Established at the Time of the Incident

55.    A right is clearly established when every reasonable official would have understood that what he is doing violates that right. *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083, 179 L. Ed. 2d 1149 (2011)  "Existing precedent must place the statutory or constitutional question beyond debate." *Tolan*, 713 at 306; see also *Saucier*, 533 U.S. at 206.  Requiring an alleged constitutional deprivation to violate clearly established law before relief may be pursued "balances the vindication of constitutional or statutory rights and the effective performance of governmental duties by ensuring officials can 'reasonably ... anticipate when their conduct may give rise to liability for damages.' " *Id.* (quoting *Davis v. Scherer*, 468 U.S. 183, 195, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984)).

56.    Jones' clearly established rights have been discussed at length in paragraphs 31-38 above in the analysis of the first step in determining whether qualified immunity exists.

Jones has a right to be free from an illegal seizure in violation of her Fourth Amendment rights, she has a clear right to not be threatened with imminent bodily injury with a gun, and she has the right to not have her liberty restrained by the use of excessive force.   The rights discussed above were clearly established at the time of the incident, as the cases and statutes presented above show those rights were established well before the incident.

Spikes' Conduct Was Objectively Unreasonable in the Light of Clearly Established Law

57.     As discussed in the first step of the qualified immunity analysis in paragraphs 46-52 above, whether Spikes' deadly force actions were objectively reasonable depends on whether she reasonably believed that Jones posed a threat of imminent danger.   Even if her actions were not considered acts of deadly force, based on the analysis above, analyzing her response to the facts confronting her, Spikes' actions were objectively unreasonable in light of clearly established law.

58.     It is apparent, based on the evidence and authorities presented above, Spikes' actions violated clearly established law at the time of the incident and her conduct was objectively unreasonable in light of that clearly established law. Therefore, Jones' has satisfied the second step of the test for qualified immunity.

In Analyzing the Two Steps of the Test, Spikes Is Not Entitled to Qualified Immunity

59.     A statutory or constitutional right would have been violated based on the facts Jones alleged. Spikes' actions violated clearly established statutory or constitutional rights of which a reasonable person would have known. Spikes' actions were objectively unreasonable in light of clearly established law at the time of the incident. Spikes is not entitled to qualified immunity.   Therefore, the Court should deny defendant's motion to dismiss and motion for summary judgment.   At a minimum, plaintiff requests that a ruling

on the summary judgment and motion to dismiss be delayed until more discovery is completed in the case.

D.    Jones Alleges Sufficient Facts for a Claim for Unreasonable Force and Seizure

60.    Defendant claims Jones failed to state a claim for unreasonable force and seizure. (Doc.25, ¶ 24). Spikes bases her argument on whether Jones failed to state an injury resulting from excessive force. *Id.* As discussed in detail in paragraphs 22-28 above, Jones clearly pled damages and provided evidence and authorities proving she suffered injuries as a result of Spikes pointing her gun at Jones and threatening to shoot. (See paragraphs 39 and 40 above and Ex.1 ¶ 17).

61.    Therefore, the Court should deny defendant's motion to dismiss and summary judgment with regard to the issue of failing to state a claim for unreasonable force and seizure.

E.    Jones' Excessive Force and Unlawful Seizure Claims Are Controlled by the Fourth Amendment

62.    Plaintiff agrees with defendant with regards to excessive force and unlawful seizure claims in the course of an arrest, stop, or seizure, being analyzed under the Fourth Amendment.  All claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach.  *Graham v. Connor*, 490 U.S. at 395, 109 S. Ct. 1865, 1871, 104 L. Ed. 2d 443 (U.S.N.C. 1989). Pursuant to the Fourteenth Amendment, the State entity is not sovereignly immune to Jones' claims. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 59, 116 S. Ct. 1114, 1125, 134 L. Ed. 2d 252 (1996).

Jones' claims involve the excessive force used in illegally seizing her person, not subsequent detention, therefore her claims are analyzed under the Fourth Amendment.

F.    Jones' Claims Against Spikes are Individual Claims

63.    Plaintiff's claims against Spikes are individual claims. In her First Amended Complaint, Jones unambiguously stated the claims against Spikes as:  Count 1 - 42 U.S.C. §1983 Claim Against Defendant Spikes **Individually**. (Doc.19, Section F). No claims are made against Spikes in her official capacity other than those brought against the other defendant, BISD. Spikes actions in an official capacity would be attributable to BISD. There are no "official capacity" claims to dismiss unless claims against BISD are dismissed.

G.    Summary Judgment and 12(c) Motion to Dismiss Should be Denied

64.    Defendant alternatively seeks summary judgment and a 12(c) motion to dismiss. Summary judgment is proper only in a case in which there is no genuine dispute of material fact.  This is not a case in which the court should grant summary judgment.  See Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

65.    In determining whether there is a genuine dispute of material fact that prevents summary judgment, a court must consider all evidence in the light most favorable to nonmovant plaintiff. *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1236-37 (10th Cir. 2002). The court must also resolve all reasonable doubts about the facts in favor of a nonmovant plaintiff.  *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 455-56 (5th Cir. 2005).

66.    After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings.  Fed. R. Civ. P. 12(c).

67.     Jones' response provides sufficient evidence, as well as supporting authorities, demonstrating a genuine dispute of material fact on all issues of plaintiff's case. Jones' response provides authorities and evidence prohibiting defendant from a summary judgment as a matter of law. Accordingly, the Court should deny defendant's motion for summary judgment and 12(c) motion to dismiss.

## IV.  Conclusion

68.     In satisfaction of the legal standards of 12(b)(6), Jones has set forth a claim upon which relief could be granted and given Spikes fair notice of what her claim is and the grounds upon which it rests. Jones has provided enough evidence to satisfy Spikes' 12(b)(1) factual attack.  That evidence, when evaluated using the relevant authorities, proves Spikes is not entitled to qualified immunity because her actions violated clearly established statutory or constitutional rights of which a reasonable person would have known and the actions were objectively unreasonable in light of clearly established law at the time of the incident.  Jones has alleged and provided sufficient facts and evidence to support a claim for excessive force under the Fourth Amendment. In responding to issues defendant raised in her motion, Jones has provided enough evidence and authority to overcome Spikes' motion to dismiss and summary judgment.

## V.  Prayer for Relief

69.     Based on the evidence, authorities, and arguments presented in this response, plaintiff prays that the Court enter an order denying defendant's motion to dismiss. Based on those same authorities, evidence, and arguments, plaintiff prays that the Court enter an order denying defendant's summary judgment. In the alternative, if the Court determines that plaintiff did not properly plead, plaintiff asks the Court to grant leave to

amend the complaint. Also, in the alternative, if the Court determines plaintiff did not provide enough evidence to overcome defendant's factual attack, summary judgment, and assertion of qualified immunity, plaintiff asks the Court that a ruling on the summary judgment and motion to dismiss be delayed until more discovery is completed in the case.

Respectfully submitted,

BUSH LEWIS, PLLC
595 Orleans Street, Suite 500
Beaumont, TX 77701
409/835-3521
409/835-4194 (Fax)

By: _____
Kenneth W. Lewis
Ken.L@bushlewis.com
Texas Bar #12295300
Stephen L. Townsend
Stephen.T@bushlewis.com
Texas Bar #24071539

ATTORNEYS FOR PLAINTIFF

CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and foregoing has been served on all counsel of record through the Court's electronic filing system, this 15th day of September, 2014.

_____
Kenneth W. Lewis

23