**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | | |
|---|---|---|
| **CHRISTINE JONES** | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 1:14-cv-00103** |
| | § | |
| **TAMARA SPIKES and** | § | |
| **BEAUMONT INDEPENDENT** | § | |
| **SCHOOL DISTRICT POLICE** | § | |
| **DEPARTMENT,** | § | |
| **Defendants.** | § | |

**DEFENDANT TAMARA SPIKES' SUPPLEMENTAL MOTION FOR SUMMARY**
**JUDGMENT AND SUPPLEMENTAL MOTION TO DISMISS**

NOW COMES Defendant Tamara Spikes and files this Supplemental Motion for Summary Judgment and Supplemental Motion to Dismiss pursuant to Federal Rules of Civil Procedure 56 and 12. Without waiving the arguments and information provided to the Court in her earlier Motion to Dismiss and in the alternative Motion for Summary Judgment still pending before the Court (Docket Entry "DE" 25, 27 & 28), and in support of this supplemental motion, Spikes shows the Court as follows:

## I. NATURE AND STAGE OF PROCEEDING

1.      On August 7, 2014, Plaintiff Christine Jones filed her First Amended Complaint (DE 19), alleging violations of her constitutional rights under the Fourth and Fourteenth Amendments of the U.S. Constitution via 42 U.S.C. 1983 ("Section 1983").[1]  (DE 19, p. 2, ¶6 and p. 4-5, ¶¶16-18).

---

[1] Plaintiff originally brought suit against Beaumont Independent School District ("BISD") Police Department and Defendant Tamara Spikes in state district court. (DE 1, pp. 9-17) (suit filed on January 9, 2014). Based on her federal claims, Plaintiff's suit was properly removed to this Court on February 18, 2014. (*See* DE 1).

2.      Defendant Spikes filed her Motion to Dismiss, and Alternatively Motion for Summary Judgment, which the Court docketed as a Motion for Summary Judgment for statistical purposes. (*See* DEs  25, 27 & 28).[2]   Spikes now files this Supplemental Motion for Summary Judgment and Motion to Dismiss and asks the Court to dismiss the case as set out in its Motion to Dismiss (*see* DEs 25, 27 & 28) or alternatively to grant summary judgment in her favor.

## II. STATEMENT OF THE ISSUES

3.      Pursuant to Local Rule CV-7(a)(1), Defendant Spikes presents the following Statement of the Issues:

   a.   Whether Plaintiff's claims against Officer Spikes in her official capacity should be dismissed as they are redundant of the claims brought against BISD;

   b.   Whether Officer Spikes is entitled to qualified immunity;

   c.   Whether Plaintiff's pleading adequately describes, and the competent summary judgment evidence shows, a violation of Plaintiff's Fourth Amendment rights arising from excessive force and seizure by Officer Spikes;

   d.   Whether Plaintiff has stated a proper Fourteenth Amendment claim or produced evidence to support such a claim for excessive force and seizure by Officer Spikes.

## III. SUMMARY OF THE ARGUMENT

4.      Plaintiff's claims against Officer Spikes fail for many reasons.  First, Officer Spikes re-urges her motion to dismiss all claims brought by Plaintiff, which motion is still pending before the Court, because she failed to plead sufficient facts to state a claim under the Fourth and Fourteenth Amendments pursuant to Section 1983.  (*See* DEs 25, 27 & 28).[3]   Additionally,

---

[2] Spikes contemporaneously filed a Motion to Seal Medical Records, which included documents referenced as exhibits in her motion to dismiss, or alternatively motion for summary judgment, which the Court granted.  Those are incorporated by reference into Spikes' original motion.  (*See* DE 26, 27 & 28).

[3] Plaintiff's Amended Complaint also makes reference to the Fifth Amendment, but Plaintiff does not appear to pursue a Fifth Amendment claim against Officer Spikes.  (DE 19, ¶19). This is appropriate

Plaintiff relies on inapplicable law for her Fourteenth Amendment claim, and as such, her claims should be dismissed. Plaintiff also fails to plead facts sufficient to overcome Spikes' Motion to Dismiss, and as a matter of law, Spikes would be entitled to qualified immunity. Additionally, Plaintiff's claims against Spikes are brought in Spikes' official capacity; as such, they should be dismissed as they are redundant the claims brought against BISD.

5.    However, even if Plaintiff had pled sufficient facts and could overcome Spikes' immunity, Officer Spikes would be entitled to summary judgment based on the competent summary judgment evidence. Officer Spikes attaches hereto and incorporates by reference the following exhibits: the declaration of Officer Tamara Spikes, the affidavit of James E. Byrom, authenticating various items of discovery, and the affidavit of Margo L. Frasier. These exhibits are labeled Exhibits C, D, and E, respectively. Officer Spikes also incorporates by reference the video evidence and medical records previously filed in support of her Motion to Dismiss and in the alternative Motion for Summary Judgment that were labeled Exhibits A & B, respectively. (DE 25 & 27). The competent summary judgment evidence shows that Spikes acted well within her discretion as a peace officer and did not infringe on the constitutional rights of Plaintiff.

## IV.  STANDARDS OF REVIEW

### A.    Summary Judgment

6.    Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S. Ct. 2548,

---

given that the law in this area is clear that Fifth Amendment claims can only be brought against the federal government or federal actors for violations of due process rights. *See Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996); *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000).

2552-54 (1986); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence would allow a reasonable jury to return a verdict in favor of the nonmovant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).  Accordingly, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769 (2007) (citing *Anderson*, 477 U.S. at 247, 106 S. Ct. at 2509) (emphasis in original).

7.    Once the movant shows there is no evidence to support the nonmovant's case, the nonmovant must produce competent summary judgment evidence of the existence of a genuine fact issue.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1355 (1986).  Mere conclusory allegations are not competent summary judgment evidence and are insufficient to defeat a summary judgment motion.  *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).  Similarly, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.  *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195 (1994).  The nonmovant must identify specific record evidence and articulate the precise manner in which that evidence supports his or her claim.  *Ragas*, 136 F.3d at 458.  Rule 56 does not require courts to "sift through the record in search of evidence" to support the nonmovant's opposition to the summary judgment motion.  *Forsyth*, 19 F.3d at 1537 (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7 (5th Cir. 1992), *cert. denied*, 506 U.S. 832, 113 S. Ct. 98 (1992)).  If the nonmovant fails to make a showing sufficient to establish the existence of an element essential to

4

its case and on which it will bear the burden of proof at trial, the court must grant summary judgment. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552-53. No genuine issue of material fact exists if the summary judgment evidence is such that no reasonable juror could find in favor of the nonmovant. *Jenkins v. Methodist Hosps. of Dallas*, 478 F.3d 255, 260 (5th Cir. 2007). Thus, when opposing parties tell two different stories, one of which the record blatantly contradicts so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. *Scott*, 550 U.S. at 380, 127 S. Ct. at 1776. For the same reasons, "self-serving affidavits, without more, will not defeat a motion for summary judgment." *Tyler v. Cedar Hill Indep. Sch. Dist.*, 426 Fed. App'x 306, 309 (5th Cir. 2011) (unpublished) (citing *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 531 (5th Cir. 2005); *U.S. v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001)).

**B.    Motion to Dismiss**

8.    Given the evidence submitted by Officer Spikes in her earlier Motion to Dismiss pursuant to federal Rule 12(b)(1), the motion was premised, in part, upon a factual attack. When confronted with such an attack, "a plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Id*. "In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (citations and internal quotations omitted). For purposes of her Motion to Dismiss pursuant to Federal Rule 12(b)(6) or 12(c), the purpose of the motion is to test the formal sufficiency of the statement of the claim for relief. *See Murray v.*

*Amoco Oil Co.*, 539 F.2d 1385, 1387 (5th Cir. 1976). These Rule 12 motions only test whether the claim has been adequately stated in the complaint. Thus, the Court's inquiry is limited to the content of the claim. *See Mahone v. Addicks Util. Dist. of Harris County*, 836 F.2d 921, 935 (5th Cir. 1988). Dismissal is proper only if there is either: (1) "the lack of a cognizable legal theory" or (2) "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).

**C.    Video Evidence on Summary Judgment Review**

9.    Where there is video evidence on summary judgment, as there is here (*see* Ex A to DE 25), the U.S. Supreme Court has provided courts with clear instruction on how to regard videotape evidence:

> When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.
>
> ... [Where a] Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him[, t]he Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

*Poole v. City of Shreveport*, 691 F.3d 624, 630-31 (5th Cir. 2012) (citing *Scott,* 550 U.S. at 381, 127 S.Ct. at 1769). The Fifth Circuit also requires rejection of a "plaintiff's description of the facts where the record discredits that description [and] instead consider 'the facts in the light depicted by the videotape.'" *Id.* (citing *Carnaby v. City of Hous.*, 636 F.3d 183, 187 (5th Cir. 2011) (quoting *Scott,* 550 U.S. at 381, 127 S.Ct. 1769)).

# V.  FACTUAL BACKGROUND

10.     Even as described by Plaintiff, Officer Spikes was at all times acting within the scope of her duties, and within her discretion, as a BISD police officer.  (DE 19, ¶9).  Plaintiff's pleading also admits the following material facts: Officer Spikes first instructed Plaintiff not to make an unsafe turn, and then Plaintiff did not follow Spikes' further instruction to move her car (DE 19, ¶¶9, 10); Officer Spikes asked for Plaintiff's driver's license (notably, Plaintiff does not say she complied, and in fact she did not) (DE 19, ¶11; Ex. D1 pp. 110-111); Officer Spikes repeatedly told Plaintiff, "You hit me!" after Plaintiff struck her with her car (DE 19, ¶14)[4]; after she became aware of Officer Spikes' claim that she had been hit, Plaintiff did not immediately comply with Officer Spikes' order to exit the car (DE 19, ¶¶14-15); and finally, Plaintiff was arrested and later charged with assaulting a police officer and for failure to identify (DE 19, ¶15).

11.     Officer Spikes, through her attached declaration (Ex. C), provides the following additional factual details.  On May 2, 2013, Officer Spikes was assigned to direct traffic at Vincent Middle School, and on that day she was *wearing her official police uniform and police traffic vest*.  As traffic was flowing into the student pick-up area, she noticed a white SUV making an improper left turn into the parking lot.  Plaintiff Christine Jones was driving the vehicle.  Officer Spikes approached the vehicle on the driver's side and asked Plaintiff to lower the window, and the pair acknowledged each other.  Officer Spikes told Plaintiff that left turns were not allowed on the parking lot; Plaintiff said "all right" and moved her vehicle.  Then

---

[4] Plaintiff's pleading claims that Plaintiff told Officer Spikes that she did not hit her (DE 19, ¶14), but in deposition she conceded that she was unsure whether or not she hit Officer Spikes. (Ex. D1, pp. 166-168 & 172).  This was only after she testified under oath that she had not hit the officer.  (Ex. D1, pp. 118-119).  Because Officer Spikes' affidavit is now uncontroverted on the issue of Plaintiff having hit her, the amount of force, even as described in Plaintiff's pleading, was completely warranted.

Plaintiff parked, blocking several cars that were in parking lanes to her right.  Officer Spikes repeatedly asked Plaintiff to move forward so that the cars would not be blocked, and while Plaintiff said she would comply, she did not.  Plaintiff stated she would not move until a white Ford moved. Officer Spikes told Plaintiff that she had to move forward and that there was plenty of space for her to do so to avoid blocking other cars. Again, Plaintiff refused to comply. Officer Spikes repeatedly asked Plaintiff for her driver's license and proof of insurance. Plaintiff did not comply and completely ignored Officer Spikes, rolling her windows up. Officer Spikes then stepped several feet away from Plaintiff's vehicle to read her license plate.  Plaintiff moved her car forward quickly, and although she was instructed not to move, Plaintiff put the car in drive, turned her steering wheel towards Officer Spikes and struck her, causing Officer Spikes to fall to the ground, and continued to drive forward.  Immediately prior to the impact, Officer Spikes had gotten on her radio to call for assistance.  After impact, Officer Spikes informed dispatch that she had been hit with a car.  Based upon furtive movements in the vehicle, Officer Spikes drew her service revolver, kept it in the down and ready position, and ordered Plaintiff to get out of the car.  She demanded several times that Plaintiff exit the car. Plaintiff refused to comply and ignored her orders.  Despite the arrival of Officer Matthew Custer, who also demanded Plaintiff exit the vehicle, Plaintiff did not comply until several more attempts and directions from both officers when Plaintiff finally opened the door.  She still did not exit the vehicle, refusing to get out despite the officers' demands.  The officers re-holstered their weapons, and Officer Custer removed Plaintiff from the car, placing her on the ground.  Plaintiff continued to be non-compliant until the officers restrained her, assisted Plaintiff to her feet, and escorted her to Officer Spikes' patrol unit.  Officer Spikes took Plaintiff to the Jefferson County Correctional

8

Facility with the assistance of Officer Stephen Rivers. Officer Spikes was not able to drive at that time because of the injuries she sustained as result of Plaintiff hitting her with the vehicle. Officer Spikes did not observe any physical injury to Plaintiff, and she complained of none, although Officer Spikes was injured when Plaintiff hit her with the vehicle. (All of the foregoing facts are contained in paragraph 3 of Ex. C).

12.     Additionally, Plaintiff and Officer Matthew Custer's depositions revealed the following relevant information as reflected in the excerpts attached as Exhibit D1 and D2 respectively. Plaintiff denies that she was non-compliant, and in doing so, she does not indicate any action by Spikes causing her any injury other than mental anguish. (Ex. D1, pp. 85-86 & 141). Plaintiff suffered no demonstrable injury. (Ex. D1, pp. 31-32, 151, 189-190, & 193). She sought no medical treatment. (Ex. D1, pp. 192). She only complains of having lost four days of pay for missing work not related to injury. (Ex. D1, p. 47). She received no counseling, had no medical expenses, and took no medications related to the incident. (Ex. D1, pp. 31-32). Though she complains of a scrape related to being placed on the ground, this is inconsistent with her testimony that she immediately complied when asked by Officer Custer to lie down. (Ex. D1, pp. 85-86, 141 & 189). She also complains of pain to her wrists, but it also would appear Officer Custer applied the handcuffs (Ex. D1, p. 189; D2, p. 15-16; Ex. C, ¶3). As noted above, neither the claim of "scrapes" nor the "pain to her wrists" have anything to do with Officer Spikes' actions. Plaintiff also denies any other injury, except to allege that the situation was "stressful" and that she had to report to the Board of Nursing, and that she would have to "take off and talk to counsel about what the plan was…" (Ex. D1, pp. 190 & 191). Finally, and remarkably, Plaintiff repeatedly explained and insisted in deposition that she had no idea that Officer Spikes

was a police officer.  (Ex. D1, pp.14-18 & 97-99; D2 pp. 64-67).  This was despite her ignoring Officer Spikes' requests for Plaintiff's driver's license, watching and hearing Officer Spikes talking on her police radio, noting that Officer Spikes was checking her vehicle tags, observing the officer's nametag, and clearly noting that Officer Spikes, supported by another uniformed officer, had drawn a gun.  (Ex. D1, pp. 91, 97-99, 110-111, 125-127, 132, 141; D2 pp.64-67).  This not-so-poorly veiled effort to avoid possible future prosecution or liability for her assault on Officer Spikes as a peace officer is not only incredible, it is also contradicted by Plaintiff's own pleadings.  (DE 30-1).  She was given the opportunity in deposition to offer any revisions that she had for her pleadings and prior declaration.  (Ex. D1 pp. 73-75 & 94).  In her Amended Complaint, filed with the Court in August, Plaintiff unequivocally claims, in an apparent effort to show her own courtesy, that she addressed Officer Spikes as "officer." (DE 19, ¶10).  The clear implication is that she understood Officer Spikes to be a peace officer, and she addressed her as such.  The video, showing Officer Spikes in a yellow traffic vest, and Officer Custer's uniform description in deposition further emphasize the absurdity of Plaintiff's claim that her admitted disobedience to Officer Spikes' directions was due to some failure to appreciate her uniform and role as a police officer.  (DE 25-1; D2 pp. 64-67).  Again, the Court should not adopt a version of the facts where one side's claims are blatantly contradicted by the record for purposes of ruling on a motion for summary judgment.  *Poole*, 691 F.3d 624, 630-31 (citing *Scott*, 550 U.S. 372, 380–81, 127 S.Ct. 1769 (2007)).

13.     Finally, the affidavit of retained expert Margo L. Frasier shows, among many other things, that Officer Spikes acted reasonably while engaged in acts requiring personal deliberation, decision, and judgment and the exercise of her discretion at all times related to her

handling of the Spikes encounter and arrest.  (Ex. E, ¶16).  The BISD officers, including Spikes, used no greater force against Plaintiff than was necessary to detain her.  (Ex. E, ¶16).  Other officers, based upon fairly standardized training on the basic tactical and legal considerations related to scene recognition, could have reasonably and appropriately reached the same conclusion that the BISD officers did that Plaintiff had committed the offense of assault on a public servant and that Plaintiff was potentially a threat to the safety of the BISD officers and others in the area, and thus required the officers restrain Plaintiff. (Ex. E, ¶16).  Officer Spikes' actions were objectively reasonable, and Plaintiff cannot overcome Spikes' qualified immunity.

## VI.  ARGUMENTS AND AUTHORITIES

**A.    Officer Spikes re-urges her Motion to Dismiss.**

14.    Officer Spikes re-urges her motion to dismiss all claims brought by Plaintiff, which is still pending before the Court, because Plaintiff failed to plead sufficient facts to state a claim under the Fourth and Fourteenth Amendments pursuant to Section 1983 or any claim over which the court can exercise jurisdiction as revealed by the previously submitted evidence.  (*See* DEs 25 & 28).

**B.    The competent summary judgment evidence shows that Officer Spikes is entitled to summary judgment on the issue of immunity and on all of Plaintiff's claims against her.**

       *1.    Plaintiff's claims against Spikes in her official capacity are redundant of her claims against BISD.*

15.    Personal-capacity suits seek to impose personal liability upon a government official for actions he or she takes under color of state law.  *See, e.g., Scheuer v. Rhodes*, 416 U.S. 232, 237–238, 94 S.Ct. 1683, 1686–1687, 40 L.Ed.2d 90 (1974).  Official-capacity suits, in contrast,

"generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Soc. Svcs.*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55, 56 L.Ed.2d 611 1978).  Where, as here, the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985) (citation omitted).[5]  It is not a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself. *Kentucky v. Graham*, 473 U.S. at 166, 105 S. Ct. at 3105, 87 L. Ed. 2d at 114.  In fact, courts recognize that a suit against a state official is merely "'another way of pleading an action against the entity of which [the official] is an agent.'" *Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 844 (Tex. 2007) (alterations in original) (quoting *Kentucky v. Graham*, 473 U.S. at 165, 105 S. Ct. at 3099).  As such, any official capacity claims against Officer Spikes should be dismissed as merely redundant of any claim against BISD or based upon the arguments contained in BISD's Motion to Dismiss and Reply.  (DEs 24 & 32).  While Plaintiff's pleading still asserts that claims are brought against Spikes in her official and individual capacities, it appears that Plaintiff agrees that official capacity claims apply only to BISD.  (DE 19, ¶22; DE 30, p.21).

    2.    *Officer Spikes is entitled to qualified immunity against Plaintiff's claim.*

16.    Defendant Spikes again re-asserts that she is entitled to the defense of qualified

---

[5] Here, Plaintiff acknowledges that Officer Spikes was acting in her official capacity.  (*See* DE 19, ¶9 (Spikes was "acting in the course and scope of her employment as a police officer for … BISD")).

immunity. Qualified immunity shields a government official from civil liability for damages based on the performance of discretionary functions if the official's acts were objectively reasonable in light of clearly established law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982).[6] In *Saucier v. Katz*, the Supreme Court held that a court ruling upon the issue of qualified immunity must apply a two-step analysis. 533 U.S. 194, 201, 121 S.Ct. 2151, (2001). First, the court must determine whether "the facts alleged show the officer's conduct violated a constitutional right."[7] *Id.* Second, if a violation has been established, the court must then determine whether the officer's actions were objectively reasonable in light of clearly established law at the time of the conduct in question. *Id.*; *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007). "The touchstone of this inquiry is whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law." *Goodson v. Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000). Based upon the standards set out by the current Austin Police Monitor, Margo L. Frasier, Officer Spikes' actions must be viewed as objectively reasonable. (Ex. D, ¶16). A person who hits a uniformed police officer with her car must expect she may be

---

[6] Because qualified immunity is "an immunity from suit rather than a mere defense to liability, ... it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806 (1985). Consequently, qualified immunity questions should be resolved at the earliest possible stage in litigation. *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534 (1991) (per curiam).

[7] Although the Supreme Court has left to the district court's discretion the sequence for undertaking these two inquiries, the Supreme Court has increasingly indicated a preference for first considering whether a purported right was clearly established by prior case law "without resolving the often more difficult question whether the purported right exists at all." *See Reichle v. Howards,* 563 U.S. —, 132 S. Ct. 2088, 20923, 182 L. Ed. 2d 985 (2012) ("This approach comports with our usual reluctance to decide constitutional questions unnecessarily."); *see also Camreta v. Greene,* 563 U.S. ——, 131 S.Ct. 2020, 2031, 179 L.Ed.2d 1118 (2011) (observing that "our usual adjudicatory rules suggest that a court *should* forbear resolving this issue")(emphasis in original); *see also Pearson,* 555 U.S. at 238-39, 129 S.Ct. 808 (listing circumstances in which courts might be best served to bypass the first step of the *Saucier* process, such as "when qualified immunity is asserted at the pleadings stage, the precise factual basis for the plaintiff's claim or claims [is] hard to identify").

arrested, and there are no constitutional implications in such an arrest. "Once Jones struck Spikes with her vehicle, Spikes would have had, based on her observations and training, a rational basis for detaining and arresting Jones for the offense of assault on a public servant." (Ex. D, ¶16).

17.    Under federal law, "[q]ualified immunity represents the norm" and "is designed to shield from civil liability all but the plainly incompetent or those who violate the law." *Brady v. Fort Bend Cnty.*, 58 F.3d 173, 174 (5th Cir. 1995). Accordingly, government employees are presumptively entitled to the defense of qualified immunity for federal claims and, once the defense is asserted, the burden shifts to the plaintiff to show that immunity does not bar recovery. *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992); *Bennett v. City of Grand Prairie, Tex.*, 883 F.2d 400, 408 (5th Cir. 1989).[8]

18.    Officer Spikes has already asserted qualified immunity as a defense. Accordingly, the burden rests with Plaintiff to show that immunity does not apply. In order to overcome her burden, she must show a violation of a constitutional right. Plaintiff must then show "(1) an injury,[9] (2) which resulted directly and only from the use of force that was clearly excessive to the need and, (3) the force used was objectively unreasonable." *Williams v. Bramer*, 180 F.3d

---

[8] Additionally, the Fifth Circuit requires that a plaintiff suing governmental officials in their individual capacities must meet heightened pleading requirements in cases such as this one in which an immunity defense can be raised. *See Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir. 1995). The Fifth Circuit has also consistently required that Section 1983 plaintiffs plead specific facts negating qualified immunity rather than providing mere conclusory allegations of constitutional violations. *Todd v. Hawk*, 72 F.3d 443, 446 (5th Cir. 1995). Officer Spikes' articulated her arguments regarding Plaintiff's failure to meet the pleading requirements in her Motion to Dismiss.

[9] Although a showing of "significant injury" is no longer required in the context of an excessive force claim, "[the Fifth Circuit] do[es] require a plaintiff asserting an excessive force claim to have 'suffered at least some form of injury.'" *Williams*, 180 F.3d at 703 (quoting *Jackson v. R.E. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993)). The injury must be more than a *de minimis* injury and must be evaluated in the context in which the force was deployed. *Id.*

699 (5th Cir. 1999).  While Plaintiff makes a claim for damages, her allegations are non-specific, boilerplate language that do not identify a specific injury, and she does nothing to tie the damages to the incident at issue.  (DE 19, ¶29).  In deposition, she says her injuries were largely emotional, though she never sought any counseling. (Ex. D1, pp. 31-32).  She claims she put herself on the ground, and that the handcuffs (applied by an officer other than Spikes (Ex. C, ¶3; D2, pp.15-16)) made her wrists sore.  (Ex. D1, pp. 141 & 189). Additionally, Plaintiff fails to plead any injury that resulted directly from the alleged force, let alone that any claimed "injury" resulted *directly and only from* the use of force (by Officer Spikes) that was clearly excessive to the need.  Again, Plaintiff cannot show any force was "clearly excessive to the need" based on admitted, repeated non-compliance and striking the officer with her car. Her general claims of injury do not meet the heightened standards needed to overcome qualified immunity. Additionally, there is nothing to show that Spikes' force was objectively unreasonable.  In fact, the competent evidence proves the opposite as a matter of law. (Ex. C, ¶3; Ex. E, ¶16).   Plaintiff even contradicts her own testimony saying in deposition that she never knew Officer Spikes was a peace officer (despite multiple obvious indications), while insisting in her pleadings (confirmed at her deposition) that she referred to Spikes as "officer."  (Ex. D1, pp. 14-18 & 91, 97-99, 110-111, 125-127, 132, 141) ; DE 19, ¶10.). These contradictions, combined with the video evidence, render Plaintiff's account incredible.  Officer Spikes' account is consistent with and reinforced by the video and Officer Custer.  (Ex. C; DE 25-1; D2 pp. 64-67 & 77-78).

19.     The test for reasonableness must consider "whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id*. at 396, 109 S.Ct. 1865.   Often enough, Fourth Amendment

considerations have to be applied on the spur (and in the heat) of the moment, and the object in

implementing its command of reasonableness is to draw standards sufficiently clear and simple

to be applied with a fair prospect of surviving judicial second-guessing months and years after an

arrest or search is made. *Atwater v. City of Lago Vista*, 532 U.S. 318, 347, 121 S. Ct. 1536,

1553, 149 L. Ed. 2d 549 (2001). Courts attempting to strike a reasonable Fourth Amendment

balance thus credit the government's side with an essential interest in readily administrable rules.

*Id*. (citation omitted). For example, in *Atwater*, the defendant-police officer observed plaintiff

driving her car in violation of the seatbelt laws, pulled plaintiff over, verbally berated her,

handcuffed her, placed her in his squad car, and drove her to the local police station, where she

was made to remove her shoes, jewelry, and eyeglasses, and empty her pockets. *Id*. at 318, 121

S. Ct. at 1538 (citation omitted). Officers then took her "mug shot" and placed her, alone, in a

jail cell for about an hour, after which she was taken before a magistrate and released on bond.

She was charged with, among other things, violating the seatbelt law. *Id*. Despite these facts,

the U.S. Supreme Court found no Fourth Amendment violation. Specifically, the Court said:

> [Plaintiff] was a known and established resident of Lago Vista with no place to
> hide and no incentive to flee, and common sense says she would almost certainly
> have buckled up as a condition of driving off with a citation. In her case, the
> physical incidents of arrest were merely gratuitous humiliations imposed by a
> police officer who was (at best) exercising extremely poor judgment. *** But we
> have traditionally recognized that a responsible Fourth Amendment balance is not
> well served by standards requiring sensitive, case-by-case determinations of
> government need, lest every discretionary judgment in the field be converted into
> an occasion for constitutional review.

*Id.* at 346-47, 121 S. Ct. at 1553, citing *United States v. Robinson,* 414 U.S. 218, 234–235, 94

S.Ct. 467, 38 L.Ed.2d 427 (1973).

16

20.     Additionally, the *clearly established* law confirms that even deadly force can be used when a suspect accelerates a vehicle towards an officer.   Cases addressing suspects fleeing in motor vehicles often focus on the position of the officer relative to the vehicle. *See Hathaway v. Bazany*, 507 F.3d 312, 321 (5th Cir. 2007).   Proximity and temporal factors have also been relevant in our own circuit in a case involving a police officer who fired his weapon at a truck that "gunned" its engine and accelerated towards the officer.   *Herman v. City of Shannon*, 296 F.Supp.2d 709, 713 (N.D. Miss. 2003).   Here, Officer Spikes, who was dressed in full uniform, has stated that she had been hit by Plaintiff's car, and Plaintiff knew it.  (Ex. C, ¶3; D2 pp. 57-58, 64-67).   As such, Officer Spikes had probable cause to believe Plaintiff had committed a crime. (Ex. E, ¶16).   Plaintiff acted evasively—failing to immediately follow Officer Spikes' instructions to identify, and then failing to exit the vehicle when Spikes told her, which shows she actively resisted arrest or attempted to evade arrest. (Ex. C, ¶3; D2, pp.13-14; DE 19, ¶¶9-15).  *After Plaintiff hit Officer Spikes with her car,* Spikes had reason to believe that Plaintiff posed an immediate threat to her safety.  (D2 p. 8-9). Like the *Atwater* plaintiff, Plaintiff Jones may believe that the seizure and arrest were unwarranted under the circumstances as *she* believed them; however, the Supreme Court makes clear that even in such relatively minor moving violations, a peace officer does not violate the Fourth Amendment by making a decision to seize and arrest an individual.   *Atwater*, 532 U.S. 318, 347, 121 S. Ct. 1536, 1553.

21.     Given these standards, Officer Spikes' decision to draw her weapon when she was in close proximity to Plaintiff's car, immediately after she was struck by Plaintiff's car, was warranted.[10]   As noted, Plaintiff asserts that she complied with the officers' orders to exit her

---

[10] Not one frame of the video of the incident suggests that Officer Spikes pointed her gun at Plaintiff's head, contrary to Plaintiff's contrived allegation.  The video and Officer Custer, in fact,

vehicle and lay on the ground.  She does not allege that Officer Spikes touched her in any way. Officer Spikes asserts that, after Plaintiff failed to exit the vehicle as Spikes instructed, Plaintiff was removed from the car and handcuffed.  As such, Spikes' actions were no more forceful than an officer would reasonably believe to be necessary to prevent the plaintiff from leaving the scene and to protect herself, and they did not, therefore, violate Plaintiff's constitutional rights. On the other hand, Plaintiff does not even allege Officer Spikes touched her at all.  Officer Custer indicates that *he* was the officer that handcuffed Plaintiff.  (D2, pp. 15-16).  Plaintiff testified that Officer Custer placed his knee in her back.  She alleges injuries to her wrists and knees.  Neither of these injuries, if they can even be called such, were the result of actions by Officer Spikes.   Under either scenario, as *Atwater* shows, any "injury" related to the arrest and seizure, are "merely gratuitous humiliations" and nothing more.  In sum, even taking as true all of Plaintiff's allegations concerning Officer Spikes, her pleadings still do not meet the heightened standards applicable to this area.  As such, Officer Spikes is entitled to qualified immunity as a matter of law.

> ### 3. The Court should grant summary judgment for Fourth Amendment excessive force claims against Spikes.

22.    To preserve a claim for the use of excessive force under the Fourth Amendment, a plaintiff must first establish that she suffered a seizure with the meaning of the Fourth Amendment.  *See Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004) (citing *Graham v. Connor*, 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).  A plaintiff must then show that she suffered:  (1) an injury; (2) which resulted directly and only from a use of force that was clearly excessive to the need; and (3) the excessiveness of which was objectively

---

confirm Officer Spikes' version that she held her weapon in a down and ready position.  (DE 25, Ex. A; D2, pp. 77-78).  This was completely consistent with BISD police department policy. (D2 p.6).

unreasonable.  *Id. See also Ikerd v. Blair*, 101 F.3d 430, 433–34 (5th Cir. 1996).  "[T]he question [is] whether the totality of the circumstances justified" that use of force.  *Tenn. v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 1700, 85 L.Ed.2d 1 (1985).  In *Graham v. Connor*, 109 S.Ct. at 1865, the Supreme Court articulated three guideposts for courts to use when determining if a particular use of force was reasonable under the circumstances.  These guideposts—often referred to as the *Graham* factors—are: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to police officers or civilians; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by fleeing the scene.  *Id*. at 1872.  The *Graham* factors provide the framework for judging whether an officer's use of force was excessive.

23.    For all the same reasons explained more fully above in Section VI.B.2., Plaintiff's Fourth Amendment claim for excessive force or seizure also fails.  The competent summary judgment evidence shows that she did not suffer anything more than a *de minimis* injury resulting from the alleged excessive force (and even then, primarily from her involvement with a different officer at the scene).  Moreover, there is nothing to suggest that drawing a weapon and handcuffing a suspect who fails to identify herself to an officer, hits an officer with her car, then fails to comply with an officer's instruction to exit the vehicle is unreasonable.

> 4.    *The Court should grant summary judgment for Fourteenth Amendment excessive force and seizure claims against Officer Spikes.*

24.    First, Officer Spikes re-asserts her argument in her motion to dismiss regarding the inapplicability of Plaintiff's Fourteenth Amendment claim.[11]    However, even assuming the

---

[11] In the Fifth Circuit, when *apprehending or seizing* an individual for law enforcement purposes, the Fourth Amendment applies and permits police officers to use objectively reasonable force in light of the facts and circumstances confronting them.  *Batiste v. City of Beaumont*, 421 F. Supp. 2d 969, 983 (E.D. Tex. 2005) (citing *Johnson v. Morel*, 876 F.2d 477, 479 (5th Cir. 1989) (*en banc*) and *Graham v. Connor,* 490 U.S. at 396–97)).  However, when *subsequently detaining* an individual, the Fourteenth

Fourteenth Amendment did apply to the case at bar, Plaintiff appeared to concede this point in her initial response to Officer Spikes' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. (DE 30, p. 20-21, ¶62.). Additionally it appears Plaintiff merely intends to claim an absence of immunity for Fourth Amendment claims against the state entity by extension of rights under the Fourteenth Amendment. (DE 30, p. 20-21, ¶62). Because the Fourth Amendment standards govern all claims asserted by Plaintiff, the analysis above also shows Officer Spikes' entitlement to judgment for any violation under the Fourteenth Amendment.

## VII. CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Defendant Spikes urges this Court to deny Plaintiff any and all relief demanded against Spikes and grant summary judgment in favor of Spikes. Additionally, Spikes further re-urges the Court to dismiss Plaintiff's claims as set out in her Motion to Dismiss. Spikes also requests an award of reasonable attorneys' fees and costs of suit. Finally, Spikes requests the Court grant such other and further relief, both general and specific, in law or at equity, as the Court deems just and proper.

---

Amendment applies and permits good faith use of force to maintain or restore discipline, while proscribing malicious and sadistic force employed for the very purpose of causing pain. *Batiste*, 421 F. Supp. 2d at 983 (citing *Whitley v. Albers*, 475 U.S. 312, 320–21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)). With respect to free citizens, the court explicitly held only that **all "claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' " should be analyzed under the Fourth Amendment.** *Graham v. Connor*, 490 U.S. at 395, 109 S.Ct. at 1871 (emphasis added); *see U.S. v. Lanier*, 520 U.S. 259, n. 7, 117 S.Ct. 1219, 1228 n. 7, 137 L.Ed.2d 432 (1997) ("*Graham v. Connor*, does not hold that all constitutional claims relating to physically abusive government conduct must arise under either the Fourth or Eight Amendment, rather, Graham simply requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."). Here, all of Plaintiff's allegations against Officer Spikes relate to her apprehension and seizure. As such, Plaintiff's Fourteenth Amendment claims are inapplicable to the case at bar and should be dismissed, and there is nothing in Plaintiff's First Amended Complaint that alleges any use of force after Plaintiff was apprehended or seized by Officer Spikes, and there is certainly nothing that would suggest that Spikes engaged in any malicious or sadistic force following Plaintiff's arrest.

Respectfully submitted,

WALSH, ANDERSON, GALLEGOS,
GREEN & TREVIÑO, P.C.
10375 Richmond Avenue, Suite 750
Houston, Texas 77042
Telephone:  (713) 789-6864
Facsimile:  (713) 789-9318
Email:  jbyrom@wabsa.com
Email:  kkalchthaler@wabsa.com


By: */s/    James E. Byrom*
     JAMES E. BYROM
     State Bar No. 03568100
     KELLEY L. KALCHTHALER
     State Bar No. 24074509
ATTORNEYS FOR DEFENDANT
TAMARA SPIKES

21

## <u>CERTIFICATE OF SERVICE</u>

  I hereby certify that on the 30th day of December, 2014, a true and correct copy of the foregoing was served upon counsel of record as follows:

    Kenneth W. Lewis         *Via Electronic Case Filing*
    State Bar No. 12295300
    Stephen L. Townsend
    State Bar No. 24071539
    Bush Lewis, PLLC
    595 Orleans Street, Ste. 500
    Beaumont, TX  77701
    Phone: 409-835-3521
    Facsimile: 409-835-4194
    *ATTORNEYS FOR PLAINTIFF*
    *CHRISTINE JONES*

    Christopher Gilbert         *Via Electronic Case Filing*
    State Bar No. 00787535
    Frances R. Broussard
    State Bar No. 24055218
    Thompson & Horton LLP
    Phoenix Tower, Suite 2000
    3200 Southwest Freeway
    Houston, TX 77027
    Phone: 713-554-6767
    Facsimile: 713-583-8884
    *ATTORNEYS FOR DEFENDANT BEAUMONT*
    *INDEPENDENT SCHOOL DISTRICT*

            */s/ James E. Byrom*
            James E. Byrom

22