IN UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| CHRISTINE JONES | § § § | |
| vs. | § § | C.A. NO. 1:14-CV-00103 |
| TAMARA SPIKES and BEAUMONT INDEPENDENT SCHOOL DISTRICT POLICE DEPARTMENT | § § § § | |

### AFFIDAVIT OF MARGO L. FRASIER

| | |
|---|---|
| STATE OF TEXAS | § § |
| COUNTY OF TRAVIS | § |

BEFORE ME, the undersigned authority, on this day personally MARGO FRASIER, known to me to be the person whose signature appears below and, having been by me duly sworn, the said person stated on oath as follows:

1. "My name is Margo Frasier. I am over 18 years of age. I have never been convicted of a felony or crime of moral turpitude, and I am personally competent to make this affidavit. I have personal knowledge of all facts stated in this affidavit, or have formed opinions related to the evidence in this case based upon sufficient facts and data reasonably relied upon by experts in my field, and they are true and correct.

2. I am presently self-employed as a criminal justice consultant and expert. I have been retained as an expert witness for Tamara Spikes (Spikes) and Beaumont Independent School District (BISD) (collectively referred to as Defendants) in the matter of *Christine Jones v. Tamara Spikes and Beaumont Independent School District*, in the United States District Court, Eastern District, Beaumont Division, Civil Action No. 1:14-CV-00103-RC-ZJH.

3. I have been asked to render opinions relating to the actions of Defendants in connection with an incident that occurred on May 2, 2013, when Christine Jones (Jones) was involved in an incident while Spikes was working traffic control as an officer of the

1



4. BISD outside of a BISD school. Specifically, Jones claims her rights were violated due to an alleged unlawful arrest and an alleged use of excessive force by Spikes.

4. Specifically, I have been asked to review documentary material related to the actions of the employees of the BISD in connection with the incident, the pleadings of the parties, and relevant statutes and case law for the purpose of determining whether the employees of the BISD subjected Jones to a violation of her constitutional rights.

5. I have significant experience in all facets of law enforcement and corrections. Presently, I am self-employed as a criminal justice consultant and expert. Additionally, I am employed as the Police Monitor for the City of Austin. My duties as Police Monitor include overseeing all of the internal affairs investigations of the Austin Police Department and providing recommendations on how to improve the Austin Police Department. Prior to joining the City of Austin, I was a Senior Associate with MGT of America, Inc. (MGT), where I provided litigation support, expert witness services, and consulting in criminal justice issues. Prior to joining MGT, I was an Assistant Professor of Criminal Justice in the College of Criminal Justice at Sam Houston State University in Huntsville, Texas. Prior to joining the faculty at Sam Houston State University, I was the duly elected Sheriff of Travis County (Austin), Texas.

6. I assumed office as Sheriff of Travis County, Texas, on January 1, 1997, and served as the Chief Law Enforcement Officer and Chief Corrections Officer of Travis County, Texas, until December 31, 2004. I graduated from Sam Houston State University with a Bachelor of Science degree with honors in Criminology and Corrections in 1974. I received thirty hours of credit towards a Masters of Arts degree in Criminal Justice Management from Sam Houston State University. I received my Juris Doctor with high honors from Florida State University College of Law in 1984. I am certified both as a peace officer and jail officer by the Texas Commission on Law Enforcement.

7. During my 38 years of experience, I have worked at a state prison in Texas; worked in a number of different capacities within the Travis County Sheriff's Office; worked at and managed a county jail system; worked for the legislative committee which provided oversight of the jail and prison systems of the State of Florida; represented, as an attorney, numerous cities, counties, city officials and county officials in litigation related to law enforcement, corrections, and employment law; served as Sheriff, and, therefore, Chief Law Enforcement Officer and Chief Corrections Officer, of Travis County, Texas; provided criminal justice consultation; and served as Police Monitor of the City of Austin.

8. In addition, from 1997 to 2004, I was on the faculty at Saint Edward's University in Austin, Texas. At Saint Edward's University, I taught criminal justice courses including courses on American Policing, Corrections, and Juvenile Justice. While on the faculty at Sam Houston State University from 2005 to 2008, I taught criminal justice courses including Criminal Law, Criminal Investigation, Professionalism and Ethics in Criminal

        Justice, Legal Aspects of Corrections, Seminar on Administration and Organization, and Legal Aspects of Criminal Justice Management. Specifically, as part of the courses on Legal Aspects of Criminal Justice Management and Legal Aspects of Corrections, I taught the legal principles related to the liability of criminal justice agencies for the actions of their employees and liability of employees; specifically, those related to issues of training, supervision, use of force, and arrest.

9.    I have extensive experience and have provided consulting, instructional, and legal services in such areas as training, classification, security, use of force, arrest, search and seizure, supervision of staff, inmate rights, mental health laws, employment matters, and employee discipline. My experience includes instructing at the National Sheriffs' Institute. I have developed and implemented policies and procedures which relate to almost every aspect of the operation of a law enforcement agency and a correctional agency; particularly those required by the Texas Commission on Law Enforcement (TCOLE). I am extremely familiar with the statutes and case law of the United States which relate to the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and the ADA. I am particularly familiar with the duties imposed on a Sheriff or Chief and/or his/her deputies or officers. I have extensive experience in analyzing a particular incident that has allegedly occurred in an employment setting, law enforcement setting, or jail setting to determine whether public officials acted in accordance with accepted procedures consistent with competent law enforcement training and within the laws and Constitutions of the United States and the State of Texas, whether a law enforcement administrator failed to enact any policy or procedure that he/she is required to adopt, whether a law enforcement administrator failed to properly train officers, and whether law enforcement officials have acted outside the range of acceptable law enforcement discretionary acts.

10.    As the Sheriff of Travis County, Texas, I was the head of an agency which employed over 1300 employees and had a budget for 2004-2005 of over $90 million dollars. As the Chief Law Enforcement Officer and Chief Corrections Officer, I was directly responsible for the supervision of the jail and supervision of law enforcement officers patrolling, investigating, and enforcing criminal laws within Travis County. The law enforcement officers included deputies assigned as school resource officers. Additionally, I was directly responsible for the oversight of the employment and training practices of the Sheriff's Office to insure compliance with state and federal statutes and the United States Constitution. As the Police Monitor of the City of Austin, former Sheriff, and Assistant Professor of Criminal Justice, I am extremely familiar with the statutes which relate to employees of police departments and sheriff's offices and the liability of criminal justice agencies for the actions of their employees; specifically, those related to issues of training, supervision, arrest, search and seizure, and the use of force.

11.    During my time as Sheriff, I was a member of the Sheriffs' Association of Texas, National Sheriffs' Association, the Major County Sheriffs' Association, and the National Executive Institute Associates. I was elected to the Board of Directors of the National

Sheriffs' Association by a vote of the membership in 2002 and served through 2004. I was elected to be the Treasurer of the Major County Sheriffs' Association by a vote of the membership in 1999 and served as treasurer through 2001. I was elected to be the Vice-President of the Major County Sheriffs' Association by a vote of the membership in 2002 and served as Vice-President through 2003. I was elected to be the President of the Major County Sheriffs' Association by a vote of the membership and served as President during 2004. I was twice selected by the Combined Law Enforcement Associations of Texas as the Administrator of the Year for the State of Texas.

12.   In arriving at my opinions, I have examined the following items:

- Plaintiff's First Amended Original Petition;
- Spikes' Federal Court Notice of Removal and accompanying documents;
- Joint Conference Report;
- Scheduling Order;
- Plaintiff's Amended Complaint;
- Spikes' Motion to Dismiss and Alternatively Motion for Summary Judgment and Exhibits;
- Plaintiff's Opposition to Spikes' Motion to Dismiss and Alternatively Motion for Summary Judgment and Exhibits;
- Spikes' Reply to Plaintiff's Opposition;
- Spikes' Original Answer to Plaintiff's Amended Complaint;
- Plaintiff's Sur-Reply to Spikes' Reply to Plaintiff's Opposition;
- Beaumont Independent School District Police Department's Original Answer;
- BISD's Initial Disclosures;
- Spikes' Initial Disclosures and Exhibits
- Plaintiff's Initial Disclosures;
- Plaintiff's Original Petition;
- Spikes' State Court Notice of Removal;
- Spikes' Original Answer;
- Plaintiff's Disclosure of Expert Testimony;
- Plaintiff's Supplement Disclosures;
- Spikes' Medical Records;
- Videotape of incident;
- Offense Report related to incident including statements and photographs;
- Relevant statutes, regulations, and codes including Chapters 9, 22, 38 of the Texas Penal Code, Chapter 14 of the Texas Code of Criminal Procedure; and
- Relevant case law including *Plumhoff v. Rickard* (U.S. 2014), *Scott v. Harris,* (U.S. 2007), *Atwater v. Lago Vista,* (U.S. 2001), *Graham v. Connor,* (U.S. 1989), *Tennessee v. Garner,* (U.S. 1985), *Lytle v. Bexar County,* (5th Cir. 2009), and *Hare v. City of Corinth,* (5th Cir. 1998).

4

13. Additionally, I have examined the conduct of Defendants in light of my experience as a law enforcement officer, administrator, and educator. The opinions set forth herein are based upon analysis of these facts by applying my law enforcement, corrections, administrative and teaching experience; legal education; training; personal knowledge of the applicable amendments to the United States Constitution and the applicable provisions of the law of the United States; knowledge of the applicable provisions of the Texas statutes and codes and knowledge of training customarily provided to law enforcement officers in Texas through the TCOLE. My opinions are also based on my understanding of the facts and circumstances concerning the roles of the various employees and officials of the BISD, evidenced by the materials I have examined and my personal training and experience, particularly in law enforcement training, in the events of which the Jones complain. In particular, my opinions are based on:

- Spikes being employed by BISD as a police officer;
- Spikes being assigned, among other duties, to conduct traffic control at Vincent Middle School on May 2, 2013;
- Spikes wearing a distinctive police officer uniform and traffic safety vest while conducting traffic control;
- Jones having driven her vehicle into the circular drive in the left lane and stopped so as to potentially block other vehicles from exiting;
- Jones having been ordered by Spikes to move her vehicle;
- Jones having ignored Spikes' order to move her vehicle;
- Spikes having asked Jones, after her repeated refusal to move her vehicle, for her driver's license;
- Jones having ignored Spikes' order to give Spikes her driver's license;
- Jones having struck Spikes with her vehicle with such force as to knock Spikes to the ground and cause injury;
- Jones, by virtue of having struck Spikes, having committed a felony offense for assault of a public servant;
- Spikes having drawn her duty weapon and holding it at a low ready position while ordering Jones to get out of her vehicle;
- Jones having ignored Spikes' order to get out of her vehicle;
- Spikes having radioed asking for backup as she had just been hit by Jones' vehicle;
- Other officers arriving and assisting Spikes in taking Jones into custody;
- Jones having been arrested and booked into jail;
- A magistrate having issued arrest warrants for Jones for the offenses for which she was booked; and
- The charges against Jones eventually being dropped.

14. My opinions are also based on my review and study of the materials listed and an ongoing review of professional and scholarly literature regarding the duties and responsibilities of Sheriffs, Chiefs, law enforcement officers, and legal requirements including the National Criminal Justice Reference Service, the Justice Quarterly, the

  Police Quarterly, the studies that are conducted by the Police Executive Research Forum (PERF), the Federal Civil Practice Bulletin, and the magazine publications of the National Sheriff's Association and the International Association of Chiefs of Police.

15. I have analyzed the actions of the Defendants in light of the Constitutions of the United States and the State of Texas, the statutes and codes of the United States and the State of Texas, and TCOLE regulations and Texas training regarding licensing and training of law enforcement officers.

16. My professional opinions related to this matter can be summarized as follows:

- There is no information in the record I have analyzed indicating that the Jones' rights under the Fourth, Fifth, or Fourteenth Amendments to the United States Constitution were violated by the Defendants in that there is no indication that excessive force was used or an unlawful arrest was made.
- At the time of the incident in question, Spikes was wearing a distinctive uniform and badge indicating that she was employed as public servant; to wit, as a police officer for BISD.
- At the time of the incident in question, Spikes would have had, based on her observations and training, a rational basis for her belief that Jones should be approached and told to move her vehicle immediately.
- At the time of the incident in question, Spikes would have had, based on her observations and training, a rational basis for her belief that, once Jones refused to move her vehicle after being repeatedly ordered to do so that Jones should be identified by way of her driver's license.
- At the time of the incident in question, Spikes would have had, based on her observations and training, a rational basis for her belief that, once Jones refused to move her vehicle after being repeatedly ordered to do so and refused to give Spikes her driver's license despite being ordered to do so that Spikes should attempt to identify the driver of the vehicle by looking at the license plate and vehicle identification number.
- Jones struck Spikes with her vehicle while Spikes was performing her official duties.
- The force at which Jones struck Spikes with her vehicle was sufficient to knock Spikes to the ground and cause injury.
- The striking of Spikes by Jones with her vehicle constituted a felony assault on a public servant.
- Once Jones struck Spikes with her vehicle, Spikes would have had, based on her observations and training, a rational basis for drawing her duty weapon.
- Once Jones struck Spikes with her vehicle, Spikes would have had, based on her observations and training, a rational basis for demanding that Jones exit her vehicle.
- Once Jones struck Spikes with her vehicle, Spikes would have had, based on her observations and training, a rational basis for detaining and arresting Jones for the offense of assault on a public servant.

- The decision to tell Jones to move her vehicle, attempt to identify Jones, and detain Jones would have been in the course and scope of Spikes' duties with the BISD.
- Given the reasonable observations and perceptions of Spikes, Spikes would have had, based on her training, a rational basis for her belief that the Jones should be ordered from the vehicle, placed on the ground, and handcuffed for the safety of the BISD officers and other persons in the area.
- Given, at the time of the incident in question, the training and reported perceptions of the officers, the steps they took to deal with the Jones and the steps taken to detain and secure the Jones were consistent with law enforcement training and procedures including the drawing of Spikes' duty weapon.
- The BISD officers, including Spikes, used no greater force against the Jones than was necessary to detain her.
- In the exercise of their discretion, and based upon fairly standardized training on the basic tactical and legal considerations related to scene recognition, an officer from another jurisdiction who had no involvement in this case, like the involved officers, could have reasonably and appropriately reached the same conclusion that the officers did that Jones had committed the offense of assault on a public servant.
- In the exercise of their discretion, and based upon fairly standardized training on the basic tactical and legal considerations related to scene recognition, an officer from another jurisdiction who had no involvement in this case, like the involved officers, could have reasonably and appropriately reached the same conclusion that the officers did that Jones was potentially a threat to the safety of the BISD officers and others in the area and thus required the officers restrain Jones.
- The actions taken by the BISD officers, including Spikes, were those of discretion requiring personal deliberation, decision and judgment.
- There is no evidence to indicate that the employees of the BISD were inadequately trained. Particularly, there is no evidence that any failure to train the employees, if any failure did exist, amounted to deliberate indifference on the part of any policymaker for BISD. In fact, the evidence is to the contrary. All of the employees met the requirements for training for the State of Texas as outlined by TCOLE standards.
- At the time of the incident in question, there was nothing to put BISD on notice that its employees were inadequately trained; much less plainly incompetent. To the contrary, the employees of the BISD met all of the requirements for training as mandated by TCOLE.
- There is no evidence that BISD had or has a policy, custom, or practice of empowering its officers with unfetter discretion to unlawfully arrest anyone.
- There is no evidence that BISD has a policy, custom, or practice of failing to adequately supervise or train its deputies.
- At the time of the incident in question, BISD did not have a custom, practice, and/or policy of failing to adequately train or supervise its employees to comply with BISD's policies or state statutes or regulations.
- There is no objective evidence that indicates any policymaker of BISD acted with deliberate indifference in regard to any training and/or supervision that the employees of

the BISD may have required in that there is nothing that would suggest a pattern of conduct which would have put a policymaker on notice that additional training and/or supervision was needed.
- There is no objective evidence that Spikes, when trying to affect the arrest of Jones, pointed her duty weapon at Jones' face or head or threatened to use deadly force against Jones. However, if Spikes did point her duty weapon at Jones' face or head or threaten to use deadly force to affect the arrest of Jones for a felony, such behavior would be consistent with the threat of deadly force under the Texas Penal Code and TCOLE training.

17.   It is my professional opinion that the actions taken by Spikes and the other BISD officers were objectively reasonable and in line with the training of Texas police officers.

18.   I reserve the right to modify or expand my opinions should additional facts or evidence be provided."

FURTHER AFFIANT SAYETH NOT.

_____
MARGO L. FRASIER

SUBSCRIBED AND SWORN TO before me on this ___ day of December 20 14.

_____
Notary Public, State of Texas

ANGI WILLIAMSON
Notary Public, State of Texas
My Commission Expires
FEBRUARY 10, 2016

Print Name: Angi Williamson

My Commission Expires: 2/10/16

8