IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| CHRISTINE JONES | § | |
| | § | |
| | § | |
| vs. | § | C.A. NO. 1:14-CV-00103 |
| | § | |
| TAMARA SPIKES and | § | |
| BEAUMONT INDEPENDENT | § | |
| SCHOOL DISTRICT POLICE | § | |
| DEPARTMENT | § | |

## DEFENDANT BEAUMONT INDEPENDENT SCHOOL DISTRICT'S MOTION FOR SUMMARY JUDGMENT

Christopher B. Gilbert
Attorney-in-Charge
State Bar No. 00787535
cgilbert@thompsonhorton.com
Frances R. Broussard
State Bar No. 24055218
fbroussard@thompsonhorton.com
**THOMPSON & HORTON LLP**

3200 Southwest Freeway, Suite 2000
Houston, Texas 77027
Telephone: (713) 554-6744
Facsimile: (713) 583-7698

**ATTORNEYS FOR DEFENDANT BEAUMONT INDEPENDENT SCHOOL DISTRICT**

i

## TABLE OF CONTENTS

I.      Statement of the Case .............................................................................................1

II.     Statement of the Issues .........................................................................................2

III.    Statement of Material Standard ..........................................................................2

IV.     Summary Judgment Standard .............................................................................5

V.      Argument and Authorities ....................................................................................5

        A.      Plaintiff cannot show that Office Spikes used clearly excessive force that was objectively unreasonable under the circumstances facing Officer Spikes...............5

            1.      More than a De Minimis Injury, "Directly and Only" from the Use of Force ................................................................................................6

            2.      Excessive to the Need and Objectively Unreasonable................................7

        B.      Plaintiff cannot show unreasonable seizure or arrest............................................12

        C.      Plaintiff has failed to show a "custom, policy, or practice" of constitutional violations on the part of the District. ....................................................................15

        D.      Plaintiff cannot show that the District failed to supervise, discipline, or train Officer Spikes in such a way that the failure caused her injuries or demonstrated deliberate indifference ............................................................................................18

VI.     Conclusion ............................................................................................................23

## INDEX OF EXHIBITS

The following exhibits are attached to this Motion for Summary Judgment and are incorporated herein for all purposes:

Exhibit A:    Deposition Testimony of Christine Jones

Exhibit B:    Declaration of Tamara Spikes

Exhibit C:    Declaration of Eric Payne

Exhibit C-1:    Beaumont ISD Police Department Policy and Procedures Manual

Exhibit D:    Deposition Testimony of Matthew Custer

Exhibit E:    Declaration of Danny Moore

Exhibit E-1:    Investigation Documents

Exhibit F:    Training Records of Tamara Spikes

Exhibit G:    TCOLE Basic Peace Officer Course Material

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Williams,*
    407 U.S. 143, 92 S. Ct. 1921 (1972)........................................................................13

*Anderson v. Liberty Lobby Inc.,*
    477 U.S. 242, 106 S. Ct. 2505 (1986)......................................................................5

*Atwater v. City of Lago Vista,*
    532 U.S. 318 (2001).............................................................................................7, 8

*Bagley v. Boyte,*
    94 F.3d 641, 1996 WL 465845 (4th Cir.1996) (unpublished)................................11

*Baker v. Putnal,*
    75 F.3d 190 (5th Cir. 1996) .........................................................................17, 20, 22

*Benavides v. County of Wilson,*
    955 F.2d 968 (5th Cir. 1992) ..............................................................................19, 20

*Bennett v. City of Slidell,*
    728 F.2d 762 (5th Cir. 1984), cert. denied, 472 U.S. 1016, 105 S. Ct. 3476
    (1985).................................................................................................................16, 17

*Board of County Comm'rs of Bryan County, Okl. v. Brown,*
    520 U.S. 397, 117 S. Ct. 1382 (1997).....................................................................16

*Brinegar v. United States,*
    338 U.S. 160, 69 S. Ct. 1302 (1949).......................................................................13

*Brown v. Bryan County,*
    219 F.3d 450 (5th Cir. 2000) ..................................................................................19

*Brown v. Houston Indep. Sch. Dist.,*
    763 F. Supp. 905 (S.D. Tex. 1991), aff'd, 957 F.2d 866 (5th Cir. 1992), *cert.*
    *denied*, 113 S. Ct. 198 (1992) ...............................................................................16

*Brown v. Lyford,*
    243 F.3d 185 (5th Cir. 2001) ..................................................................................13

*Brumfield v. Hollins,*
    551 F.3d 322 (5th Cir. 2008) ..................................................................................20

*Callison v. State,*
    218 S.W.3d 822 (Tex.App.—Beaumont 2007, no pet.) .........................................15

*Canton v. Harris,*
    489 U.S. 378, 109 S.Ct. 1197 (1989) ............................................................18

*Celotex Corp. v. Catrett,*
    477 U.S. 317, 106 S.Ct. 2548 (1986) ............................................................5

*Collier v. Montgomery,*
    569 F.3d 214 (5th Cir. 2009) ............................................................9

*Collins v. City of Harker Heights, Texas,*
    112 S. Ct. 1061 (1992) ............................................................15, 16

*Conner v. Travis County,*
    209 F.3d 794 (5th Cir. 2000) ............................................................20

*Connick v. Thompson,*
    131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011) ............................................................19

*Cozzo v. Tangipahoa Parish Council,*
    279 F.3d 273 (5th Cir. 2002) ............................................................22

*Estate of Davis v. City of N. Richland Hills,*
    406 F.3d 375 (5th Cir. 2005) ............................................................22

*Doe v. Hillsboro Indep. Sch. Dist.,*
    113 F.3d 1412 (5th Cir. 1997) (en banc) ............................................................16

*Dorsey v. Barber,*
    517 F.3d 389 (6th Cir.2008) ............................................................11

*Drichas v. State,*
    175 S.W.3d 795 (Tex.Crim.App. 2005) (en banc) ............................................................15

*Fields v. City of South Houston,*
    922 F.2d 1183 (5th Cir. 1989) ............................................................12, 13

*Flowers v. Fiore,*
    359 F.3d 24 (1st Cir.2004) ............................................................11

*Fraire v. City of Arlington,*
    957 F.2d 1268 (5th Cir. 1992) ............................................................17, 22

*Freeman v. Gore,*
    483 F.3d 404 (5th Cir. 2007) ............................................................6, 12

*Glenn v. City of Tyler,*
    242 F.3d 307 (5th Cir. 2001) ............................................................6, 7, 9

*Gonzales v. Brown*,
    768 F. Supp. 581 (S.D. Tex. 1991) ........................................................................16

*Gonzales v. Westbrook*,
    118 F.Supp.2d 728 (W.D. Tex. 2000) ...................................................................20

*Gonzales v. Ysleta Indep. Sch. Dist.*,
    996 F.2d 745 (5th Cir. 1993) ...............................................................................17

*Goodson v. City of Corpus Christi*,
    202 F.3d 730 (5th Cir. 2000) ...............................................................................13

*Graham v. Connor*,
    490 U.S. 386, 109 S. Ct. 1865 (1989)............................................................7, 8, 12

*Grandstaff v. City of Borger*,
    779 F.2d 1129 (5th Cir. 1986) .............................................................................23

*Hart v. O'Brien*,
    127 F.3d 424 (5th Cir. 1997) ...............................................................................12

*Huang v. Harris County*,
    264 F.3d 1141 (5th Cir. 2001) ...............................................................................8

*Huong v. City of Port Arthur*,
    961 F. Supp. 1003 (E.D. Tex. 1997).....................................................................20

*Ikerd v. Blair*,
    101 F.3d 430 (5th Cir. 1996) ...........................................................................6, 10

*Jett v. Dallas Indep. Sch. Dist.*,
    7 F.3d 1241 (5th Cir. 1993) .................................................................................17

*Johnson v. Missouri City*,
    2009 WL 6767109 (S.D. Tex., Mar. 9, 2009).........................................................6

*Johnson v. Morel*,
    876 F.2d 477 (5th Cir. 1989) ...............................................................................12

*Jones v. City of Jackson*,
    203 F.3d 875 (5th Cir. 2000) ...............................................................................12

*Jones v. Webb*,
    45 F.3d 178 (7th Cir. 1995) ...............................................................................9, 10

*Lawrence v. Kenosha County*,
    391 F.3d 837 (7th Cir. 2004) ...............................................................................17

*Lennon v. Miller*,
    66 F.3d 416 (2d Cir. 1995) .................................................................................9

*Mettler v. Whitledge*,
    165 F.3d 1197 (8th Cir. 1999) ...........................................................................17

*Monell v. City of New York*,
    436 U.S. 658, 98 S. Ct. 2018 (1978)...................................................................16

*Morin v. Caire*,
    77 F.3d 116 (5th Cir. 1996) ...............................................................................12

*Neague v. Cynkar*,
    258 F.3d 504 (6th Cir. 2001) ...............................................................................9

*Ontiveros v. City of Rosenberg, Tex.*,
    564 F.3d 379 (5th Cir. 2009) ...............................................................................6

*Owen v. City of Independence*,
    445 U.S. 622, 100 S. Ct. 1398 (1980)................................................................16

*Peterson v. City of Fort Worth*,
    588 F.3d 838 (5th Cir. 2009) .............................................................................20

*Poole v. Shreveport*,
    691 F.3d 624 (5th Cir. 2012) .............................................................................14

*Price v. Roark*,
    256 F.3d 364 (5th Cir. 2001) .............................................................................13

*Reese v. Anderson*,
    926 F.2d 494 (5th Cir. 1991*)* ..............................................................................5

*Roberts v. City of Shreveport*,
    397 F.3d 287 (5th Cir. 2005) .............................................................19, 20, 22

*Rodriguez v. Farrell*,
    280 F.3d 1341 (11th Cir. 2002) .......................................................................8, 9

*Santibanes v. City of Tomball, Tex.*,
    654 F.Supp.2d 593 (S.D.Tex. 2009).................................................................12

*Saucier v. Katz*,
    533 U.S. 194, 121 S. Ct. 2151 (2001)............................................................5, 10

*Smith v. Watkins*,
    159 F.3d 1137 (8th Cir. 1998) ...........................................................................17

vii

*Snyder v. Trepagnier*,
    142 F.3d 791 (5th Cir. 1998) ................................................................17, 18

*Spiller v. City of Texas City*,
    130 F.3d 162 (5th Cir. 1997) ......................................................................17

*Staten v. Adams*,
    939 F.Supp.2d 715 (S.D. Tex. 2013) ...........................................................6

*Terry v. Ohio*,
    392 U.S. 1, 88 S. Ct. 1868 (1968) ........................................................12, 13

*Topalian v. Ehrman*,
    954 F.2d 1125 (5th Cir.), cert. denied, 113 S. Ct. 82 (1992) ..........................5

*U.S. v. Sanders*,
    994 F.2d 200 (5th Cir.1993) .......................................................................11

*United States v. Ibarra-Sanchez*,
    199 F.3d 753 (5th Cir. 1999) .....................................................................14

*United States v. Martinez*,
    808 F.2d 1050 (1987) ................................................................................13

*United States v. Michelletti*,
    13 F.3d 838 (5th Cir. 1994) .......................................................................14

*United States v. Santiago*,
    310 F.3d 336 (5th Cir. 2002) .....................................................................14

*United States v. Silva*,
    957 F.2d 451 (5th Cir. 1992) .....................................................................14

*United States v. Tellez*,
    11 F.3d 530 (5th Cir. 1993) .......................................................................14

*Valle v. City of Houston*,
    613 F.3d 536 (5th Cir. 2010) ................................................................18, 20

*Walcotte v. Wicks*,
    2009 WL 1373601 (S.D. Tex. May 15, 2009) ...............................................9

*Webster v. City of Houston*,
    735 F.2d 838 (5th Cir. 1984) .....................................................................22

*Worsham v. City of Pasadena*,
    881 F.2d 1336 (5th Cir. 1989) ...................................................................16

*Zarnow v. City of Wichita Falls*,
   614 F.3d 161 (5th Cir. 2010) ................................................................18

**Statutes**

42 U.S.C. § 1983 ................................................................... *passim*

TEX. PENAL CODE §§ 22.01 ................................................................15

TEX. PENAL CODE § 22.02(b)(2)(B) ................................................................15

Section 1701.251 of the Texas Occupations Code ................................................20

Section 1701.352 of the Texas Occupations Code ................................................21

Section § 1701.253 of the Texas Occupations Code ................................................20

**Other Authorities**

Fourth Amendment ................................................................... *passim*

Fifth Amendment ................................................................12

Fourteenth Amendment ................................................................12

http://www.tcole.texas.gov/sites/default/files/CourseCMU/history_of_the_bpoc_course.pdf ................................................................20

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

CHRISTINE JONES                          §
                                         §
                                         §
vs.                                      §          C.A. NO. 1:14-CV-00103
                                         §
TAMARA SPIKES and                        §
BEAUMONT INDEPENDENT                     §
SCHOOL DISTRICT POLICE                   §
DEPARTMENT                               §

## DEFENDANT BEAUMONT INDEPENDENT SCHOOL DISTRICT'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF THE COURT:

COMES NOW Defendant Beaumont Independent School District ("BISD") and files its

Motion for Summary Judgment, and would respectfully show the Court the following:

## I.     STATEMENT OF THE CASE

Plaintiff Christine Jones filed this lawsuit against Defendants Beaumont Independent

School District and Tamara Spikes ("Spikes") to recover for injuries allegedly suffered as a

result of Jones' arrest by Spikes and other BISD Police Department Officers on May 2, 2013.

The Plaintiff asserts claims under the Fourth, Fifth, and Fourteenth Amendments, via 42 U.S.C.

§ 1983 for claims of excessive force and unreasonable seizure.  The District asserts that it is not

legally liable to Plaintiff on any of the claims pled against the District, and now moves for

summary judgment on all claims.

1

## II.     STATEMENT OF THE ISSUES

1.     Whether the force used by Officer Spikes was objectively reasonable under the circumstances facing Officer Spikes.

2.     Whether Officer Spikes had reasonable suspicion and probable cause to detain and/or arrest Plaintiff.

3.     Whether the Plaintiff has failed to show a "custom, policy, or practice" of constitutional violations on the part of the District, as required for entity liability under § 1983.

4.     Whether the Plaintiff has failed to show that the District failed to supervise, discipline, or train Officer Spikes in such a way that the failure caused her injuries or demonstrated deliberate indifference.

## III.     STATEMENT OF MATERIAL FACTS

This lawsuit arises out of the arrest of Plaintiff Christine Jones by BISD Police Officer Tamara Spikes, as well as other BISD police officers, on May 2, 2013, at Vincent Middle School.  Plaintiff's First Amended Complaint admits the following material facts: Officer Spikes first instructed Plaintiff not to make an unsafe turn, and then Plaintiff did not follow Spikes' further instruction to move her car (Plaintiff's First Amended Complaint, ¶¶9, 10); Officer Spikes asked for Plaintiff's driver's license (notably, Plaintiff does not say she complied, and in fact she did not) (Plaintiff's First Amended Complaint, ¶11; Ex. A pp. 110-111); Officer Spikes repeatedly told Plaintiff, "You hit me!" after Plaintiff struck her with her car (Plaintiff's First Amended Complaint, ¶14); after she became aware of Officer Spikes' claim that she had been hit, Plaintiff did not immediately comply with Officer Spikes' order to exit the car (Plaintiff's

First Amended Complaint, ¶¶14-15); and finally, Plaintiff was arrested and later charged with assaulting a police officer and for failure to identify (Plaintiff's First Amended Complaint, ¶15).

Officer Spikes, through her declaration attached to her Supplemental Motion for Summary Judgment and Supplemental Motion to Dismiss (and attached herein as Exhibit B for ease of reference) provides the following additional factual details:  On May 2, 2013, Officer Spikes was assigned to direct traffic at Vincent Middle School, and on that day she was wearing her official police uniform and police traffic vest.  (Ex. B, ¶¶ 2-3).   As traffic was flowing into the student pick-up area, she noticed a white SUV making an improper left turn into the parking lot. Plaintiff Christine Jones was driving the vehicle.  (Ex. B, ¶ 3).  Officer Spikes approached the vehicle on the driver's side and asked Plaintiff to lower the window, and the pair acknowledged each other. Officer Spikes told Plaintiff that left turns were not allowed on the parking lot; Plaintiff said "all right" and moved her vehicle. *Id.*

Plaintiff then parked her car in the left-hand traffic lane, blocking several cars that were in parking lanes to her right. (Ex. B, ¶ 3; *see also* Exhibit A to Defendant Tamara Spikes' Motion to Dismiss [Docket No. 25.][1]) Officer Spikes repeatedly asked Plaintiff to move forward so that the cars would not be blocked, and while Plaintiff said she would comply, she did not. Plaintiff stated she would not move until a white Ford moved. (Ex. B, ¶ 3).  Officer Spikes told Plaintiff that she had to move forward and that there was plenty of space for her to do so to avoid blocking other cars.  (Ex. B, ¶ 3).  Again, Plaintiff refused to comply. Officer Spikes repeatedly asked Plaintiff for her driver's license and proof of insurance. (Ex. B, ¶ 3).  Plaintiff did not comply and completely ignored Officer Spikes, rolling her windows up. Officer Spikes then stepped several feet away from Plaintiff's vehicle to read her license plate.  (Ex. B, ¶ 3).

---

[1] To avoid cluttering the Record with multiple copies of the same video, the District incorporates the video [Docket No. 25, Ex. A] by reference.

Although she had been instructed not to move, Plaintiff moved her car forward quickly towards Officer Spikes and struck her, causing Officer Spikes to fall to the ground, and continued to drive forward. (Ex. B, ¶ 3). Immediately prior to the impact, Officer Spikes had gotten on her radio to call for assistance. (Ex. B, ¶ 3).

After impact, Officer Spikes informed dispatch that she had been hit with a car. (Ex. B, ¶ 3).When Plaintiff reached for something in her purse, Officer Spikes became concerned that she might have a gun, so she drew her service revolver, kept it in the down and ready position, and ordered Plaintiff to get out of the car. (Ex. B, ¶ 3). She demanded several times that Plaintiff exit the car. (Ex. B, ¶ 3). Plaintiff refused to comply and ignored her orders. (Ex. B, ¶ 3). Despite the arrival of Officer Matthew Custer, who also demanded Plaintiff exit the vehicle, Plaintiff did not comply until several more attempts and directions from both officers. (Ex. B, ¶ 3). Plaintiff finally opened the door, but still did not exit the vehicle, refusing to get out despite the officers' demands. (Ex. B, ¶ 3). The officers re-holstered their weapons, and Officer Custer removed Plaintiff from the car, placing her on the ground. (Ex. B, ¶ 3). Plaintiff continued to be non-compliant until the officers restrained her, assisted Plaintiff to her feet, and escorted her to Officer Spikes' patrol unit. (Ex. B, ¶ 3). Officer Spikes took Plaintiff to the Jefferson County Correctional Facility with the assistance of Officer Stephen Rivers. (Ex. B, ¶ 3).Officer Spikes was not able to drive at that time because of the injuries she sustained as result of Plaintiff hitting her with the vehicle. (Ex. B, ¶ 3). Officer Spikes did not observe any physical injury to Plaintiff, and she complained of none, although Officer Spikes was injured when Plaintiff hit her with the vehicle. (Ex. B, ¶ 3).

## IV.    SUMMARY JUDGMENT STANDARD

A court may terminate litigation by rendering summary judgment when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552 (1986). A material fact issue is one that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2510 (1986). Once the party seeking summary judgment makes the initial showing negating any disputed, material fact, the party opposed to the motion must offer evidence reflecting the existence of one or more genuine issues of material fact. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), cert. denied, 113 S. Ct. 82 (1992). Conclusory assertions by the plaintiff are insufficient to raise a genuine issue of material fact precluding summary judgment. *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991*); Stem v. Ahearn*, 908 F.2d 1, 6 (5th Cir. 1990), cert. denied, 111 S. Ct. 788 (1991).

## V.    ARGUMENT AND AUTHORITIES

**A.    Plaintiff cannot show that Officer Spikes used clearly excessive force that was objectively unreasonable under the circumstances facing Officer Spikes.**

Jones has failed to create a genuine issue of material fact as to whether the force used to effectuate her arrest was clearly excessive and whether it was "objectively unreasonable." All claims that a law enforcement officer has used excessive force in the course of an arrest are analyzed under the Fourth Amendment and its "reasonableness" standard. *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151 (2001) (citing *Graham v. Connor*, 490 U.S. 386, 388, 394, 109 S. Ct. 1865 (1989)). As the Fifth Circuit has noted, a plaintiff has a high burden in order to state a claim for excessive force in violation of the Constitution. A plaintiff must allege:

(1)    an injury, which
(2)    resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was

(3)     objectively unreasonable.

*Ikerd v. Blair*, 101 F.3d 430, 433-34 (5th Cir. 1996) (quoting *Spann v. Rainey*, 987 F.2d 1110, 1115 (5th Cir. 1993)); *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007).  A plaintiff asserting a claim of excessive force must have suffered more than a de minimis injury, which the Court evaluates in the context in which the force was deployed.  *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001).

**1.     More than a De Minimis Injury, "Directly and Only" from the Use of Force.**

Plaintiff provides no probative summary judgment evidence that she suffered more than a de minimis injury, that resulted "directly and only" from Officer Spikes' alleged actions.  *See Ontiveros v. City of Rosenberg, Tex.,* 564 F.3d 379, 383 (5th Cir. 2009) (noting "at the summary judgment stage, we require evidence—not absolute proof, but not mere allegations either"); *Johnson v. Missouri City,* 2009 WL 6767109, at *6 (S.D. Tex., Mar. 9, 2009) (no probative evidence that force caused injuries); *Staten v. Adams*, 939 F.Supp.2d 715, 724-725 (S.D. Tex. 2013) ("Although he complained that his mouth, jaw, and ribs hurt, medical personnel at Ben Taub Hospital x-rayed only his jaw but did not identify a problem with the jaw.").   Here, Plaintiff sought no medical treatment.  (Ex. A, p. 192).  She only complains of having lost four days of pay for missing work not related to any injury, but to her court appearances.  (Ex. A, p. 47).   She did not receive any counseling, had no medical expenses, and did not require medications related to the incident.  (Ex. A, p. 31-32)  Plaintiff alleges that the handcuffs were too tight and her "knee got scraped"; however, Plaintiff never once asked the officers to loosen the handcuffs or complained about the handcuffs being too tight. (Ex. A, pp. 180-81, 141 & 189).   Other than her allegations that the situation was "stressful" and that she had to report to the Board of Nursing, Plaintiff denies any other injury.  (Ex. A, pp. 190-191).  Summary judgment is

proper because Plaintiff has not and cannot show that she suffered more than a de minimis injury, that resulted "directly and only" from Officer Spikes' alleged actions

### 2.    Excessive to the Need and Objectively Unreasonable

Plaintiff has failed to create a genuine issue of material fact as to whether the force used by Officer Spikes was clearly excessive and objectively unreasonable.   Injuries secondary to force necessary to make an arrest do not support a claim for excessive force.  *See Glenn*, 242 F.3d at 314.  Moreover, in determining whether or not an officer used excessive force, the Court must keep in mind that "police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397, 109 S. Ct. 1865.

The test of reasonableness under the Fourth Amendment requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.*  As the Supreme Court has noted:

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. ... With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment.

*Id.* at 396, 109 S. Ct. at 1872 (quoting *Johnson v. Glick*, 481 F.2d. 1028, 1033 (2d Cir. 1973)).

For example, in *Atwater v. City of Lago Vista*, 532 U.S. 318, 354-55 (2001), the defendant-police officer observed the plaintiff driving her car in violation of the seatbelt laws, pulled the plaintiff over, verbally berated her, handcuffed her, placed her in his squad car, and drove her to the local police station where she was made to remove her shoes, jewelry, and

eyeglasses, and empty her pockets. The officers then took her "mugshot" and placed her in a jail cell alone for about an hour, after which she was taken before a magistrate and released on bond. *Id.* at 355. She was charged with, among other things, violating the seatbelt laws. *Id.* at 324. However, despite these facts, the U.S. Supreme Court found no Fourth Amendment violation. *Id.* Specifically, the Court said:

> [Plaintiff] was a known and established resident of Lago Vista with no place to hide and no incentive to flee, and common sense says she would almost certainly have buckled up as a condition of driving off with a citation. In her case, the physical incidents of arrest were merely gratuitous humiliations imposed by a police officer who was (at best) exercising extremely poor judgment.

*Id.* at 346-47.

Furthermore, as stated by the *Graham* Court, "[o]ur Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396, 109 S.Ct. at 1871-72; *see also Huang v. Harris County*, 264 F.3d 1141 (5th Cir. 2001) ("The right to make an arrest necessarily carries with it the right to use some degree of force or threat thereof to effect it.") (citing *Graham*); *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002) ("...we recognize that the typical arrest involves some force and injury."). This particular arrest involved removing Plaintiff from her vehicle, forcing her to lie down, handcuffing her and placing her in the patrol car. Interestingly, Plaintiff actually denies that was removed from her vehicle (she alleges she exited the vehicle on her own) and placed on the ground (she alleges she immediately complied with the officers' requests to lie down). (Ex. A, p. 141). Although she claims that Officer Spikes placed the handcuffs on her, Officer Custer in fact applied the handcuffs. (Ex. A, p. 180; Ex. D, pp. 15-16; Defendant Spikes Supplemental Motion for Summary Judgment, Ex. C, ¶ 3). Plaintiff admits that she had no physical injuries from the

arrest other than a scraped knee and that the handcuffs were too tight. (Ex. A, p. 189). It is well-settled in the Fifth Circuit that "handcuffing too tightly, without more, does not amount to excessive force." *Glenn,* 242 F.3d at 314; *see also Walcotte v. Wicks,* 2009 WL 1373601 at *4 (S.D. Tex. May 15, 2009) (unreported) (holding that passenger's complaints of some pain and minor cuts from being handcuffed too tightly did not rise to a claim of excessive force); *Neague v. Cynkar,* 258 F.3d 504, 508 (6th Cir. 2001) ("the handcuffing of a person in the course of an otherwise lawful arrest fails, as a matter of law, to state a claim for excessive force.").

A number of courts have noted that using procedures far more excessive to those employed in this case to handcuff suspects is both reasonable and not an excessive use of force:

> We conclude that the force used by Sgt. Farrell during his arrest of Rodriguez did not violate the Constitution...The evidence, in the light most favorable to plaintiff, shows that Sgt. Farrell grabbed plaintiff's arm, twisted it around plaintiff's back, jerking it up high to the shoulder and then handcuffed plaintiff as plaintiff fell to his knees screaming that Farrell was hurting him. Plaintiff was placed in the rear of Sgt. Farrell's patrol car, kept handcuffed behind his back and transported to the police station. The handcuffs were removed minutes after arrival at the police department. The handcuffing technique used by Sgt. Farrell is a relatively common and ordinarily accepted non-excessive way to detain an arrestee.

*Rodriguez v. Farrell,* 280 F.3d 1341, 1351 (11th Cir. 2002); *see also Collier v. Montgomery,* 569 F.3d 214, 219 (5th Cir. 2009) (pushing suspect, who was resisting arrest, to hood of car, which resulted in bruising, was not excessive under the circumstances); *Lennon v. Miller,* 66 F.3d 416, 426 (2d Cir. 1995) (granting qualified immunity to a police officer who forcibly removed a woman from a car by putting his arm around her neck, shoulder, arm, and hand, then "yanked" her hand off the ignition and "yanked" her out of the car"). In *Jones v. Webb,* 45 F.3d 178 (7th Cir. 1995), a police officer suspected that a 12-year old boy had been engaged in a fight with a girl, but the boy fled when he tried to question him. The officer followed and eventually

knocked the boy to the ground, placed a knee in his back, and handcuffed the boy. The court rejected the boy's excessive force claim:

> We agree that in these circumstances, a reasonable police officer certainly could have believed that the limited force applied was proper and was not unconstitutionally excessive in light of clearly established law.

*Id.* at 184.

Even assuming the facts as alleged by Plaintiff are true, Officer Spikes acted reasonably and did not employ force that was clearly excessive to the need. *Ikerd*, 101 F.3d at 433-34. The following facts are undisputed:

- Officer Spikes instructed Plaintiff not to make an unsafe turn into Vincent Middle School (Plaintiff's First Amended Complaint, ¶ 9);

- Officer Spikes instructed Plaintiff to move her car and Plaintiff not did comply (Plaintiff's First Amended Complaint, ¶ 10);

- Officer Spikes asked for Plaintiff's driver's license and Plaintiff did not comply (Plaintiff's First Amended Complaint, ¶ 11);

- Officer Spikes repeatedly told Plaintiff "You hit me!" after Plaintiff struck her with her car (Plaintiff's First Amended Complaint, ¶ 14);

- Officer Spikes ordered Plaintiff to exit the car and Plaintiff did not immediately comply (Plaintiff's First Amended Complaint, ¶¶ 14-15);

- According to the Plaintiff, she exited the car on her own, and got to the ground on her own – the officers did not touch her. (Ex. A, p. 141); and

- Officer Custer used 2 pairs of handcuffs, due to Plaintiff's size, and "double locked" them, both of which were done to prevent her from hurting herself and to make her more comfortable. (Ex. D, p. 15, l. 21 to p. 16, l. 23.)

Plaintiff simply cannot demonstrate that the force Officers Spikes and Custer used was clearly excessive to the need. It would not "be clear to a reasonable officer that [her] conduct was unlawful in the situation [s]he confronted." *Saucier*, 533 U.S. at 202. In hindsight one can second guess Officer Spikes' decision to draw her handgun to the down and ready position when

ordering the Plaintiff from the car.    The reasonableness of Spikes' conduct, however, must be measured in light of the limited information on which she reasonably relied.    Prior to Spikes drawing her weapon, Plaintiff had acted evasively by refusing to move her vehicle, by failing to identify, and then hitting Officer Spikes with her car and knocking her to the ground, thereby giving Officer Spikes reasonable suspicion that Plaintiff posed an immediate threat to the safety of others.    A reasonable officer in Officer Spikes' shoes could certainly believe that her actions in drawing her weapon and ordering Plaintiff out of the vehicle and onto the ground, holstering her weapon without firing it or physically injuring Plaintiff in any way, would not violate the Plaintiff's constitutional rights. *See e.g. Dorsey v. Barber,* 517 F.3d 389 (6th Cir.2008) (Court rejected Plaintiffs' claims that police officer used excessive force when he ordered them to the ground at gunpoint and held them there despite their unsuspicious, nonthreatening behavior.); *Flowers v. Fiore,* 359 F.3d 24 (1st Cir.2004) ("Fiore unholstered his firearm and handcuffed Flowers to ensure his safety and in order to conduct the stop and search without incident. Other officers were reasonable in their momentary display of firearms during the detention, as they justifiably relied on Fiore's initial alert and did so for the limited purpose of protecting themselves and securing Flowers safely.").    As the Fourth Circuit noted in a similar case:

> We recognize that it must have been extremely frightening for Bagley to have a police officer draw a weapon on him, order him to the ground, and handcuff him. It must also have been embarrassing for these events to transpire in broad daylight in front of many spectators. Nevertheless, we cannot conclude that Deputy Boyte acted unreasonably in taking these precautionary steps to protect his safety during the investigatory stop of Talbert's vehicle. We therefore conclude that Deputy Boyte's actions did not amount to an excessive show of force.

*Bagley v. Boyte,* 94 F.3d 641, 1996 WL 465845 at *4 (4th Cir.1996) (unpublished); *see also U.S. v. Sanders,* 994 F.2d 200 (5th Cir.1993).

The BISD officers were entitled to use some degree of force to handcuff the Plaintiff. *See Johnson v. Morel*, 876 F.2d 477, 480 (5th Cir. 1989). Also, to the extent the Plaintiff claims that it was excessive force to leave her seated in a patrol car for approximately 45 minutes, such an event does not rise to the level of a constitutional violation. *See Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007) (not excessive force to leave suspect in unventilated patrol car for 30 to 45 minutes). As discussed above, it is undisputed that this was all the force that was used. In considering the "perspective of a reasonable officer on the scene" – and not "the 20/20 vision of hindsight," *see Graham,* 490 U.S. at 396 – Officer Spikes' actions were objectively reasonable. Because Officer Spikes acted reasonably even under the facts as alleged by Plaintiff and did not employ force that was clearly excessive, she did not violate the Fourth, Fifth[2], or Fourteenth Amendment. Summary judgment is therefore appropriate as a matter of law.

## B.      Plaintiff cannot show unreasonable seizure or arrest

The evidence in this matter does not support a claim of unlawful seizure or arrest under the Fourth Amendment, because Officer Spikes was privileged to detain Plaintiff to investigate suspected wrongdoing, and had probable cause to effectuate an arrest. The Fourth Amendment prohibits only *unreasonable* seizures. *Terry v. Ohio,* 392 U.S. 1, 9, 88 S. Ct. 1868, 1873 (1968). Generally, to support an unlawful arrest claim, a plaintiff must show he was willfully detained, without consent, by a defendant without authority of law. *See Hart v. O'Brien,* 127 F.3d 424, 450 (5th Cir. 1997). As such, there is no federal cause of action for an alleged unlawful arrest when a law enforcement officer's detention is supported by probable cause. *Fields v. City of South*

---

[2] Plaintiff's claims under the Fifth Amendment should also be dismissed as a matter of law, because "the Fifth Amendment applies only to the actions of the federal government, and not to the actions of a municipal government as in the present case." *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996); *see also Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000) ("The Fifth Amendment applies only to violations of constitutional rights by the United States or a federal actor."); *Santibanes v. City of Tomball, Tex.*, 654 F.Supp.2d 593, 608 (S.D.Tex. 2009) ("the Fifth Amendment's 'due process' guarantee applies only to the action of the federal government, and not to the actions of individuals or of a municipal government as in the present case.").

*Houston,* 922 F.2d 1183, 1189 (5th Cir. 1989); *see also Price v. Roark,* 256 F.3d 364, 369 (5th Cir. 2001). Therefore, a constitutional claim involving an alleged unlawful arrest requires a plaintiff to identify evidence establishing a lack of justification for a challenged detention. *Brown v. Lyford,* 243 F.3d 185, 189 (5th Cir. 2001).

Probable cause exists where the facts and circumstances within an arresting officer's knowledge, and of which he has reasonably trustworthy information, are sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been committed by the person to be arrested. *Brinegar v. United States,* 338 U.S. 160, 175-76, 69 S. Ct. 1302, 1310-11 (1949). As such, probable cause is based upon a much lower standard than guilt. *Fields,* 922 F.2d at 1189. A determination of probable cause turns on an assessment of probabilities in factual contexts, viewed from an objectively reasonable point of view. *See id; see also Terry v. Ohio,* 392 U.S. 1, 29, 88 S. Ct. 1868, 1884 (1968).

Furthermore, not every lawful seizure or detention is an arrest that must be justified by probable cause. *United States v. Martinez,* 808 F.2d 1050, 1053 (1987). "Pursuant to *Terry,* 392 U.S. at 30, 88 S. Ct. at 1885, police officers may stop and briefly detain an individual for investigative purposes if they have reasonable suspicion that criminal activity is afoot." *Goodson v. City of Corpus Christi,* 202 F.3d 730, 736 (5th Cir. 2000).

> The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, [[*T]erry* recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

*Adams v. Williams,* 407 U.S. 143, 145-46, 92 S. Ct. 1921, 1923 (1972) (citations omitted).

"The Fourth Amendment requires only some minimum level of objective justification for the officers' actions - but more than a hunch - measured in light of the totality of the circumstances." *United States v. Michelletti,* 13 F.3d 838, 840 (5th Cir. 1994); *see also United States v. Ibarra-Sanchez,* 199 F.3d 753, 759 n.5 (5th Cir. 1999). A seizure or detention is not unlawful and does not violate the Constitution when specific, articulable facts which, taken together with rational inferences from those facts, reasonably warrant a detention. *United States v. Santiago,* 310 F.3d 336, 340 (5th Cir. 2002). "This reasonable suspicion standard is less demanding than the probable cause standard." *United States v. Silva,* 957 F.2d 451, 459 (5th Cir. 1992); *accord United States v. Tellez,* 11 F.3d 530, 532 (5th Cir. 1993). "This court reviews the reasonableness of an investigatory stop and frisk *de novo* as a conclusion of law." *Michelletti,* 13 F.3d at 841.

The evidence in this matter does not support a claim for an unconstitutional seizure or arrest, because the evidence establishes that Officer Spikes' actions were justified and supported by both reasonable suspicion and probable cause. It is undisputed that prior to Officer Spikes drawing her weapon, Plaintiff had acted evasively by refusing to move her vehicle and by failing to identify herself. Officer Spikes has testified – and the video evidence[3] shows – that Plaintiff then hit Officer Spikes with her car and knocked her to the ground. (Ex. B, ¶ 3). Plaintiff admits that she called her husband on her cellphone (Ex. A, pp. 108-109), and Spikes has testified that when Plaintiff opened her purse (to, unknownst to Spikes at that point in time, retrieve her phone), Spikes was concerned that Plaintiff might have a gun, so Spikes drew her service

---

[3] *See* Exhibit A to Plaintiff Spikes' Motion to Dismiss [Docket No. 25.] For purposes of ruling on a summary judgment motion, the Supreme Court has instructed "courts to reject the plaintiff's description of the facts where the record discredits that description and instead consider 'the facts in the light depicted by the videotape.'" *Poole v. Shreveport,* 691 F.3d 624, 631 (5th Cir. 2012) (internal quotation removed) (*citing Scott v Harris,* 550 U.S. 372, 381 (2007)). In this case, there are no allegations that the videotape was doctored or altered in any way, nor any contention that what it depicts differs from what actually happened.

revolver, placed it in the down and ready position, and ordered Plaintiff out of the car. (Ex. B, ¶ 3). Spikes and Custer have both testified that even then, it took multiple requests before Plaintiff would get out of her car. (Ex. B, ¶ 3; Ex. D, pp. 14).

Plaintiff was arrested for aggravated assault on a peace officer. (Ex. E-1, Probably Cause Affidavit). Aggravated assault occurs when a person intentionally, knowingly, or recklessly causes serious bodily injury to another, or uses or exhibits a deadly weapon during the commission of the assault. *See* TEX. PENAL CODE §§ 22.01; 22.02. Spikes has testified that she was injured when Plaintiff's car knocked her to the ground. (Ex. B, ¶ 6.) Also, the Penal Code defines "deadly weapon" as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* at § 1.07(a)(17)(B). "A motor vehicle may become a deadly weapon if the manner of its use is capable of causing death or serious bodily injury. Specific intent to use a motor vehicle as a deadly weapon is not required." *Drichas v. State,* 175 S.W.3d 795, 798 (Tex.Crim.App. 2005) (en banc) (citations omitted); *see also Callison v. State*, 218 S.W.3d 822, 827 (Tex.App.—Beaumont 2007, no pet.). An aggravated assault on a public servant who is lawfully discharging his or her duty is a first degree felony. TEX. PENAL CODE § 22.02(b)(2)(B). Given that the video evidence shows that Plaintiff hit Officer Spikes with her car, which on its face meets the elements of an aggravated assault, Officer Spikes had probable cause to arrest Plaintiff. Summary judgment is therefore appropriate as a matter of law on Plaintiff's unlawful seizure or arrest claim.

C.     **Plaintiff has failed to show a "custom, policy, or practice" of constitutional violations on the part of the District.**[4]

When suing a local governmental unit, the plaintiff must also show that the entity itself is liable for the violation. *See generally Collins v. City of Harker Heights, Texas*, 112 S. Ct. 1061,

---

[4] This argument is developed at greater length in Defendant Beaumont ISD's Motion to Dismiss [Docket No. 24], which remains pending before the Court. The District incorporates those arguments herein.

1066 (1992). A school district cannot be held liable under 42 U.S.C. § 1983 for an injury inflicted by its employees or agents based on a theory of vicarious liability or respondeat superior liability. *Board of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 402, 117 S. Ct. 1382, 1388 (1997); *Doe v. Hillsboro Indep. Sch. Dist.*, 113 F.3d 1412, 1416 (5th Cir. 1997) (en banc). The Supreme Court set forth its standard on municipal liability in *Monell v. City of New York*:

> We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell v. City of New York*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38 (1978). *See also Owen v. City of Independence*, 445 U.S. 622, 633, 100 S. Ct. 1398, 1406 (1980); *Bennett v. City of Slidell*, 728 F.2d 762, 766 (5th Cir. 1984), cert. denied, 472 U.S. 1016, 105 S. Ct. 3476 (1985). In order to state a constitutional claim against a school district under § 1983, a plaintiff must demonstrate that the constitutional violation occurred in accordance with official government policy or firmly entrenched custom. *Brown v. Houston Indep. Sch. Dist.*, 763 F. Supp. 905 (S.D. Tex. 1991), *aff'd*, 957 F.2d 866 (5th Cir. 1992), *cert. denied*, 113 S. Ct. 198 (1992); *Worsham v. City of Pasadena*, 881 F.2d 1336 (5th Cir. 1989). A school district may be held liable only if the constitutional injury was caused by an official policy or custom promulgated by government officials who have final policy making authority. *Collins*, 112 S.Ct. at 1066. If a plaintiff fails to demonstrate that constitutional violations occurred as a result of school district custom or policy, any claims against the District under § 1983 must be dismissed as a matter of law. *Gonzales v. Brown*, 768 F. Supp. 581 (S.D. Tex. 1991).

The Plaintiff's First Amended Complaint fails to properly plead that the District had or engaged in a custom, policy, or practice of constitutional violations, including permitting excessive force or illegal arrests by its employees. Under Texas law, the final policy-making authority for an independent school district rests with the school district's board of trustees. *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993); *Gonzales v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 752 (5th Cir. 1993). The Plaintiff has not alleged that the BISD School Board had any involvement in the incident that forms the basis for this suit. She does not allege that the BISD School Board adopted policies, regulations, bylaws, or ordinances that contributed to Plaintiff's injuries, nor that the Board permitted "persistent and widespread practices" or "practices that are permanent and well settled and deeply embedded traditional ways of carrying out policy." *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984). The Fifth Circuit has noted that the plaintiff's description of the government's policy or custom and its relationship to the underlying constitutional violation cannot be conclusory, but must contain specific facts. *Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997). The Fifth Circuit and other courts of appeals have held on numerous occasions that excessive force claims against governmental entities must be dismissed as a matter of law, when the plaintiff cannot show that his injuries were caused by a policy or custom of the entity. *See, e.g., Snyder v. Trepagnier*, 142 F.3d 791, 795-99 (5th Cir. 1998); *Baker v. Putnal*, 75 F.3d 190, 199-200 (5th Cir. 1996); *Fraire v. City of Arlington*, 957 F.2d 1268, 1277-81 (5th Cir. 1992); *see also Lawrence v. Kenosha County*, 391 F.3d 837, 843-44 (7th Cir. 2004); *Mettler v. Whitledge*, 165 F.3d 1197, 1204-05 (8th Cir. 1999); *Smith v. Watkins*, 159 F.3d 1137, 1138-39 (8th Cir. 1998).

In this case, Plaintiff testified that she is not aware of other BISD police department officers using excessive force. (Ex. A, pp. 183-84). Because the Plaintiff failed to demonstrate

or even to properly plead that the District engaged in a custom, policy, or practice of constitutional violations that directly caused her injuries, the District is entitled to summary judgment as a matter of law on the Plaintiff's § 1983 claims.

**D.      Plaintiff cannot show that the District failed to supervise, discipline, or train Officer Spikes in such a way that the failure caused her injuries or demonstrated deliberate indifference.**

Plaintiff's conclusory assertions that the District had an unconstitutional policy of failing to train, supervise, or discipline its officers is unsupported by the record.  As stated above, the First Amended Complaint only alleges facts pertaining to this particular incident.  The single incident exception to a plaintiff's requirement for establishing deliberate indifference is narrow and requires proof "that the highly predictable consequence of a failure to train would result in the specific injury suffered and that the failure to train represented the moving force behind the constitutional violation." *Valle v. City of Houston*, 613 F.3d 536, 549 (5th Cir. 2010).  Only when a failure to train an officer actually causes an injury, may it, in *certain very limited circumstances*, fairly be said to represent a policy for which a governmental entity may be held responsible. *Canton v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 1205 (1989).  "To prevail on a failure to train theory a plaintiff must demonstrate: (1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy and (3) that the inadequate training policy directly caused the violations in question." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010) (internal quotations omitted).  For evaluation of such a claim, "the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform." *Snyder v. Trepagnier* 142 F.3d 791, 798 (5th Cir. 1998) (quoting *Canton*, 489 U.S. at 188-89). Thus, "for liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training

program is defective." *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) (quoting

*Benavides v. County of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992). "In this inquiry, mere proof

that the injury could have been prevented if the officer had received better or additional training

cannot, without more, support liability." *Id.*

Nowhere does the Plaintiff state what training she believes that the District failed to give

Officer Spikes or how the alleged deficit in training caused her injuries.  When asked at her

deposition how she thought the District failed to train Officer Spikes, Jones could not provide an

answer. (Ex. A, p 188).    She replied "No, I don't" when asked whether she had knowledge of

situations where Beaumont ISD failed to train its officers.  (Ex. A, pp. 188-89).  It is difficult to

see how the District should have known to train Officer Spikes -- or any other BISD police

officers -- better, when the Plaintiff herself cannot articulate what it did wrong.

The Supreme Court has specifically determined that "[a] municipality's culpability for a

deprivation of rights is **at its most tenuous** where a claim turns on a **failure to train**." *Connick

v. Thompson,* 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011) (emphasis added).   The basis for

liability against a governmental entity under such circumstances is dependent upon the degree of

fault evidenced by its action or inaction. *Brown v. Bryan County*, 219 F.3d 450, 459 (5th Cir.

2000).

Assertions of deliberate indifference are not supportable because BISD is also entitled to

rely upon the adequacy of the statewide comprehensive education and training program that the

State of Texas has established through the Texas Commission on Law Enforcement ("TCOLE").

When state law mandates the training required of a governmental entity's police officers, as in

Texas, a plaintiff generally cannot satisfy the elements to support a claim of inadequate training

unless the officer's training fell below such state standards. Id. at *See Benavides,* 955 F.2d at 973;

*Valle v. City of Houston*, 613 F.3d 536, 548 (5th Cir. 2010); *Peterson v. City of Fort Worth*, 588 F.3d 838, 849 (5th Cir. 2009); *Roberts,* 397 F.3d at 293-95; *Conner v. Travis County*, 209 F.3d 794, 798 (5th Cir. 2000); *Baker*, 75 F.3d at 199-200; *Huong v. City of Port Arthur*, 961 F. Supp. 1003, 1007 (E.D. Tex. 1997); *accord Gonzales v. Westbrook*, 118 F.Supp.2d 728, 737 (W.D. Tex. 2000). The mere "dissatisfaction" of some with the training provided "cannot negate the fact that the training occurred." *Brumfield v. Hollins*, 551 F.3d 322, 329 (5th Cir. 2008).

Under section 1701.251 of the Texas Occupations code, TCOLE is required to establish and maintain training programs for police officers. In order to obtain and thereafter maintain a peace officer license in Texas, each officer must satisfactorily meet TCOLE standards, including passing the Basic Peace Officer Course. *See* 37 TAC § 217.1(e)(1)(A). The Basic Peace Officer Course that Spikes took in 2009 would have required 618 hours of training, including 24 hours in "Force Options." (See Ex. G. [5]) The "Force Options" section of the Basic Peace Officer Course contains extensive training in the legal guidelines involving the use of force by police officers. (Ex. G.) The peace officer licensing and training standards established by TCOLE have been found to comply with constitutional requirements and are adequate to enable Texas peace officers to deal with usual and recurring situations peace officers encounter. *See Benavides*, 955 F.2d at 973. Defendants' expert witness, Margo Fisher, has opined that the District's reliance on TCOLE training and standards was constitutionally sufficient, and that there is no other evidence that the District's training of any BISD officers was deficient.[6] Through section § 1701.253 of the Texas Occupations code, the Texas Legislature has mandated that TCOLE establish a statewide comprehensive education and training program on civil rights which covers the laws of. the state of Texas and of the United States pertaining to peace officers for all licensed law

---

[5] *See* http://www.tcole.texas.gov/sites/default/files/CourseCMU/history_of_the_bpoc_course.pdf.

[6] *See* Exhibit E, p. 7 [Docket No. 44-5], to Defendant Spikes' Motion for Summary Judgment.

enforcement officers in Texas. Thus, compliance with TCOLE standards required under state law and the law enforcement training standards required and established by TCOLE are constitutionally adequate.

Section 1701.352 of the Texas Occupations code further requires that police officer supervisors receive training regarding supervising police officers within 24 months of appointment as a supervisor. Therefore, Texas law enforcement officers are trained about the requirements for lawful detentions, that force used during an arrest be objectively reasonable, and regarding tactics that may appropriately be used to make lawful detentions. The training records of Tamara Spikes show that Officer Spikes had completed the state-mandated training and was a licensed peace officer in the State of Texas. The training records and the affidavit of Eric Payne prove that Sergeant Eric Payne was Officer Spikes' Field Training Officer and that Officer Spikes completed 160 hours of hand-on training specifically designed to facilitate a police officer's transition from the academic setting to the performance of actual patrol duties. (Ex. C). Officer Spikes was given a copy of the Beaumont ISD Police Department's Policy and Procedures Manual. (Ex. C). The Manual contains an extensive section on the Use of Force, starting on Page 70, including the following provisions:

> Policy 07-63/003. APPLICATION OF FORCE
> … an officer may use any unauthorized weapon (or use any weapon in an unauthorized manner) if emergency circumstances make it necessary to do so. (Ex. C-1, p. 72.)
>
> Policy 07-641005. DRAWING OF FIREARMS
> Justification for the use of deadly force must be limited to what reasonably appears to be the facts known or perceived by an officer at the time they decide to use deadly force. Officers may draw or display a firearm when they have reason to fear for their own personal safety or the safety of others. (Ex. C-1, p. 75.)

These policies are consistent with federal law, as discussed above.

To prevail on an inadequate supervision claim a plaintiff must prove (1) supervisory policy of a policymaker; (2) the policymaker was deliberately indifferent in adopting the supervisory policy; (3) the supervisory policy directly caused the plaintiff's injuries. *Roberts,* 397 F.3d at 293. Failure to supervise and failure to train have the same standards for municipal liability. *Id.* at 292; *Baker,* 75 F.3d at 200; *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). Plaintiff has provided no evidence how the District failed to supervise Officer Spikes or how the alleged deficit in supervision caused her injuries. When asked how she believed that the District had failed to supervise Officer Spikes, Jones could not provide an answer. (Ex. A, p. 188). With no evidence that a supervisory procedure of BISD directly caused the conduct and injuries of which Plaintiff complains, those claims must be dismissed. *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 286 (5th Cir. 2002).

With respect to the allegation regarding failure to discipline, the Plaintiff's First Amended Complaint only describes this particular incident; however, the Fifth Circuit will not infer an unconstitutional custom or policy from a municipality's failure to discipline an officer for a single incident. *Fraire v. City of Arlington*, 957 F.2d 1268, 1278-79 (5th Cir. 1992); *see also Webster v. City of Houston*, 735 F.2d 838 (5th Cir. 1984) (stating that a single decision not to discipline an officer after a single episode of illegality "did not show a policy or custom authorizing or encouraging police misconduct through a persistent failure to discipline offending officers"). Additionally, the Fifth Circuit has stated that "post-event failure to discipline the officers cannot supply the necessary linkage to establish a city policy. An after-the-fact failure to discipline illegal conduct is by itself no evidence of a before-the-fact policy of illegal conduct. It may be evidence of a policy commencing from that point in time when no discipline was

invoked, but certainly not before." *Grandstaff v. City of Borger,* 779 F.2d 1129, 1133 (5th Cir. 1986).

Nowhere does the Plaintiff state how the District failed to discipline Officer Spikes or how the alleged deficit in discipline caused her injuries. When asked at her deposition how she thought the District failed to discipline Officer Spikes, Jones could not provide an answer. (Ex. A, p 188). She replied "No, I don't" when asked whether she had knowledge of situations where Beaumont ISD failed to discipline its officers. (Ex. A, pp. 188-89).

Beaumont ISD is entitled to the summary judgment on the claims for failing to properly train, supervise or discipline because Plaintiff has failed to produce evidence of each of the elements required to prove her bare bones allegations.

## VI.  **CONCLUSION**

For the reasons given above, the Beaumont Independent School District requests that summary judgment be granted, that all claims against Beaumont Independent School District be dismissed, and that the Beaumont Independent School District be granted all relief, both at law and in equity, to which it has shown itself entitled.

Respectfully submitted,

**THOMPSON & HORTON LLP**

By: _____

    Christopher B. Gilbert
    Attorney-in-Charge
    State Bar No. 00787535
    cgilbert@thompsonhorton.com
    Frances R. Broussard
    State Bar No. 24055218
    fbroussard@thompsonhorton.com

3200 Southwest Freeway, Suite 2000
Houston, Texas 77027
Telephone: (713) 554-6744
Facsimile: (713) 583-7698

**ATTORNEYS FOR DEFENDANT BEAUMONT
INDEPENDENT SCHOOL DISTRICT**

## CERTIFICATE OF SERVICE

This is to certify that on January 2, 2014, a true and correct copy of the foregoing has been served electronically to the following:

Kenneth W. Lewis
Stephen L Townsend
Bush Lewis, P.L.L.C.
595 Orleans Street, Suite 500
Beaumont, Texas 77701
***Attorneys for Plaintiff***

James E. Byrom
Kelley L. Kalchthaler
Walsh, Anderson, Gallegos, Green & Trevino, P.C.
10375 Richmond Avenue, Suite 750
Houston, Texas 77042
***Attorneys for Defendant, Tamara Spikes***

_____
Christopher B. Gilbert or Frances R. Broussard

641310