# Exhibit

# B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

CHRISTINE JONES                    §
    Plaintiff,                     §
                                   §
vs.                                §          Civil Action No. 1:14-cv-00103
                                   §
TAMARA SPIKES and                  §
BEAUMONT INDEPENDENT               §
SCHOOL DISTRICT POLICE             §
DEPARTMENT,                        §
    Defendants.                    §

## DECLARATION OF TAMARA SPIKES

STATE OF TEXAS          §
                        §
COUNTY OF JEFFERSON     §

1.  "My name is Tamara Spikes. I have never been convicted of a felony or a crime of moral turpitude. I am over 18, of sound mind, and capable of making this Declaration. I have personal knowledge of all facts herein, and they are true and correct.

2.  I worked for the Beaumont ISD Police Department from approximately May 2009 until November 2013. I was a school police officer assigned to Vincent Middle School. I have been a licensed peace officer since 2009, and before then I was a licensed jail officer since 2005. I was employed by the Beaumont ISD Police Department at the time of the incident made the basis of this lawsuit.

3.  On May 2, 2013, I was assigned to direct traffic at Vincent Middle School. On that day, I was wearing my official police uniform, police radio, and police traffic vest. The traffic was flowing into the student pick-up area. I noticed a white SUV turning left into the parking lot, which is not permitted. I learned later that Plaintiff Christine Jones was driving the vehicle. I approached the vehicle on the driver's side and asked Ms. Jones to lower the window, I said, 'Hello and how are you today?' Ms. Jones replied 'fine' without looking at me. I told Ms. Jones that left turns were not allowed on the parking lot. She said, 'all right,' and moved her vehicle. I then noticed that Ms. Jones parked blocking several cars that were in parking lanes to her right. I approached the vehicle again and asked her if she could move forward so that cars would not be blocked. Ms. Jones said 'OK' but did not comply. Ms. Jones said, 'I am picking up my children.' I

1


EXHIBIT
C

said again, 'Ma'am, please move forward, it is illegal to block these cars in.' Ms. Jones replied, 'I'll move when that white Ford moves. He went into the school.' The white Ford Ms. Jones was referring to was parked in the proper lane and was not blocking any vehicles. Ms. Jones said to me that she would not move until the white Ford moved. I told Ms. Jones that she had to move forward and that there was plenty of space for her to move forward so that no one would be blocked. Again, Ms. Jones refused to comply. I then proceeded to ask Ms. Jones for her driver's license and proof of insurance. Ms. Jones did not comply, and there was a long pause. I asked again. Ms. Jones completely ignored me and rolled her windows up. I asked one more time for her driver's license and registration and Ms. Jones again did not comply. I then stepped several feet away from Ms. Jones' vehicle to read her license plate. Ms. Jones moved forward quickly. I looked at her and said, 'do not move.' I then heard the gears shift in the vehicle, so I approached the vehicle on the left side to read the VIN number. At that time I called dispatch on my radio to send me some assistance. Ms. Jones then lowered her window and yelled 'I want to speak with your supervisor.' I replied 'OK, give me your driver's license.' I proceeded to ask dispatch to send me help immediately. Ms. Jones then put the car in drive, turned her steering wheel towards me (to the left) and struck me. The strike caused me to fall to the ground. After hitting me, Ms. Jones did not stop. She continued driving forward. At the same time, Ms. Davita Douglas, the attendance clerk at Vincent Middle School, was on the other side of the car pleading with Ms. Jones to stop the vehicle and to get out of the car. After being struck to the ground, I got up and followed Ms. Jones. I called the radio again and said 'She just hit me; she just hit me with her car; send me some help; send me some help.' Dispatcher, Janet Flanagan, responded that they were on their way. At that time, I looked through the window and saw Ms. Jones reaching into her purse and, concerned that she might have a gun, I drew my service revolver, placing it in a down and ready position, and ordered Ms. Jones to get out of the car. I approached the car again, and demanded several times that Ms. Jones exit the car. Ms. Jones refused to comply and ignored my orders. Ms. Douglas continued to plead with Ms. Jones to listen to the officer and to please get out. I walked closer to the vehicle at an angle and demanded that Ms. Jones put her hands up and exit the vehicle. At this time, Officer Matthew Custer arrived, got out of the vehicle, drew his duty weapon, and demanded Ms. Jones exit the vehicle. Ms. Jones did not comply until several more attempts and directions from both Officer Custer and myself. Ms. Jones opened the door of her vehicle but did not exit the vehicle. Officer Custer and I demanded that she step out. Ms. Jones refused to move. Officer Custer and I re-holstered our weapons, and Officer Custer removed Ms. Jones from the car, placing her on the ground. While Ms. Jones was on the ground, she also refused to give us her arms. Ms. Jones stated, 'Ma'am, this is not really necessary.' Ms. Jones then put her arms at her side, I handed my handcuffs to Officer Custer, and Ms. Jones was restrained. Then we assisted her to her feet and escorted her to my duty patrol unit. I took Ms. Jones to the Jefferson County Correctional Facility with the assistance of Officer Stephen Rivers. I was not able to drive at that time because of the injuries I sustained as result of Ms. Jones hitting me with her vehicle. I did not observe any physical injury to Ms. Jones, and she complained of none. At no point did I aim my weapon at Ms. Jones, and I did not discharge my weapon.

4.      At some point, I contacted my supervisor and Field Training Officer, Sgt. Eric Payne, to ask whether I should arrest Ms. Jones and was told that I should. Therefore, Ms. Jones was arrested and criminally charged. Ultimately the charges were dropped because, according to the DA, there were concerns about proof of intent.

5.      After the incident, I learned that Ms. Jones is the mother of a student who attends Vincent Middle School.  I also learned that other officers that patrol Vincent Middle School have had issues with Ms. Jones pertaining to her disregard of traffic directives.

6.      After the incident I sought medical care.  I had problems with my shoulder and knee as result of Ms. Jones' assault.  I was incapacitated and unable to go back to work for a number of days after the encounter with Ms. Jones due to the injuries I sustained when she struck me with her vehicle.

By my signature below, I declare under penalty of perjury, that the foregoing is within my personal knowledge and is true and correct."


Tamara Spikes

3