# Exhibit

# G

# 618-HOUR BASIC PEACE OFFICER COURSE
## (revised March 2008)

In accordance with Commission regulations, the Basic Peace Officer Course shall consist of a minimum of 618 classroom hours and shall include, but not be limited to, the subjects set forth below. This is the recommended sequence for teaching the course. Academies may change the sequence, if necessary.

| #   | SUBJECT | HOURS |
|-----|---------|-------|
|     | Introduction and Orientation | 2 |
| 1.  | Fitness and Wellness, and Stress Management | 14 |
| 2.  | Professional Policing | 10 |
| 3.  | Professionalism and Ethics | 8 |
| 4.  | U.S. & Texas Constitutions, Bill of Rights, and Criminal Justice System | 12 |
| 5   | Multiculturalism and Human Relations | 12 |
| 6.  | Code of Criminal Procedure | 16 |
| 7.  | Arrest, Search, and Seizure | 24 |
| 8.  | Penal Code | 40 |
| 9.  | Traffic | 68 |
| 10. | Intoxicated Driver and SFST | 24 |
| 11. | Civil Process | 8 |
| 12. | Alcoholic Beverage Code | 4 |
| 13. | Health and Safety Code – Controlled Substances Act | 8 |
| 14. | Family Code – Juvenile Issues | 10 |
| 15. | Written Communications | 28 |
| 16. | Spanish | 16 |
| 17. | Force Options | 24 |
| 18. | Mechanics of Arrest | 40 |
| 19. | Firearms | 40 |
| 20. | Emergency Medical Assistance | 16 |
| 21. | Emergency Communications | 12 |
| 22. | Professional Police Driving | 32 |
| 23. | Communication and Problem Solving | 4 |
| 24. | Patrol/Consular Notification | 42 |
| 25. | Victims of Crime | 10 |
| 26. | Family Violence and Related Assaultive Offenses | 20 |
| 27. | Crisis Intervention Training (CIT) and Mental Health Code | 24 |
| 28. | Hazardous Materials Awareness | 6 |
| 29. | Criminal Investigation | 44 |
|     | Including: Introduction, General, Protection of and Crime Scene Search, Interviewing Techniques, Booking Procedures, Courtroom Demeanor and Testimony, Case Management | |

| | |
|---|---|
| **TOTAL HOURS** | **618** |

# 643-HOUR BASIC PEACE OFFICER COURSE
(Revised January 2013)

In accordance with Commission regulations, the Basic Peace Officer Course shall consist of a minimum of 643 classroom hours and shall include, but not be limited to, the subjects set forth below. This is the recommended sequence for teaching the course. Academies may change the sequence, if necessary.

| # | SUBJECT | HOURS |
|---|---|---|
| | Introduction and Orientation | 2 |
| 1. | Fitness and Wellness, and Stress Management | 16 |
| 2. | Professional Policing | 8 |
| 3. | Professionalism and Ethics | 8 |
| 4. | U.S. & Texas Constitutions, Bill of Rights, and Criminal Justice System | 8 |
| 5 | Multiculturalism and Human Relations | 10 |
| 6. | Code of Criminal Procedure | 20 |
| 7. | Arrest, Search, and Seizure | 28 |
| 8. | Penal Code | 44 |
| 9. | Traffic | 68 |
| 10. | Intoxicated Driver and SFST | 24 |
| 11. | Civil Process | 8 |
| 12. | Alcoholic Beverage Code | 4 |
| 13. | Health and Safety Code – Controlled Substances Act | 12 |
| 14. | Family Code – Juvenile Issues | 10 |
| 15. | Written Communications | 16 |
| 16. | Spanish | 16 |
| 17. | Force Options | 24 |
| 18. | Mechanics of Arrest | 40 |
| 19. | Firearms | 48 |
| 20. | Emergency Medical Assistance | 16 |
| 21. | Emergency Communications | 12 |
| 22. | Professional Police Driving | 32 |
| 23. | Communication and Problem Solving | 16 |
| 24. | Patrol/Consular Notification | 42 |
| 25. | Victims of Crime | 10 |
| 26. | Family Violence and Related Assaultive Offenses | 20 |
| 27. | Crisis Intervention Training (CIT) and Mental Health Code | 16 |
| 28. | Hazardous Materials Awareness | 6 |
| 29. | Criminal Investigation | 44 |
| | Including: Introduction, General, Protection of and Crime Scene Search, Interviewing Techniques, Booking Procedures, Courtroom Demeanor and Testimony, Case Management | |
| 30. | Racial Profiling | 4 |
| 31. | Asset Forfeiture | 4 |
| 32. | Identity Crimes | 4 |
| 33. | TCLEOSE Rules Overview | 3 |

| | |
|---|---|
| **TOTAL HOURS** | **643** |

## 17 . Force Options

**Unit Goal: 17.1. The student will have an understanding of the legal authorities pertaining to peace officers' use of force.**

**17.1.1. The student will be able to define the following terms relating to use of force.**

Definitions:
- Deadly force - PC 9.01(3)
- Force - Black's Law Dictionary
- Reasonable Force - Black's Law Dictionary

**17.1.2. The student will be able to explain the legal authorities for the use of force.**

Legal authorities for use of force:
- Justification as a defense - PC 9.02
- Confinement as justifiable force - PC 9.03
- Threats as justifiable force - PC 9.04
- Reckless injury of innocent third person - PC 9.05
- Civil remedies unaffected - PC 9.06
- Arrest and search – PC 9.51

Estate of Ceballos v Bridgewater, Porras &Mull
According to the 5th Circuit Court appeals, this case on deadly force are clear; "an officer cannot use deadly force without an immediate threat to himself or others." (Penal Code 9.51)

Milstead v Kibler, 243 F.3d 157 (4th Cir. 2001)
"…police officers performing a discretionary function enjoy an immunity that shields them from liability for civil damages unless (1) the officers' conduct violates a federal statutory or constitutional right, and (2) the right was clearly established at the time of the conduct, such that (3) an objectively reasonable officer would have understood that the conduct violated that right. "

Okonkwo v Fernandez, 2003 WL 22227858 (N.D. Tex. 2003)
"Government officials who perform discretionary functions are entitled to the defense of qualified immunity, which shields them from suit as well as liability for civil damages, if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable officer would have known. A defendant official must affirmatively plead the defense of qualified immunity.

Graham v. Connor, 490 U.S. 386 (1989)
Graham, a diabetic having an insulin reaction, was mistakenly believed to be intoxicated by Charlotte, North Carolina police officers. Though Graham asked officers to check his

wallet for a diabetic decal he carried and a friend attempted to get permission to give Graham orange juice, Charlotte police refused and during a struggle, four officers threw him headfirst into a police car. Graham sustained serious injuries resulting in his suit alleging violation of his constitutional rights. The lower courts directed a finding for the police officers under the 14th Amendment's absence of malice analysis-that they did not intend to harm Graham. The U.S. Supreme Court reversed the lower courts ruling directing that the inquiry must, under the 4th Amendment, be whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them at the time, without regard to their underlying intent or motivation.

Related cases:

- Brower v Inyo County, 489 U.S. 593 (1989)
- Saucier v Katz, 121 S. Ct. 2151 (2001)
- Osabutey v. Welch, 857 F.2d. 220 (1988)
- Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034 (1987)
- Harlow v. Fitzgerald, 457 U.S. 800 (1982)

*Refer to departmental policy.*

*Refer to IRG*

**17.1.3. The student will be able to explain the justification(s) for use of force.**

Justification Generally:
- Public duty        PC 9.21
- Necessity  PC 9.22

*Refer to IRG:  Force/Deadly force case study.*

*Refer to departmental policy*

Protection of Persons:
- Self defense – PC 9.31
- Deadly force in defense of person – PC 9.32
- Defense of third person  – PC 9.33
- Protection of life or health – PC 9.34
- Affirmative Defense – CPRC 83.001

Protection of Property:
- Protection of one's own property - PC 9.41
- Deadly force to protect property - PC 9.42
- Protection of third persons property - PC 9.43
- Use of device to protect property - PC 9.44

Special Relationships:
- Parent-child - PC 9.61
- Educator-student - PC 9.62
- Guardian-incompetent - PC 9.63

Custody and Escape:
- Custody - PC 38.01(1)
- Escape - PC 38.01(2)
- Prevention of escape from custody - PC 9.52
- Maintaining security in correctional facility - PC 9.53

Tennessee v. Garner, 471 U.S. 1 (1985):
Absent circumstances, such as exhibition of weapons or the commission of a violent felony suggesting that the suspect is likely to pose a threat of death or injury if not immediately apprehended, the 4th Amendment prohibits seizure of the suspect by the use of deadly force.

**Unit Goal:  17.2.  The student will have a basic understanding of the concepts regarding use of force.**

**17.2.1. Identify definitions relating to use of force.**

Definition of the NOUN "force":
- Strength or energy brought to bear, cause of motion or change, active power; moral or mental strength; capacity to persuade or convince.
- Violence, compulsion, or constraint exerted upon person or thing.
- The quality of conveying impressions intensely in writing or speech.

- Definition of the VERB "force":
- To do violence to.
- To compel by physical, moral, or intellectual means.
- To make or cause through natural or logical necessity.
- To achieve or win by strength in struggle or violence.
- An aggressive act committed by any person which does not amount to assault, and is necessary to accomplish an objective.
- Synonyms - compel, coerce, constrain, oblige.

"Deadly Force" - is defined as force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury.

"Reasonable or Necessary Force" - is the amount of lawful physical coercion sufficient to achieve a legitimate law enforcement objective and is objectively reasonable under the facts, circumstances and alternatives confronting an officer at the time action are taken.

Cases relevant to Texas:

- Fraire v. City of Arlington, 957 F.2d 1268 (1992) (Use of Force)
- Graham v. Connor, 490 U. S. 386 (1989) (Use of Force)
- Brother v. Klevenhagen, 28 F. 3d 452 (5th Cir. 1994) (Use of Force)

- Morris v. Dillard Dept. Store, 277 F.3d. 743 (5th Cir. 2001) (Hog-Tie/Asphyxiation)
- Jackson v. City of Schertz, Texas, 2007 WL 4205709 (W.D.Tex. 2007) (Taser)
- City of Waco v. Williams, 209 S.W.3d 216 (Tex.App-Waco, 2006, pet. den.) (Taser)
- Hathaway v. Bazany, 2007 WL 3200413 (5th Cir. 2007) (shooting at a moving car)

Other relevant Circuit Court cases:
- Baskin v. Smith, 50 Fed Appx. 731 (6th Cir. 2002) (Handcuffing)
- Martinez v. New Mexico Dept. of Public Safety, 47 Fed. Appx. 513 (10th Cir. 2002) (Pepper Spray)
- Jennings v. Jones, 2007 WL 2339195 (1st Cir. 2007) (Pepper Spray)
- Robinson v. Solano County, 278 F.3d 1007 (9th Cir. 2002) (Seizure at Gunpoint)
- Kuha v. City of Minnetonka, 328 F. 3d 427 (8th Cir. 2003) (Use of Canine as Force)
- Robinette v. Barnes, 854 F. 2d 909 (6th Cir. 1988) (Use of Canine as Force)
- Cruz v. Laramie, 239 F.3d 1183 (10th Cir. 2001) (Hog-Tie/Hobble Tie)

*Note: Instructor should discuss the different Circuit Courts and explain that Texas is in the 5th Circuit.*


**17.2.2. Describe psychological aspects of the use of force.**

Law enforcement role in arrest:
- In physical arrest, the police role is essentially defensive
- The word <u>defensive</u> is defined as "serving to protect," "devoted to resisting or preventing aggression or attack"
- It is not aggression when an officer takes the initiative to confront a law violator - the officer's act is not one of hostility; it is one designed to defend and protect the community from criminality
- An officer's problems may grow out of the use of force employed against a combative but unarmed law violator when reasonable alternatives to use of force are not employed.
- An officer needs a range of decision-making tools that permits use of exactly that degree of control that constitutes reasonable force

Concept of Control:
- Control is that degree of influence the officer must exert over the violator to take him or her safely into custody
- Control is a "two-way street." An officer must be in complete self-control to be able to control a violator
- Self-control alone will be one of the greatest assets in dealing with a law violator
- Self-control results from the development of confidence in one's skills
- Self-control is achieved through training and practice both on the job and off
- The objective of using control is to elicit cooperation from the violator

Emotions, Attitudes, Prejudices:
- Arrest can be both an emotional and physical problem for officer and arrestee
- Emotional response or reaction is directly involved in an encounter between an officer an a violator
- Attitudes or prejudices can lead to conflict
- An officer has the potential to reduce the problems and danger associated with physical arrest if s/he is firm but fair with the violator
- Emotional responses are often the direct result of uncertainty
- Uncertainty is likely to result in compensating behavior
- Compensating behavior may take one of the following forms: hesitation, verbal abuse, bluff, unnecessary force

**17.2.3. Identify the deciding factors for use of force when effecting an arrest.**

Use of Force Factors:
- In every arrest situation the officers must be firm and be prepared to protect themselves and others
- Force must be controlled and used wisely with a purpose
- Only the amount of force reasonably necessary to effect the arrest should be used
- An officer should consider the following factors when assessing the level of force that is reasonable under the circumstances:
- Is the suspect submitting peacefully or resisting?
- Is the suspect armed?
- What is the nature of the crime?
- Does the suspect have a previous arrest record or history showing a pattern of violence?
- What is the number of suspects involved?
- How much support from other officers is available?
- What is the risk that the force chosen might cause injury to a bystander or other officers?

**17.2.4. Identify moral considerations and forces affecting an officer's decision to use deadly force.**

Moral considerations include statutory and case law and whether deadly force, justifiable, under the circumstances presented, may be avoided without risk of injury or death to the officer or others.

Administrative or departmental policy should be at least as restrictive as the law. In many cases it will be stricter than legal restrictions.

Informal organizational norms, which reflect law enforcement's informal culture, may or may not be stricter than legal or agency restrictions.

Individual choice or conscience reflects the inner controls of the officer.

**Unit Goal:  17.3.  The student will be aware of various force options or alternatives available to peace officers.**

**17.3.1. List and discuss force options available to peace officers.**

Note to Instructor:  Instructors are encouraged to begin using a use of force model similar to the Dynamic Resistance-Response Model (DRM) .



Force Options:
- Professional presence - entering into a scene
- Verbal communications - words, language
- Weaponless strategies - takedowns, come-alongs, etc.

- Weapon strategies
  - Chemical/electrical means
  - Mace
  - Stun gun
  - Baton or impact weapon
- Deadly force

**17.3.2. Identify the principal considerations in applying a use of force.**

Principal considerations:
- Ineffective control results when the level of force is less than the subject's level of resistance.
- Excessive control results when the level of force is unreasonably greater than the subject's level of resistance potentially causing preventable injury.
- The force used should be no more than a reasonable officer would use under the total circumstances of the situation.
- Follow departmental policy and the law.

*See PC, Chapter 9*

*Refer to departmental policy.*

**17.3.3. Discuss the impact of an officer's professional presence.**

Each scene has its own dynamics long before an officer arrives.  Events change because of certain kinds of presences.

This same thing occurs when officers enter the scene; things change.  This is due to the officers' presence.

Officers must be able to think of the scene as it was before they entered it and what it becomes while they are present.  People act differently under different circumstances, and officers' entrances into a scene create <u>new</u> sets of circumstances. This means that officers must remain alert to the dynamics of the people present and whether elements within a group may be in the posture of assisting the officer or interfering with or hostile to the performance of duty.

Example:  You are watching children at play and want to capture the moment on film.  When entering the scene with a camera everything changes.  The children become self-conscious and pose instead of being themselves.  Whatever pictures are taken are different than they would have been had a hidden camera been used.

**17.3.4.  Identify the various aspects of communication strategies used when dealing with the public.**

Communication is an important professional skill.

97% of an officer's duties involve verbal skills.

Only about 3% of contacts require physical force.

Elements of communication:
- [ ] Words, touch, body movement, message
- [ ] Content - actual message.
- [ ] Voice - verbal personality (how it is said).
- [ ] Non-verbals - raised eyebrows, posture, etc.

Perception of a message:
- [ ] 7% of the time a message is received due to content.
- [ ] 33% of the time a message is received due to voice.
- [ ] 60% of the time a message is received due to non-verbals (body language).

This means that approximately 93% of the time a message is received and interpreted based on <u>how</u> something is said rather than <u>what</u> is said.

Improper listening is not paying attention to what is said; such as merely waiting for the opportunity to speak as soon as someone finishes talking.

Communication is a professional skill, <u>not just luck</u>.

Peace officers must communicate under uniquely stressful conditions:
- [ ] To people who do not want to talk, or listen
- [ ] To emotionally charged individuals
- [ ] In dangerous circumstances
- [ ] While being watched by others
- [ ] To people who dislike and/or mistrust peace officers
- [ ] Most people respond positively to reasonable requests from a peace officer
- [ ] Frustrated people often resist
- [ ] Upset people are often incapable of acting reasonably and will not respond to appeals of reason
- [ ] Commands or orders usually meet with resistance
- [ ] An officer must trust tactics which redirect behavior
- [ ] Maintain disinterest (objectivity, free from bias, impartial, it does not mean un-interested, unconcerned, or mechanical)
- [ ] Learn to allow people to express frustration.
- [ ] Listen
- [ ] Do not take things personally

**17.3.5.  Identify elements that an officer must recognize and control in every encounter.**

Problem:
- ☐ Analyze and identify the problem
- ☐ Enables an officer to plan an approach
- ☐ Problems often change as confrontation progresses

Audience:
- ☐ Everyone encountered is part of the audience
- ☐ How is the audience reacting?  Examples: receptive, hostile, critical, etc.
- ☐ Read audience and adapt tactics appropriately
- ☐ If person has a friend in the audience you may try to enlist their help - ask the friend to help reason with and persuade the person to follow the officer's orders

Constraints:
Determine if there are any obstacles to effective communication and try to eliminate them if possible.  Examples:  time of day, weather, location, external noise, officer's own mood, person's values and beliefs, or the person is deaf, mentally ill, mentally retarded, intoxicated, etc.

Ethical Presence:
- ☐ An expression of self-control.
- ☐ Use words to state purpose, not to express personal feelings.
- ☐ Maintain professional attitude.
- ☐ Anything perceived as hasty, irrational, or unfair, makes an officer seem unethical.

*Reference: Thompson, George J., & Stroud, Michael J. (1984).  Verbal judo:  redirecting behavior with words.  Albuquerque, New Mexico:  The Verbal Judo Institute.*

**17.3.6.   Identify some helpful "tools" used in redirecting someone's behavior using verbal persuasion.**

Listen:
- ☐ Sort the real problem from the symptoms of the problem
- ☐ Determine priorities you must respond to
- ☐ Determine context of the event

Empathize:
- ☐ Understand the other person's state of mind
- ☐ See through the eyes of the other person

Ask:
- ☐ Use questions to gain control by causing others to report to you
- ☐ Questions direct attention away from the problem
- ☐ Buys time

- ☐ Demonstrates concern
- ☐ Paraphrase
- ☐ Repeat what you have learned in your own words
- ☐ Forces other person to stop talking and listen
- ☐ Helps to ensure that the officer understands situation
- ☐ Summarize
- ☐ Allows the officer to conclude the situation
- ☐ Officer provides the bottom line
- ☐ State the resolution clearly

Types of verbal appeals

Ethical appeal:
- ☐ Based upon position as a professional officer
- ☐ Assures other person
- ☐ Persuade others of your desire for a positive outcome
- ☐ This appeal is useful when dealing with people who are upset and highly emotional

Rational appeal:
- ☐ Based on use of reasoning
- ☐ Appeal to common sense, good judgment, or community standards
- ☐ Show that solution is reasonable and most likely to produce results
- ☐ This appeal is valuable when dealing with people having a strong sense of right and wrong

Practical appeal:
- ☐ Based on an urgent need to change a particular circumstance
- ☐ Ignores long-term consequences
- ☐ It is a short-term solution
- ☐ Adapt yourself and persuade the other person that you are like them
- ☐ Based on the beliefs and value system of the person

Personal appeal:
- ☐ Based on addressing person's needs and desires
- ☐ Set aside own personal values
- ☐ This type of appeal works well with headstrong people who insist on getting their own way

Words are no longer working:
- ☐ When a person seriously threatens bodily harm to an officer or the general public, an officer's control is compromised.
  - o Sometimes a person combines aggressive words and actions

- o  Words and gestures alone are not an attack
- o  Sometimes a person displays conflicting signs - words suggest one thing and actions suggest another
- o  A good principle to remember is: when words and actions disagree, trust actions.
- o  Actions can also be misleading, but whenever words and actions disagree, be alert and ready to use force.
- ☐  When a suspect begins walking or running away, or when a person escapes from custody
- ☐  When an officer is forced to repeat the same words or ideas over and over, the officer should conclude that the person is not being persuaded
- ☐  When repeated refusal by a person to comply with a reasonable request constitutes a need for more than words
- ☐  When a person is unreceptive to alternatives after repeated appeals

*Reference: Thompson, George J., & Stroud, Michael J. (1984). Verbal judo: redirecting behavior with words. Albuquerque, New Mexico: The Verbal Judo Institute.*

### 17.3.3.  Recognize criteria relating to a professional peace officer's use of force.

A professional peace officer employs theoretical knowledge under constantly changing and unpredictable circumstances.

Criteria for assessing whether a person is acting professionally are:
- ☐  Ability to communicate effectively with those persons outside of the profession
- ☐  Ability to accurately assess the situation and define the problem
- ☐  Ability to know when to move from words to force
  - o  There is no clear-cut simple answer
  - o  As a professional, an officer's use of force is:
    - ☐  Selective (the officer knows what kind of force and how much to use)
    - ☐  Appropriate (used in a controlled and purposeful manner)
- ☐  Ability to return to words and verbal strategies once the threat to an officer's safety (or other's safety) is over
- ☐  Possess the knowledge to recognize a person's actions that indicates his/her being under the influence of some substance or having a mental or physical disorder.
- ☐  Ability to evaluate personal performance
- ☐  Capability of describing and characterizing performance to superiors
  - o  An officer must be consciously competent, i.e., know why you did what you did in any given situation.

*Reference: Thompson, George J., & Stroud, Michael J. (1984). Verbal judo: redirecting behavior with words. Albuquerque, New Mexico: The Verbal Judo Institute.*

### 17.3.8. Identify typical procedures that are followed after an officer-involved shooting.

**Departmental Policy**
Each department has its own procedures for investigating officer-involved shootings. Most agencies have extensive investigative procedures in such circumstances.

*Note to the instructor: Emphasize that each department has its own procedures and that the officer should follow those procedures. Instructors should discuss evidentiary procedures common to use of force incidents and the involved officers' role.*

Applicable cases and codes:
- Garrity v New Jersey, 385 U.S. 493 (1967) ruled that evidence gathered from an employee under threat of dismissal was not admissible in a criminal trial
- Texas Government Code, Chapter 614, Sections 614.021, 614.022, and 614.023
- Guthery v Taylor, 112 SW3d 715 (Tex. App.-Houston [14th District] 2003, no pet.);
- City of Seagoville v. Lytle, 227 S.W.3d 401 (Tex. App.–Dallas 2007, no pet.)
- For civil service cities see Chapter 143 Local Government Code.
- Sheriff's Civil Service see Chapter 158 Local Government Code

Internal Affairs Investigations:
Each department has its own policy and procedures concerning internal affairs investigations. Officers should be aware of these practices. Where there is the possibility of criminal charges being filed many departments will conduct separate investigations because of Garrity v. New Jersey. During an administrative investigation, officers may be compelled to answer questions, participate in a line-up, or take a polygraph examination. If the officer is warned of the possible consequences of non-cooperation, s/he may be disciplined. This information is not admissible in a criminal trial under Garrity v New Jersey. If any answer sought by the investigator (or any information derived from such answer) is intended for use in a criminal trial, the officer must be given the Miranda warning contained in Article 15.17 and 38.22 of the CCP. Texas statutes provide guidelines for investigations.

**Unit Goal: 17.4. The student will understand the factors basic to unreasonable force and the possible consequences when excessive force is used.**

**17.4.1. Identify the possible consequences that may arise from improper or excessive use of force.**

Federal Laws

Conspiracy against rights of citizens
(Conspiracy against rights of citizens-Title 18 Section 241 United States Code Annotated.)

Deprivation of rights under color of law
(Violations of the Civil Rights of Person in Custody - Article 39.04 Vernon's Annotated Texas Penal Code.)

Deprivation of rights under color of law - Title 18 Section 242 United States Code Annotated.)

<u>Federal civil rights complaints are investigated by the FBI</u>:
- 10,000 to 12,000 complaints a year, one third are investigated with about 75 to 100 presented to a grand jury
- They look for clearly offensive, deliberate, and willful misconduct
- They may, if an agency is taking swift decisive action to punish misconduct, defer to that administrative process
- No good faith defense for criminal violations

**17.4.2. Identify factors that the courts use to determine if unreasonable force was used in a case.**

<u>Court factors</u>:
- Officers can be held to be personally liable for using excessive force - there are factors that may be considered in determining liability
- Reasonable force may be used to effect an arrest when an officer has probable cause for that arrest
- The 4th Amendment limits the level of force that may be used to reasonable force
- Reasonableness is based on individual facts and circumstances of the situation
- The need for force will be evaluated - the feasibility or availability of alternatives are considerations
- The extent of injury inflicted will be evaluated - minor injuries may be relegated to state court as a tort suit rather than as a Section 1983 cause

*See Civil Practice and Remedies Code, Section 101.55 Vernon's Texas Code Annotated.*

<u>Applicable cases</u>:
- ☐ Tennessee v Garner, 471 U.S. 1 (1985)
- ☐ Graham v Connor, 109 S.Ct.. 1865 (1989)
- ☐ Gordon v State, 707 S.W.2d 626 (Tex. Cr. App. 1986)

<u>Other considerations which might be used</u>:
- The nature of the offense in which control was lost
- Actions of third parties who were present
- An emergency situation which existed
- Behavior of the person against whom force was used
- The physical size, strength, and weaponry of the arrestee
- Known character of the arrestee

In general, an action is unreasonable if a reasonable man in similar circumstances would recognize the act as involving a risk of harm and a risk of such magnitude as to outweigh the utility of the act or the manner in which it was done.  If an officer's conduct in discharging his weapon creates a danger recognizable as such by a reasonable and similarly situated officer, They will be held accountable to others as the proximate result of his conduct.

The officer's liability is affected by the agency's written directives.

Written directives of an agency may be used against the officer and/or the agency.  Written directives of an agency may be used to support the officer and/or the agency.  An officer using more force than the agency's written directives allow is increasing his vulnerability to legal liability.

The potential for a conflict of interests arises in the legal defense of a suit in which an officer argues that he was only following agency policy and procedures in the use of force and is entitled to a good faith defense.

This argument, especially if the officer is called as a witness, could increase the local agency's exposure to monetary liability.  Some legal experts have maintained that officers and local governments should have separate attorneys for this reason.  Officers should seek legal advice as to the correct course of action in this matter.

The officer's liability is affected by not following prudent police procedures prior to the decision to use force.  Failure to follow proper procedures can make a situation more dangerous.  Failing to follow prudent procedures in stopping and confronting suspects may increase the risk that force be used.  An officer can be found liable in his justified use of deadly force if his negligent conduct created a danger for himself or others.

An officer may face possible personal liability for failure to stop other officers from using excessive force in his presence.

A police supervisor has an affirmative duty to intervene to stop officers who are engaging in excessive force in his presence.  A non-supervisory officer has an affirmative duty to intervene to stop officers and/or supervisors who are engaging in excessive force in his presence.

(CCP Art 2.13)  (a) It is the duty of every peace officer to preserve the peace within the officer's jurisdiction.  To affect this purpose, the officer shall use all lawful means.  (b) The officer shall: (1) in every case authorized by the provisions of this Code, interfere without warrant to prevent or suppress crime.

A peace officer or peace officer supervisor has the duty to intervene if officers are engaging in the excessive use of force.

Applicable cases:
- Davis v Rennie, 264 F3d 86 (lst Cir. 2001), holds that "An officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable under 42 USC Sec. 1983 for their nonfeasance

- Shaw v Stroud, 13 F.3d 791 (4th Cir. 1994), Supervisor may be liable for acts of subordinate, even where supervisor has no direct involvement, if the supervisor has failed to document and take corrective action for prior similar acts of misconduct

*Note to the instructor:  Once students are through this and the Strategies of Defense topical areas, all techniques in these topical areas should be practiced and assessed in all scenarios, role-plays, and practical applications.*

**INSTRUCTOR RESOURCE GUIDE MATERIAL**

**17.  FORCE OPTIONS**

**USE OF FORCE**

**LEARNING OBJECTIVE:  17.1.2.**

**PURPOSE:**        Demonstrate to class the legal authorities for the use of force.

**ACTIVITY:**           Scenario.

1.      Set the scene:

Officer confronts a suspect.  As the officer approaches from approximately 30 feet, the suspect pulls a small caliber pistol and begins firing at the officer.  The officer unholsters his weapon, drops to the ground and instantly notices a group of individual bystanders some distance behind the suspect.

2.      Divide class into groups.  Designate spokesperson and arrive at majority answer and report findings to class.

3.      What force may the officer justifiably use?

4.      By what authority?

5.      What may be the consequences of his injuring a third party?

6.      By what authority?

**USE OF FORCE**
**LEARNING OBJECTIVE:  17.1.2.**

**PURPOSE:**    Demonstrate to class the legal authorities for the use of force.

**ACTIVITY:**    Role play (in classroom).

1.    Select one student suspect and one student officer.

2.    Instruct suspect:

· He is a suspect in a felony theft case.
· Place his hands in his pockets and leave them during the interview.
· He should be evasive with his responses to officers questions, particularly those regarding his whereabouts during the time the offense was committed.
· If the officer asks him to remove his hands from his pockets, he should become argumentative.
· Suspect should ask officer "why?"  "Do you think I have a gun?"

3.    Instruct officer :

· Receive a call to investigate felony theft suspect.  Only information available is that the suspect has his hands in his pockets.
· Investigate.

4.    Divide class into groups of equal number.  Group designates a spokesperson and arrives at a majority answer and reports findings to class.

5.    Can an officer demand suspect "take hands out of pockets?"

6.    What can you do if he doesn't?

7.    What amount of force can be used to remove his hands from pockets, if any?

8.    Why can force be used, if any?

9.    By what authority?

10.    Does an order to "take hands out of your pockets" create a risk that the officer might be injured if the suspect has a weapon in his pocket?

11.    What alternatives are available to ordering a person to take his hands out of his pockets and what risks do such alternatives pose?

12.    Place group responses on chalkboard and discuss differences. Elaborate on when and what force may be used.

**USE OF FORCE**
**LEARNING OBJECTIVE: 17.1.3.**

**PURPOSE:**   Demonstrate to class the civil liabilities and legal remedies for unnecessary use of force.

**ACTIVITY:**   Scenario.

    1.    Set the scene.

          · Officer is interviewing an individual and determines the individual has committed a violation and he is going to immediately place this person under arrest.
          · The officer tells the suspect he is under arrest for this particular offense.
          · The suspect is argumentative and uncooperative.
          · The suspect is <u>not</u> being physically aggressive.

    2.    Divide class into groups.  Designate spokesperson and arrive at majority answer and report findings to class.

    3.    Is suspect legally able to respond to any physical force the officer uses to arrest him?  If so, by what authority?

**USE OF FORCE**
**LEARNING OBJECTIVE: 17.1.3.**

**PURPOSE:**  Demonstrate to class civil liability and civil remedies when unnecessary force is used.

**ACTIVITY:**  Scenario.

    1.    Set to scene:

        Officer arrives at the scene of a reported shooting.  He observes an individual lying face down across the threshold.  The individual appears to be unconscious.  He is bleeding from what appears to be a gunshot wound in his right side.  You investigate and find a shotgun tied to a chair and a rope tied from the trigger device of the shotgun to the opened door.  Your investigation further reveals that this was a device to deter burglaries.

    2.    Question(s).  Group or individuals response(s).

        1.    Is the owner or manager justified in using force to prevent the consequences of theft.

        2.    If so, by what authority?
            If not, why not?

        3.    Is the owner or manager justified in using force or the threat of force in this manner?

        4.    If so, by what authority?
            If not, why not?

## LAW ENFORCEMENT OFFICERS KILLED

Instructors should research current FBI statistics relating to law enforcement officers killed and assaulted