IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| CHRISTINE JONES | § | |
| | § | CIVIL ACTION NO. 1:14-CV-00103 |
| VS. | § | |
| | § | Judge Keith Giblin |
| | § | |
| TAMARA SPIKES and | § | |
| BEAUMONT INDEPENDENT | § | |
| SCHOOL DISTRICT POLICE | § | |
| DEPARTMENT | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT TAMARA SPIKES' SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT AND SUPPLEMENTAL MOTION TO DISMISS**

## I. INTRODUCTION

1.      Plaintiff, Christine Jones, brought a § 1983 claim against Tamara Spikes ("Spikes") and claims against Beaumont Independent School District Police Department ("BISD") in the 136th Judicial District Court, Jefferson County, Texas. (Doc.1-2, Page ID#35)

2.      On August 7, 2014, Jones filed her Amended Complaint in the Eastern District of Texas, Beaumont Division. (Doc.19)

3.      On August 28, 2014, Spikes filed her "Motion to Dismiss and in the Alternative, Motion for Summary Judgment." (Doc. 25)

4.      Spikes' Motion to Dismiss was filed pursuant to 12(b)(1) and 12(b)(6), or alternatively 12(c), and in the alternative, as a Motion for Summary Judgment under FRCP 56. (Doc.25)

5.      Spikes' Motion to Dismiss (Doc. 25) was also docketed as a Motion for Summary Judgment, with reference to the Motion to Dismiss. (Doc. 28)

6.      Plaintiff filed her Response to Spikes' Motion to Dismiss and Summary Judgment in a single document (Doc. 30) as the response to defendant's Doc. 25 and Doc. 28.

Spikes filed a reply to plaintiff's response (Doc. 33), and plaintiff filed a sur-reply to Spikes' reply. (Doc. 35).

7.     On December 30, 2014, Spikes filed her supplemental motion for summary judgment and supplemental motion to dismiss. (Doc. 44)

8.     Plaintiff files this Response to Spikes' Supplemental Motion for Summary Judgment and Supplemental Motion to Dismiss.  Plaintiff incorporates the authorities, arguments, and evidence presented in her previous responses (Docs. 30 & 33) to defendant's previous motion to dismiss and summary judgment, and submits this response explaining that Spikes' supplemental motion for summary judgment and supplemental motion to dismiss should be denied because sufficient evidence exists to show:

    A.     Jones' claims against Spikes are individual claims;

    B.     Spikes is not entitled to qualified immunity. Spikes' actions violated clearly established statutory or constitutional rights of which a reasonable person in her situation would have known. Spikes' actions were objectively unreasonable in light of clearly established law at the time of the incident;

    C.     Jones has alleged and provided sufficient facts and evidence to support a claim for excessive force; and

    D.     Jones' excessive force claims are controlled by the Fourth Amendment.

## II. STATEMENT OF FACTS

9.     On May 2, 2013, Jones pulled into the Vincent Middle School driveway to pick up her daughter from school. (Ex.1 ¶ 2)  There were cars already lined up on the right hand side of the school's driveway, so Jones pulled in through the left hand side of the driveway. (Ex.1 ¶ 3)  There was a space on the right hand side, but she could not fit her vehicle in that space.  (Ex.1 ¶ 3 & Ex. 3, Jones Depo. 107:24-108:7)  There was a vehicle directly behind her and a gray vehicle a few car lengths ahead of her.  (Ex.1 ¶ 3 & Ex. 2A-B)  The

driver in the gray vehicle had exited his car and entered the school building.  (Ex.1 ¶ 3)

10.     While Jones waited in her vehicle, a lady came to her driver's side window and said, "They don't want you pulling in from the left hand side." (Ex.1 ¶ 4). There were no signs or any traffic laws prohibiting such left hand turns. (Ex. 4, Custer Depo. 30:1-14).  The lady did not advise Jones she was a police officer, and Jones did not know she was a police officer. (Ex. 3, Jones Depo. 97:1-98:13, 99:4-7).  As Officer Custer admitted, many people do not think the BISD police officers are actual police (Ex. 4, Custer Depo. 68:6-15) and, in addition to police carrying radios, administrators at the Vincent Middle School campus had radios of their own. (Ex. 4, Custer Depo. 32:2-33:3)  All Jones could see was a name tag that said, "Spikes." (Ex. 1 ¶ 4; Ex. 3, Jones Depo. 98:10-13).  Spikes was very irritated. (Ex. 1 ¶ 4; Ex. 3, Jones Depo. 98:25-99:7).

11.     Spikes told Jones to pull up.  (Ex.1 ¶ 6) Jones told Spikes there was nobody in the gray car because the driver had gone into the building. *Id.*  Jones asked Spikes if she would go look in the vehicle to make sure the driver was not there.  *Id.*  Spikes did not acknowledge what Jones had told her, and she walked away toward the back of Jones' vehicle. *Id.*

12.     Spikes came back up to Jones' vehicle and asked her again to pull up.  (Ex.1 ¶ 7) Jones told her she did not want to pull up too close to the gray vehicle since the driver was not in it, and she did not want to get trapped in behind him.  *Id.*

13.     Spikes then asked Jones for her license.  (Ex.1 ¶ 8 & Ex. 3, Jones Depo. 111:1-15). Jones asked her if there was a problem.  *Id.* Jones was unable to give her driver's license to Spikes because Spikes walked away from her vehicle. (Ex. 3, Jones Depo. 111:1-15). Spikes walked to the side of Jones' vehicle to look at the vehicle identification number.

(Ex.1 ¶ 8).   She then walked toward the front of the vehicle to look at the license plate. *Id.*  Spikes went to the rear of Jones' vehicle, and then made her way back to the front *side* of the vehicle.   (Ex.1 ¶ 8-9 & Ex. 2C)  Jones still did not know Spikes was a police officer. (Ex.1 ¶ 9)

14.     At that time, the traffic in the driveway began moving.  (Ex.1 ¶ 10) Jones told Spikes she could pull over to the side because the gray vehicle and the truck next to it had moved. (*Id.* & Ex. 3, Jones Depo. 113:16-114:6).   Jones began to pull forward.  *Id.*  Spikes was not standing in front of Jones' vehicle, but stuck her leg out, and Jones stopped.  *Id.* Jones pointed to the right side of the driveway and told Spikes that she was going to move her car to the side. (Ex. 3, Jones Depo. 113:16-114:6).   Jones' vehicle did not touch Spikes. (Ex.1 ¶ 10)   Jones turned her head to make sure it was clear for her to pull forward.  (Ex.1 ¶ 10 & Ex. 3, Jones Depo.115:2-13)   While still on the front *side* of Jones' vehicle, Spikes hollered that Jones had hit her.  *Id.*  Jones did not think she hit Spikes and Spikes was not knocked to the ground.  *Id.*  Spikes remained at the front side of Jones' vehicle.  *Id.*  Spikes had still not identified herself as a police officer.  *Id.*

15.     Contrary to Spikes' statements, the video shows that, as Jones began to move to the open spot to her right, Jones turned her wheels to the right and away from Spikes. (Ex. 2 E&F). Jones pulled forward into the open spot in order to get out of the way of the vehicles behind her.  (Ex.1 ¶ 11 & Ex. 2 E&F). Jones did not hit Spikes. (Ex. 3, Jones Depo. 196.4-196.11).  Jones attempted to get out of her vehicle when Spikes came to her window with her gun pointing at Jones' head.   (Ex.1 ¶ 11 & Ex. 2G-M)

16.     With her gun to Jones' head, Spikes first words were, "I'm going to shoot, I'm going to fire my gun." (Ex.1 ¶ 12 & Ex. 3, Jones Depo. 121:10-123:2) She still had not identified

herself as a police officer.  *Id.* With her gun pointed at Jones' head, Spikes began hollering at Jones to get out of the car. *Id.*

17.    Jones began to get out of her vehicle as other police arrived on the scene.  (Ex.1 ¶ 13)   Officer Custer arrived on the scene and drew his weapon only because he saw Officer Spikes had her weapon drawn. (Ex. 4, Custer Depo. 76:10-77:1).   Jones was ordered  to her knees and to lay face down.  (Ex.1 ¶ 13) Jones complied with the officers' instructions. (Ex. 3, Jones Depo. 86:2-22).   An officer put a knee in her back as they handcuffed her and brought her to a police car. (Ex.1 ¶ 13, Ex. 2 O-P)

18.    While the event took place, children from the middle and elementary schools were walking around.  (Ex.1 ¶ 14, Ex. 2 G-O, Ex. 4, Custer Depo. 11:18-23)   Many of the kids were in the line of fire, and Jones heard Mrs. Douglas, the Attendance Clerk at the school, attempt to get the kids inside.  *(*Ex.1 ¶ 14*)*  Jones' daughter saw her mother on the ground getting handcuffed and hauled away. *(*Ex.1 ¶ 14 & Ex. 2 O-P) Her daughter's friends saw the event happen. *Id.*

19.    Jones suffered abrasions and pain on her knees and wrists.  (Ex.1 ¶ 15)  Her back was sore from the officer putting a knee into it. *Id.*  Jones, a registered nurse, was  required to report the arrest to the Board of Nursing.  (Ex.1 ¶ 16) Jones lost wages due to missing work because of the event. (Ex. 3, Jones Dep. 33:17-20)   The event caused Jones emotional pain, depression and anxiety.  (Ex.1 ¶ 17 and Ex. 3, Jones Depo. 31:23-32:13) During the event, she feared for her life.  *Id.*  In her life, Jones never had someone point a gun at her head while yelling that they were going to shoot her. *Id.*  She had never been involved in any kind of altercations. *Id.*  Up to that day, the only law enforcement issues she ever had were minor traffic tickets. *Id.*

20.    Spikes and BISD caused criminal charges to be filed against Jones for an alleged felony aggravated assault against a public servant and a misdemeanor failure to identify by giving false or fictitious information.  (Ex.1 ¶ 18)   Both the criminal charges were subsequently dismissed without trial because of insufficient evidence to support the claims against Jones. *Id.*

**Spikes is not allowed to create a need for the use of deadly force.**

21.    BISD law enforcement officers are not allowed to position themselves in the direct path of a moving vehicle to stop it, and cannot put themselves in the path of a moving vehicle and then use deadly force saying they were at risk because the vehicle was moving toward them.   (Ex. 4, Custer Depo. 52:15-55:11 & Ex. 5, Policies p.BISD000103-104) BISD officers may only draw or display a firearm when they have reason to fear for their personal safety or the safety of others. *Id.* An officer should never use deadly force when it appears that an innocent person might be injured. *Id.* BISD Officer Custer testified that it is not appropriate for an officer to draw a handgun outside of a school with students, parents and school personnel present and pace back and forth in the road with the gun drawn while a school employee talked to the driver with whom the officer had an issue. (Ex. 4, Custer Depo. 25:19-25)  Deadly force, as defined by BISD, is the force that is intended, or in the manner of its use or intended use, is capable of causing death or serous bodily injury. (Ex. 5, Policies p.BISD000100).

**Spikes did not exhaust all other lesser force before drawing her weapon.**

22.    A gun is a weapon of deadly force. (Ex. 4, Custer Depo. 17:16-18, and Ex. 5, Policies, p.BISD000100).   BISD Police officers are required to apply only the force that is necessary and they have to exhaust all other lesser force before they apply the next level

of force. (Ex. 4, Custer Depo. 51:2-52:23 & Ex. 5, BISD Policies, BISD000101-102). The lowest level of force is officer presence, followed by, in order, verbal commands; physical strength and skill; chemical agents; authorized baton; and authorized service revolver. *Id.* Spikes, who after putting herself in the path of a vehicle, jumped to the highest level of force.

**Spikes never notified Jones she was under arrest**.

23. When making an arrest, it is the policy of BISD Police Department to inform the person being arrested that they intend to take them into custody and the reason for taking them into custody.   (Ex. 4, Custer Depo. 47:19-50:1 & Ex. 5, Policies BISD000087-88). As Officer Custer testified, "you don't just walk up to somebody and cuff them and throw them in the car and take them to jail and not tell them anything." (Ex. 4, Custer Depo. 49:2-16)   Spikes never notified Jones what charges were being brought against her or why she was being detained.   (Ex. 3, Jones Depo. 16:23-17:13) Jones did not find out the charges against her until after she had been booked at the jail, and it was not officer Spikes that informed her. (*Id.* & Ex. 3, Jones Depo. 50:12-51:19)   Spikes did exactly what Officer Custer testified an officer does not do: walk up to Jones, cuff her, throw her in the car and not tell her anything.

**Surveillance video of the scene is incomplete**.

24. The video of the incident is a surveillance video that pans between views. (Ex. 6, Video). Many moments of the incident between Spikes and Jones are not captured on the video. *Id.* Some periods of the incident where Spikes has her gun drawn on Jones are not shown. (Ex. 3, Jones Depo. 170:16-23). The video does show the period of time where Jones begins to pull forward into the open spot. (Ex. 2 E-F). The video shows Jones'

wheels are not turned at Spikes, as Spikes claims, but turned away from Spikes and to the right. *Id.* The video shows Spikes put her foot out in front of Jones' vehicle. (Ex. 2 C). The video shows portions of the event when Spikes does have her gun drawn (Ex. 2 G); with her gun drawn but the direction of where she is pointing the gun is concealed by the vehicle (Ex. 2 H-J); and with her gun drawn and a school administrator and children present (Ex. 2 J-K).

### III. ARGUMENT AND AUTHORITIES

<u>The Court Should Deny Spikes' Motion to Dismiss</u>

25.    Officer Spikes' previous motion to dismiss was premised on a Fed. R.Civ.P. 12(b)(1) factual attack. A 12(b)(1) "factual attack" challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). Plaintiff bears the burden of proof that jurisdiction does in fact exist. *Id.*

26.    In response to Spikes' re-urging of her motion to dismiss, plaintiff, Christine Jones, directs the Court to her response and sur-reply provided in response to defendant's previous motion to dismiss and summary judgment (Docs. #30 & #35), as well as the factual evidence provided in this response. Plaintiff, as discussed below, has provided enough evidence to satisfy the requirements of a summary judgment and a 12(b)(1) factual attack. Therefore, the Court should deny Spikes' motion to dismiss.

<u>Video Evidence Does Not Reveal the Entire Event</u>

27.    With regard to video evidence, defendant cites *Poole v. City of Shreveport*, 691 F.3d 624 (5th Cir. 2012), a case where a police vehicle camera captured video of a person

actively resisting arrest and subsequently being tasered by a police officer after the police officer could not subdue the person. *Id.* at 629.

28.    Unlike the video in *Poole,* the video evidence attached to this motion does not show the entire alleged excessive force actions of the police officer.  Portions of the interactions between Spikes and Jones are not caught on camera, and these missing portions contain actions by Spikes that plaintiff contends are factually relevant to the claims she has made against defendants.  The surveillance video of the incident does show Officer Spikes stepping in front of Jones' vehicle, Jones turning her wheel away from (and not toward) Spikes as she begins to pull forward, Spikes stalking Jones' vehicle with her gun drawn as children are present, and periods where Spikes has her gun drawn but the direction she is pointing it is concealed by plaintiff's vehicle.

<u>Summary Judgment Standard of Review</u>

29.    The party moving for summary judgment has the initial burden of demonstrating that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).  Movant may show that the undisputed material facts affirmatively establish a right to judgment. Alternatively, movant may establish that the other party has the burden of proof at trial, and has failed to "make a showing sufficient to establish the existence of an element essential to [its] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23.

30.    In order to avoid summary judgment, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *See Matsushita Elec. Indus. Co. v. Zenith Radio* Corp., 475 U.S. 574, 585-86;

9

Anderson, 477 U.S. at 257. Fed.R.Civ.P. 56 requires that the nonmoving party set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256. Only a genuine dispute over a material fact (a fact which might affect the outcome of the suit under the governing substantive law) will preclude summary judgment. *Anderson*, 477 U.S. at 248. The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party on the issue. *Id.*

31.    Jones relies on the following argument and authorities, as well as the evidence attached to this motion, to respond to defendant's motion for summary judgment. The discussion and standards discussed below address: (A) Jones' claims against Spikes are individual claims; (B) Authority and arguments proving Spikes is not entitled to qualified immunity; (C) Jones has provided sufficient facts and evidence to support a claim for unreasonable force and seizure; and (D) Jones' excessive force claims are controlled by the Fourth Amendment;

A.    Jones' Claims Against Spikes are Individual Claims

32.    Plaintiff's claims against Spikes are individual claims. In her First Amended Complaint, Jones unambiguously stated the claims against Spikes as: Count 1 - 42 U.S.C. §1983 Claim Against Defendant Spikes **Individually**. (Doc.19, Section F). No claims are made against Spikes in her official capacity other than those brought against the other defendant, BISD. Spikes actions in an official capacity would be attributable to BISD. There are no "official capacity" claims to dismiss unless claims against BISD are dismissed.

B.    Spikes Is Not Entitled to Qualified Immunity

33.    When determining whether a government official is entitled to qualified immunity,

a two-step analysis is followed. *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004). First, the court assesses whether a statutory or constitutional right would have been violated on the facts alleged. *Id. Citing Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If the court finds a violation is properly alleged, it proceeds to the second step, in which it determines whether the defendant's actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Flores* at 395 *citing Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982)).

<u>First Step:  Whether a Statutory or Constitutional Right Would Have Been Violated on the Facts Alleged</u>

34.    Jones had statutory and constitutional rights protecting her from having her liberty restrained by physical and excessive force.

<u>Illegal Seizure</u>

35.    An officer seizes a person when he, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Flores*, 381 F.3d at 396 *citing Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The Fourth Amendment does apply to claims for excessive force used before the seizure.  *Flores* at 396.

36.    Spikes seized Jones by use of physical force, i.e. pointing a gun at her and threatening to shoot.  At the point she threatened Jones with the gun, Jones' liberty was restrained. The excessive force continued through Jones being forced to the ground, handcuffed, and brought to the police car. Spikes never notified plaintiff she was under

arrest and never notified plaintiff of charges against her.

Deadly Force

37.    The use of a gun to threaten a person with imminent bodily injury is aggravated assault under the Texas Penal Code. Tex. Pen. Code Ann. § 22.02(a)(2). "Deadly force" is defined as "force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." Tex. Pen. Code § 9.01(3). A peace officer is justified in using deadly force in the course of an arrest if he reasonably believes that there is a substantial risk that the person to be arrested will cause death or serious bodily injury to the officer or another if the arrest is delayed. Tex. Pen. Code § 9.51(c)(2). Using force "carrying with it a substantial risk of causing death or serious bodily harm" is "deadly force." *Flores v. City of Palacios*, 381 F.3d 391, 401 (5th Cir. 2004)

38.    There is no evidence showing Spikes reasonably believed Jones would cause death or serious bodily injury to her or another. As discussed, Jones had parked her vehicle, was at a school, and her vehicle was surrounded by other vehicles. She was unarmed, and had complied with Spikes' instructions to move her vehicle. Spikes used force (pulling a gun and threatening to shoot) that had a substantial risk of causing death or serious bodily harm to Jones (and others). Spikes unlawfully used deadly force in seizing Jones.

Excessive Force

39.    Other jurisdictions have ruled that "police officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever." *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir.1996) Holding a gun to a person's head and threatening to pull the trigger is a use of deadly force. *McDonald by McDonald v. Haskins*,

966 F.2d 292, 295 (7th Cir. 1992). It has been held that an officer pulling a gun out on a woman, with children present, pursuant to a warrant, without suspecting any of the suspects were armed, is excessive force.  *Christian v. Orr,* CIV.A. 08-2397, 2011 WL 710209 (E.D. Pa. Mar. 1, 2011) aff'd as amended, 512 Fed. Appx. 242 (3d Cir. 2013). It has also been held that for an unidentified police officer to brandish his revolver eighteen inches from a person's head and then threaten to shoot is conduct that shocks the conscience so as to deprive plaintiff of constitutional rights. *Black v. Stephens*, 662 F.2d 181, 189 (3d Cir. 1981).

40.    To succeed on an excessive force claim, a plaintiff bears the burden of showing "(1) an injury (2) which resulted directly and only from the use of force that was excessive to the need and (3) the force used was objectively unreasonable." *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir.2001) (quoting *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir.2000)).

Jones Suffered an Injury

41.    An injury does not need to be "significant" to support an excessive force claim. *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir.2001).  Substantial psychological injuries along with bruising are sufficient enough injuries to demonstrate the violation of a clearly established constitutional right.  *Flores* at 398 *citing Dunn v. Denk*, 79 F.3d 401, 402 (5th Cir.1996).

42.    Evidence attached to this response shows injuries resulting from the actions of Spikes.  Jones suffered abrasions and pain in her knees and wrists, as well as an injury to her back. The deepest injuries Jones suffered are emotional and psychological. She had never experienced anyone pointing a gun at her head while threatening to shoot her. She

was in fear for her life. Weighed against the authorities, Jones injuries are significant enough to support an excessive force claim.

<u>Jones Injury Resulted Directly and Only from the Use of Force That Was Excessive to the Need</u>

43.     The Supreme Court, in *Graham v. Connor*, established three factors for determining whether a particular use of force was "excessive to the need":

    a)    the severity of the crime at issue;
    b)    whether the suspect posed an immediate threat to police officers or civilians; and
    c)    whether the suspect was actively resisting arrest or attempting to evade arrest by fleeing the scene.

*Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

The "Graham factors" remain the guiding framework for judging whether an officer's use of force was excessive to the need. *Ramirez v. Martinez*, 716 F.3d 369, 378 (5th Cir.2013); *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir.2009).

*First Graham Factor:  Severity of the Crime at Issue*

44.     The first factor to be addressed is the severity of the crime at issue. Jones was charged with aggravated assault against a public servant and a misdemeanor failure to identify by giving false or fictitious information. Jones did not even know Spikes was a police officer. Spikes never identified herself as an officer. Spikes asked for Jones' driver's license, but she never told Jones she was a police officer. She never advised Jones she had committed a crime. Evidence attached to this response indicates Jones did not hit Spikes with her vehicle. Contrary to Spikes' claims, the video evidence shows Jones turned her vehicle *away* from Spikes in order to pull to the open parking space.  Spikes was not knocked to the ground as she claims in her motion.  There is no evidence that Spikes was

"thrown an unknown distance" by a car "traveling at moderate speed," as she indicated to her doctor. (Doc. 25-2, Exhibit B, SPIKES-00313, ¶18:45) Jones pulled forward, as she had been instructed to do by Spikes. She turned her wheels away from Spikes and pulled into the open parking spot and stopped her vehicle. Jones had committed no crime. Jones did not commit (nor was it alleged she committed) an offense severe enough to have a gun pulled on her and pointed at her head while threatened to be shot. She did not commit an offense requiring her to be pulled out of her car at gunpoint in front of her children, handcuffed, and sent to jail.

*Second Graham Factor: Whether the suspect posed an immediate threat to police officers or civilians*

45.    Analyzing the second *Graham* factor, Jones posed no immediate threat to police officers or civilians. As discussed above, she had not committed a crime. She was in the line at the school to pick up her daughter who attended the middle school. She was unarmed, and her vehicle was surrounded by other vehicles containing parents who were also there to pick up their children. Jones advised Spikes she would pull up, and she did just that. Jones had pulled over into the open parking space and *stopped* her vehicle. At no point was she a threat to police officers or civilians, and she most certainly was not a threat when Spikes decided to pull her gun on Jones and threaten to shoot her.

*Third Graham Factor: Whether the suspect was actively resisting arrest or attempting to evade arrest by fleeing the scene.*

46.    Until she pointed her gun and threatened to shoot Jones, Spikes had shown no indication she was a police officer. To anyone's guess, Spikes could have been a crossing guard. As Officer Custer testified, many people do not even realize the BISD police officers are actually law enforcement. Jones was not resisting arrest or attempting to flee, as she

was not notified she was even under arrest until she got out of her vehicle. Spikes presented no evidence to indicate she even thought Jones was going to flee the scene. There were cars all over the driveway, so even if Jones wanted to flee, the traffic would have prevented it. She had pulled over to park her car. Not surprisingly, she was afraid to get out of her car with a woman pointing a gun at her and threatening to kill her. Jones was not actively resisting arrest or attempting to evade arrest by fleeing the scene.

47.    As discussed, the force Spikes used is considered deadly and the situation did not require the use of deadly force. Even if it does not rise to the level of deadly force, in weighing the evidence against the *Graham* factors, Spikes obviously used force that was excessive to the need.

The Force Spikes Used was Objectively Unreasonable

48.    The objective reasonableness of a particular use of force is highly fact-and context-specific. *Tarver v. City of Edna*, 410 F.3d 745, 753 (5th Cir.2005) ("To determine the objective reasonableness of an officer's use of force, 'we pay careful attention to the facts and circumstances of each particular case[.]' ") (quoting *Gutierrez v. City of San Antonio*, 139 F.3d 441, 447 (5th Cir.1998)). It must be judged in light of the information available to the officer at the time. *Graham*, 490 U.S. at 397; see also *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

49.    When an officer uses deadly force, the "objective reasonableness" balancing test is constrained. It is objectively unreasonable to use deadly force "unless it is necessary to prevent [a suspect's] escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Flores* at 399 quoting *Garner*, 471 U.S. at 3, 105 S.Ct. 1694.

50.    The standard is an objective one – whether the use of force was "'objectively reasonable' in light of the facts and circumstances confronting [the officer]" at the time force was employed. *Graham*, 490 U.S. at 397. In such an analysis, the subjective intent of the defendant in question plays no meaningful role. *Poole v. City of Shreveport*, 691 F.3d 624, 630 (5th Cir.2012) ("Officers' subjective intent is irrelevant [to qualified immunity]."). "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Graham*, 491 U.S. at 397.

51.    Spikes' actions constitute the use of deadly force. As BISD Officer Custer testified, a firearm is a deadly weapon. Deadly force, as defined by BISD, is the force that is intended, or in the manner of its use or intended use, is capable of causing death or serous bodily injury. Her use of deadly force was objectively unreasonable because she did not believe that Jones posed a threat of imminent danger yet she went to the highest use of force and threatened Jones with a deadly weapon.

52.    Even if her acts are not defined as "deadly force", Spikes' actions were excessive and objectively unreasonable. Analyzing her actions based on the facts and circumstances confronting her at the time force was employed, the information available to Spikes at the time of the incident was as follows:  Jones was in line, along with other parents, to pick up her daughter at school.  Jones was unable to pull up because the person in the car in front of her had gone into the school. The line was filled with other vehicles waiting to pick up their children.   When a spot was made available ahead of Jones, Jones notified Spikes she was going to move up, and did so. Spikes had not identified herself as a police officer and she had not notified Jones of any violations. There were many children running around

the scene.  After Jones pulled forward a few car lengths, she pulled to the side, parked in the open space and then parked her vehicle. Jones was not fleeing, she was not threatening Spikes or anyone else.

53.    Analyzing Spikes' actions in light of the facts confronting her, even if Spikes felt Jones had committed a violation that required arrest, she chose the most life threatening method available to her. She pulled a gun and threatened another human being's life.  As she pointed her gun at Jones, children could be seen directly in her line of fire. As BISD Officer Custer admitted, it is inappropriate to draw a handgun outside of a school with students, parents, and school personnel present and pace back and forth with the gun drawn. When viewed from the objectiveness of her fellow officer, her actions were unreasonable.

54.    When other officers appeared on the scene, they did not pull their guns on Jones and threaten to shoot her. The only reason other officers drew their weapons was because Spikes had already drawn her weapon.  Although "shock the conscious" is not the standard Jones must prove, Spikes' actions unmistakably shock the conscious. As pointed out in *Tarver v. City of Edna*, whether Spikes' actions were objectively reasonable is highly fact-and context-specific. The evidence, arguments, and authorities presented in this response provide more than sufficient evidence to allow a jury to comfortably find that Spikes acted objectively unreasonably.

55.    Pursuant to the arguments and authorities presented above, it is clear that a statutory constitutional right would have been violated on the facts Jones alleges as she suffered an injury which resulted directly and only from the use of force that was excessive to the need, and the force used was objectively unreasonable. Therefore, Jones has

satisfied the first step in the test of determining qualified immunity.

Second Step:  Whether the Defendant's Actions Violated "Clearly Established Statutory or Constitutional Rights of Which a Reasonable Person Would Have Known".

56.    To gauge the objective reasonableness of the force used by a law enforcement officer, the amount of force used must be balanced against the need for force. *Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004).

57.    The objective reasonableness analysis focuses on whether the alleged constitutional deprivation was objectively unreasonable under clearly established law. This step is comprised of two separate, but related, inquiries: "whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the defendant's conduct was objectively reasonable in the light of that then clearly established law." *Tolan v. Cotton*, 713 F.3d 299, 305 (5th Cir.2013)

Jones' Rights Were Clearly Established at the Time of the Incident

58.    A right is clearly established when every reasonable official would have understood that what he is doing violates that right. *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083, 179 L. Ed. 2d 1149 (2011)  "Existing precedent must place the statutory or constitutional question beyond debate." *Tolan*, 713 at 306; see also *Saucier*, 533 U.S. at 206.  Requiring an alleged constitutional deprivation to violate clearly established law before relief may be pursued "balances the vindication of constitutional or statutory rights and the effective performance of governmental duties by ensuring officials can 'reasonably ... anticipate when their conduct may give rise to liability for damages.' " *Id.* (quoting *Davis v. Scherer*, 468 U.S. 183, 195, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984)).

59.    Jones' clearly established rights have been discussed at length in paragraphs 33 through 40 above in the analysis of the first step in determining whether qualified immunity exists. Jones has a right to be free from an illegal seizure in violation of her Fourth Amendment rights, she has a clear right to not be threatened with imminent bodily injury with a gun, and she has the right to not have her liberty restrained by the use of excessive force.   The rights discussed above were clearly established at the time of the incident, as the cases and statutes presented above show those rights were established well before the incident.

Spikes' Conduct Was Objectively Unreasonable in the Light of Clearly Established Law

60.    As discussed in the first step of the qualified immunity analysis in paragraphs 33 through 55 above, whether Spikes' deadly force actions were objectively reasonable depends on whether she reasonably believed that Jones posed a threat of imminent danger.   Even if her actions were not considered acts of deadly force, based on the analysis above, analyzing her response to the facts confronting her, Spikes' actions were objectively unreasonable in light of clearly established law.

61.    It is apparent, based on the evidence and authorities presented above, Spikes' actions violated clearly established law at the time of the incident and her conduct was objectively unreasonable in light of that clearly established law. Therefore, Jones' has satisfied the second step of the test for qualified immunity.

In Analyzing the Two Steps of the Test, Spikes Is Not Entitled to Qualified Immunity

62.    A statutory or constitutional right would have been violated based on the facts Jones alleged. Spikes' actions violated clearly established statutory or constitutional rights of which a reasonable person would have known. Spikes' actions were objectively

unreasonable in light of clearly established law at the time of the incident. Spikes is not entitled to qualified immunity.  Therefore, the Court should deny defendant's supplemental motion for summary judgment and supplemental motion to dismiss.

C.    Jones Alleges Sufficient Facts for a Claim for Fourth Amendment Excessive Force

63.    Defendant claims Jones cannot preserve a claim for excessive force under the Fourth Amendment. (Doc. 44, p.18).  Spikes bases her argument on *Graham v. Connor,* 490 U.S. 386 and *Flores v. City of Palcios*, 381 F.3d 391. In discussing qualified immunity above, paragraphs 33 through 61 detail the arguments and evidence, analyzed through *Graham* and *Flores*, showing that sufficient evidence exists to support a Fourth Amendment claim of excessive force. The evidence shows that Jones suffered injuries resulting directly from Spikes' use of force that was clearly excessive to the need and the excessiveness of which was objectively unreasonable.

64.    Therefore, the Court should deny defendant's supplemental motion for summary judgement and supplemental motion to dismiss with regard to the issue of Fourth Amendment excessive force claims.

D.    Jones' Excessive Force and Unlawful Seizure Claims Are Controlled by the Fourth Amendment

65.    Plaintiff agrees with defendant with regard to excessive force and unlawful seizure claims in the course of an arrest, stop, or seizure, being analyzed under the Fourth Amendment.  All claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. *Graham v. Connor*, 490 U.S. at

395, 109 S. Ct. 1865, 1871, 104 L. Ed. 2d 443 (U.S.N.C. 1989). Pursuant to the Fourteenth Amendment, the State entity is not sovereignly immune to Jones' claims. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 59, 116 S. Ct. 1114, 1125, 134 L. Ed. 2d 252 (1996). Jones' claims involve the excessive force used in illegally seizing her person, not subsequent detention, therefore her claims are analyzed under the Fourth Amendment.

## IV.  CONCLUSION

66.    Jones has set forth a claim upon which relief could be granted and given Spikes fair notice of what her claim is and the grounds upon which it rests. Jones' claims against Spikes are individual claims.  Jones has provided enough evidence to satisfy Spikes' 12(b)(1) factual attack.  That evidence, when evaluated using the relevant authorities, establishes the existence of a genuine factual dispute such that a reasonable jury could return a verdict for plaintiff on the issues. The evidence shows that Spikes is not entitled to qualified immunity because her actions violated clearly established statutory or constitutional rights of which a reasonable person would have known and the actions were objectively unreasonable in light of clearly established law at the time of the incident. Jones has  provided sufficient facts and evidence to support a claim for excessive force under the Fourth Amendment.  In responding to issues defendant raised in her motion, Jones has provided enough evidence and authority to overcome Spikes' supplemental motion for summary judgment and supplemental motion to dismiss.

## V.  PRAYER FOR RELIEF

67.    Based on the evidence, authorities, and arguments presented in this response, plaintiff prays that the Court enter an order denying defendant's supplemental motion for summary judgment and supplemental motion to dismiss.

Respectfully submitted,

BUSH LEWIS, PLLC
595 Orleans Street, Suite 500
Beaumont, TX 77701
409/835-3521
409/835-4194 (Fax)

By: _____
       Kenneth W. Lewis
       Ken.L@bushlewis.com
       Texas Bar #12295300
       Stephen L. Townsend
       Stephen.T@bushlewis.com
       Texas Bar #24071539

ATTORNEYS FOR PLAINTIFF

CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and foregoing has been served on all counsel of record through the Court's electronic filing system, this 13th day of January, 2015.

_____
Kenneth W. Lewis

23