1

```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE EASTERN DISTRICT OF TEXAS
                          BEAUMONT DIVISION

CHRISTINE JONES             )
                            )
VS.                         )
                            )  CIVIL NO. 1:14-CV-00103
TAMARA SPIKES AND           )
BEAUMONT INDEPENDENT        )
SCHOOL DISTRICT POLICE      )
DEPARTMENT                  )
*************************************************
```

ORAL AND VIDEOTAPED DEPOSITION OF
DONALD JACKSON
January 14, 2015

*************************************************

ORAL AND VIDEOTAPED DEPOSITION OF DONALD JACKSON, produced as a witness at the instance of the plaintiff, and duly sworn, was taken in the above styled and numbered cause on January 14, 2015, from 3:34 p.m. to 5:21 p.m., before Melissa Girouard, CSR in and for the State of Texas, reported by machine shorthand recording, at the law offices of Bush Lewis, 595 Orleans Street, Suite 500, Beaumont, Texas, pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached therein.

EXHIBIT A

```
 1   arrest?
 2        A.  No, sir.
 3        Q.  Did you hear anybody tell her what she was
 4   charged with, if anything?
 5        A.  No, sir.
 6        Q.  Were -- did you hear any conversations between
 7   any police officers while you were there?
 8        A.  Yes, sir.
 9        Q.  Tell me about that.
10        A.  I was involved in the conversation with myself
11   and Officer Spikes and Sergeant Hall.  They were --
12   they -- when I say they, I mean Spikes and Hall -- were
13   looking to me for guiding -- guidance, as they often do.
14   They being the -- the department as a whole always
15   counted on me to answer the law enforcement questions
16   since I had so many experiences in the real world.
17        Q.  And who asked you what?
18        A.  Seemed like I recall Officer Spikes asking
19   me -- she didn't ask me that first, though.  Let me back
20   up.
21        I don't recall them asking me anything.
22        Q.  Were -- did you hear any discussion between any
23   of the officers there?
24        A.  Yes.
25        Q.  What did you hear?
```

Timestamps: 04:05 (line 5), 04:06 (line 10), 04:06 (line 15), 04:07 (line 20), 04:07 (line 25)

```
 1   Spikes make a telephone call to anybody?
 2        A.  No, sir.
 3        Q.  And you placed -- as I understand it, from what
 4   you've told me, you placed the handcuffed female --
 5        A.  Ms. Jones.
 6        Q.  -- Ms. Jones, into the unmarked police car?
 7        A.  Marked.
 8        Q.  Marked.  Okay.
 9        A.  Yes.
10        Q.  And was there any discussion at that -- that
11   location between the officers about leaving with
12   Ms. Jones at that time?
13        A.  Yes.  Officer Spikes said repeatedly that she
14   was injured.  She told that to Sergeant Hall several
15   times, that her back was hurting.  EMS was called.
16   Beaumont -- City of Beaumont EMS arrived.
17            During the discussion Sergeant Hall was asking
18   her what charge and asking me.  They didn't know.  They
19   were -- they didn't know what to charge the lady with.
20        Q.  So, at that point in time, she had been
21   arrested; but Ms. -- Officer Spikes didn't know what she
22   was charged with; is that correct?
23        A.  They're looking for me for guidance.
24        Q.  That's not my question.
25        A.  What's your question?
```

```
        1        Q.  My question is that at that point in time,
        2   she's been handcuffed, placed in the police car under
        3   arrest, but they don't know what she's arrested for; is
        4   that fair?
04:13   5              MS. KALCHTHALER:  Objection, form.
        6        A.  They didn't know what the proper charge should
        7   be.  He -- my sergeant didn't know, and he looked for me
        8   for answers.  He's like --
        9        Q.  (BY MR. LEWIS) Okay.  And what did you tell
04:13  10   them in response to them asking you what the proper
       11   charge was?
       12        A.  Based on the scenario that Spikes told Sergeant
       13   Hall in my presence, the -- the charge that would fit,
       14   that would lawfully fit, would be aggravated assault,
04:13  15   motor vehicle, and not a traffic accident, a crash -- a
       16   crash report, if she did it deliberately or
       17   intentionally, based on what Spikes said.
       18        Q.  And she was already under arrest, and you
       19   advised them that the proper charge would be aggravated
04:14  20   assault because it involved intentionally striking
       21   someone with a motor vehicle?
       22              MS. KALCHTHALER:  Objection, form.
       23              MS. BROUSSARD:  Objection, form.
       24          You can answer.
04:14  25        Q.  (BY MR. LEWIS) What -- was she under arrest at
```

```
 1    Q.  And then you later had a conversation with
 2  Officer Spikes?
 3    A.  Well, as far as -- I didn't have a conversation
 4  with Officer Spikes as to what she should or should not
 5  charge the lady with.  I didn't tell her what she should
 6  or shouldn't.
 7    Q.  But Officer Hall did?
 8        MS. KALCHTHALER:  Objection, form.
 9    Q.  (BY MR. LEWIS) Is that correct?  Did Officer
10  Hall have a conversation with her about what to charge
11  Mrs. Jones with?
12    A.  I'm not sure.  I had a conversation with
13  Sergeant Hall --
14    Q.  Yes.
15    A.  -- about what I would do or wouldn't do and by
16  me giving that arrest title -- I call it an arrest
17  title -- aggravated assault, that's not what I would
18  have done, but that would be the charge that would fit
19  the situation based on what was told to me.  There's a
20  difference.
21    Q.  And that would be assuming that the vehicle was
22  intentionally driven into Officer Spikes?
23    A.  Correct.  But she --
24    Q.  Go ahead.
25    A.  She was transported -- I think she was
```