IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| CHRISTINE JONES, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | |
| | § | C.A. No. 1:14-cv-00103 |
| TAMARA SPIKES *et al*, | § | |
| | § | |
| Defendants | § | |

**DEFENDANT BISD'S REPLY TO PLAINTIFF'S RESPONSE TO
DEFENDANT BEAUMONT INDEPENDENT SCHOOL DISTRICT'S MOTION FOR
SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant Beaumont Independent School District ("BISD" or "District") files its Reply to Plaintiff's Response to Defendant Beaumont Independent School District's Motion for Summary Judgment, and would show the Court as follows:

**I.**

1. Prior to filing this Reply, counsel for the District reviewed the Reply that Defendant Spikes filed with regards to her Motion for Summary Judgment [Docket No. 53]. Much of what the Plaintiff includes in her Response to the District's Motion for Summary Judgment is the same as what she included in her Response to Defendant Spikes' Motion for Summary Judgment. Defendant Spikes did a good job responding to the arguments made by the Plaintiff regarding her substantive legal claims (*i.e*. the excessive force and false arrest claims), and therefore the District will not repeat those arguments here, but instead incorporates them as if stated herein. The District writes separately on those issues only to emphasize a few points, and to address the issue of intent.

2.      Defendant Spikes argues correctly that Plaintiff's claim that she did not know that Defendant Spikes was a police officer is patently ridiculous, given the fact that it is undisputed (as can be seen in the video) that Defendant Spikes was wearing a Beaumont ISD police officer uniform, and engaged in acts that a reasonable person would normally associate with a police officer.  Plaintiff's claim that Officer Custer testified that "many people do not know that BISD police officers are actual officers" (Response, ¶ 49) takes that comment out of context; what Custer was actually saying was that most people think they are "rent-a-cops" and not "actual" police officers, not that they don't recognize them as BISD officers.  (Pl. Ex. 4, p. 68.)

3.      Plaintiff's repeated argument that she could not comply with Officer Spikes' directive to move her car, because there was "a gray vehicle a few car lengths ahead of her" (Response,¶ 7; *see also* ¶¶ 9-10), is also patently unmeritorious, because both the video and the pictures attached as Exhibit 2 to Plaintiff's Response clearly show that there are no vehicles in front of Plaintiff in her lane of traffic, and that the "gray vehicle" was not actually in Plaintiff's lane, but was instead parked on the grass off the shoulder of the road. (*See*, *e.g.,* Pl. Ex. 2A, 2G, 2H, 2I, 2J, 2L.)  Plaintiff's Exhibit 2A also shows that there was an open space (conveniently marked "Open Space" in the picture) just to the Plaintiff's right that she clearly could have pulled into, even if she could not have fully gotten her car parallel to the curb.  As the parties have previously noted, for purposes of ruling on summary judgment motion, the Supreme Court has instructed "courts to reject the plaintiff's description of the facts where the record discredits that description and instead consider 'the facts in the light depicted by the videotape.'"  *Poole* v. *Shreveport,* 691 F.3d 624, 631 (5th Cir. 2012) (internal quotation removed) *(citing Scott* v *Harris,* 550 U.S.372, 381 (2007)).  Both the video and the pictures submitted by the Plaintiff undisputedly show that there were no cars -- including the "gray car" -- in the lane of traffic in front of the Plaintiff.  Plaintiff's reasons for not wanting to move are obvious: after having

essentially cut in line by pulling into the left traffic lane, she did not want to lose her advantageous place right in front of the school.

4. Although Plaintiff claims in her response that Officer Spikes' testimony has been inconsistent, Plaintiff also leaves out parts of the story. For example, Plaintiff's affidavit would have you believe that after Spikes asked her to pull forward, she quickly pulled forward, and immediately attempted to get out of her car. (Pl. Ex. 1, ¶¶ 10-11.) However, she completely leaves out the fact that she did get her cell phone out to call her husband, and even rolled up her window on Officer Spikes so she could talk to her husband, all of which she admitted at her deposition. (BISD Ex. A, pp. 108-110.)

5. Primarily, the overriding problem with Plaintiff's theory of the case is that for the most part, it is entirely dependent on hindsight: *i.e.* her argument that because it was ultimately determined (according to her, at least), that she did not intend to assault Officer Spikes with her car, it must follow that her arrest was illegal, and that any force used against her was unreasonable. However, as the Supreme Court has noted:

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. ... With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment.

*Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872 (1989). While "intent" is obviously an important ultimate element in any criminal prosecution for aggravated assault, it is not an objective fact that is readily ascertainable to a reasonable officer on the scene, who in this case had to decide in a matter of seconds whether the fact that Plaintiff had just hit her with her car was really an accident, or if Plaintiff was mad at her for making her move and did it on purpose.

6.	Simply put, Officer Spikes was not required to believe Plaintiff's protestations of innocence, or to exhaust the possibility that she did lack the requisite intent, prior to effectuating her arrest. Plaintiff's argument that her lack of intent rendered her arrest unconstitutional has been rejected by numerous courts, including the United States Supreme Court. In *Baker v. McCollan*, 443 U.S. 137, 99 S. Ct. 2689 (1979) the plaintiff had been arrested on a narcotics charge. He protested that he was innocent and that the real criminal was his brother, who had somehow forged a driver's license and switched their pictures, which turned out to be true. The plaintiff was held in jail for three days before the authorities realized their error and released him. He brought a claim for a deprivation of liberty without due process of law under the Fourteenth Amendment, but the Supreme Court rejected his argument that his eventual innocence mandated a ruling in his favor:

> Respondent's innocence of the charge contained in the warrant, while relevant to a tort claim of false imprisonment in most if not all jurisdictions, is largely irrelevant to his claim of deprivation of liberty without due process of law. The Constitution does not guarantee that only the guilty will be arrested. If it did, §1983 would provide a cause of action for every defendant acquitted -- indeed, for every suspect released.

*Id*. at 145, 99 S. Ct. at 2695.  The plaintiff argued that the officer had a constitutional duty to investigate his claim of mistaken identity, but the Supreme Court disagreed: "given the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity ora  defense ***such as a lack of requisite intent***." *Id*. (emphasis added).

7.	In *Ricciuti v. N.Y.C. Transit Auth*., 124 F.3d 123 (2d Cir. 1997), the plaintiff had been arrested after he was accused of assaulting an off-duty New York City corrections officer at a Yankees game. The plaintiff vehemently argued that the officer had actually started the fight, and that he had only engaged in self-defense. Plaintiff claimed that his arrest was objectively

unreasonable because his loud protestations of innocence "should have made clear to Officer Lopez that plaintiff was acting in self-defense and therefore ***lacked the requisite intent to commit an assault***." *Id*. at 128 (emphasis added). Plaintiff argued that before arresting him, Officer Lopez should have conducted a more extensive investigation to determine who started the fight. The Second Circuit disagreed:

> Although Officer Lopez would have been entitled to believe Alfred Ricciuti's version of events rather than Watson's, he was not required to do so. Given Watson's version of events and his visible injuries, a competent police officer could believe it was objectively reasonable to arrest plaintiff for the assault that had been committed. The officer was not required to make a full investigation into plaintiff's state of mind prior to taking action. Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.

*Id*.

8.      In *Krause v. Bennett*, 887 F.2d 362 (2d Cir. 1989), the plaintiff claimed that he had been falsely arrested by the police for possession of a stolen stop sign, because he had tried to explain to the police officer that he had received the sign from a friend as payment for a job he had done. The evidence showed that the officer confirmed that the sign had been stolen from the county, but did not talk to the alleged friend about who had actually stolen the sign. The plaintiff argued that he could not have been prosecuted for the crime of theft, because "insufficient evidence existed [as to] his state of mind." *Id*. at 371.  The court agreed, but noted that "the question presented in the District Court was not whether Krause could have been convicted of possession of stolen property, but whether probable cause existed for Bennett to believe that Krause had committed that crime. Even if Krause had actually gone to trial and been acquitted, that result would have had no bearing on the determination of whether probable cause existed to arrest him." *Id*. at 370.  Noting that "it is impossible for a police officer to ascertain with any degree of certainty that a person for whom a warrant is sought possessed a particular state of

mind at the time of the commission of some act," *id*. at 371, the Second Circuit rejected the argument that it was the police officer's duty to establish the element of intent prior to arresting the suspect:

> A contrary holding would put an unfair burden on law enforcement officers. It would be unreasonable and impractical to require that every innocent explanation for activity that suggests criminal behavior be proved wrong, or even contradicted, before an arrest warrant could be issued with impunity. It is up to the factfinder to determine whether a defendant's story holds water, not the arresting officer. Once officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence.

*Id*.; *see also Torraco v. Port Authority of New York*, 539 F.Supp.2d 632 (E.D. N.Y. 2008).

9.  As the above cases show, while it might have been reasonable for Officer Spikes to just assume that Plaintiff had hit her with her car by accident, it was equally reasonable -- and obviously the safer course of action from the officer's perspective -- to assume that she had just been assaulted, and take action accordingly. Officer Spikes obviously could not see into the Plaintiff's mind, and given the objective facts she was not required to believe Plaintiff's story prior to arresting her. As the *Torraco* court noted, "the officer is entitled to make the arrest and allow a judge or jury to determine the sufficiency of the suspect's story." *Torraco*, 539 F.Supp.2d at 649. Under the above cases, the fact that the judicial system eventually determined that Plaintiff did not intentionally assault Officer Spikes is irrelevant to her constitutional claims.

10. Likewise, the fact that Officer Spikes did not immediately tell Plaintiff what she was being arrested for, or discussed with the other officers at the scene what the best charges would be, also does not violate the Constitution. In *Devenpeck v. Alford*, 543 U.S. 146, 125 S. Ct. 588 (2004), an officer who had responded to a stranded motorist call believed that the plaintiff, who had initially been helping the stranded motorists but who had fled when the officer approached, had been impersonating a police officer. When Sgt. Devenpeck arrived on the scene

to talk to the plaintiff, he noticed several suspicious police-like items in the plaintiff's car, and then realized that the plaintiff was tape recording their conversation. Devenpeck told the plaintiff that he was violating the Washington Privacy Act, but the plaintiff disagreed and protested that a state Court of Appeals decision, a copy of which he happened to have in his glove compartment, permitted him to record roadside conversations with police officers. Devenpeck arrested the plaintiff for a violation of the Privacy Act. A short while later, Devenpeck talked to a county prosecutor, and they discussed a number of possible criminal offenses that would be supported by the facts known to them. Plaintiff brought a claim for unlawful arrest under the Fourteenth Amendment, and the Ninth Circuit ruled in his favor. In doing so, the Court rejected the officers' argument that probable cause existed to arrest the plaintiff for the offenses of impersonating a law enforcement officer and obstruction, because the Ninth Circuit determined that those offenses were not "closely related" to the offense invoked by Devenpeck at the time he took plaintiff into custody. The Supreme Court reversed and ruled in favor of the officers, stating that "we find no basis in precedent or reason for this limitation." *Id*. at 152, 125 S. Ct. at 593. The Court held that because the arresting officer's state of mind is irrelevant to the existence of probable cause, "his subjective reason for making the arrest need not be the criminal offense to which the known facts provide probable cause." *Id*. The Court concluded, "[w]hile it is assuredly good police practice to inform a person of the reason for his arrest at the time he is taken into custody, we have never held that to be constitutionally required." *Id*. at 155, 125 S. Ct. at 595.

11. As discussed at greater length in the District's Motion for Summary Judgment, the undisputed *objective* facts in this case support a charge of aggravated assault, with only the *subjective* issue of intent to be determined. The fact that Officer Spikes did pause to discuss with

her fellow officers what the arresting charge should be based on those facts should be seen as a good practice, not as some sort of sinister unconstitutional behavior.

## II.

12. Plaintiff's Response still fails to show that the District had or engaged in a custom, policy, or practice of constitutional violations, including permitting excessive force or illegal arrests by its employees, that actually led to her injuries. The Fifth Circuit has noted that the plaintiff's description of the government's policy or custom and its relationship to the underlying constitutional violation cannot be conclusory, but must contain specific facts. *Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997). Plaintiff's argument that "BISD's customs, policies, and/or practices led to constitutional violations against Jones" -- the heading of Section C of her Response (page 26) -- makes no sense, because she immediately admits that "if followed, the BISD police manual policies would have prevented the constitutional violations against Jones." (Response, ¶ 76.) ***Plaintiff admits that the District's policies were both constitutional and effective.*** Plaintiff identifies two policies -- a policy prohibiting the use of unnecessary violence, and a policy that prohibits positioning officers in the direct path of moving vehicles to stop them (Response, ¶ 77) -- but she does not claim that these policies were somehow invalid, or themselves contributed to her injuries. She just claims that Officer Spikes failed to follow them. This does not create Section 1983 liability on the part of the District.

13. For the record, the District disagrees that Officer Spikes failed to follow the identified policies. The District's policies on use of force and firearms specifically state that "an officer may use any unauthorized weapon (or use any weapon in an unauthorized manner) if emergency circumstances make it necessary to do so," and that "Officers may draw or display a firearm when they have reason to fear for their own personal safety or the safety of others" (BISD Ex. C-1, p. 72, 75), and has been previously argued, Officer Spikes reasonably believed

this to be the case. The policy that states that officers shall not place themselves in the direct path of a moving vehicle to stop it simply does not apply to this case; Officer Spikes did not place herself in front of Plaintiff's car to stop it, but was standing there reading her license plate.

14. Likewise, Plaintiff has completely failed to show that Officer Spikes was deficiently trained, and that said deficiencies in her training actually caused any constitutional violations. Plaintiff states in conclusory fashion, "Spikes was deficiently trained and supervised," but she never explains how. As the Fifth Circuit has noted, for liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective." *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) (quoting *Benavides v. County of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992). "In this inquiry, mere proof that the injury could have been prevented if the officer had received better or additional training cannot, without more, support liability." *Id*. Plaintiff's only concrete allegation of poor training is that "Spikes was too poorly trained to know what to do after she pulled Jones from her vehicle" (Response, ¶ 79) -- but as discussed above, the fact that the officers discussed what specific charges best fit the facts in front of them is actually a good practice, not a constitutional violation.

15. Plaintiff relies heavily on the testimony of Officer Jackson in concluding that the district police officers in general failed to follow policies, but a review of Officer Jackson's testimony shows that it was incredibly broad and vague, and not directed at Officer Spikes in general, or this situation in particular. Plaintiff claims that "Officer Jackson testified that, during his time with the department, there was a custom within the department to not follow policies, especially when it came to training and supervision," citing to testimony on pages 67-68 and 71 of his deposition (Response, p. 9) -- but if you actually read those pages, what he really said was that he thought in general the length of the training program was inconsistent (pages 67-68). He

did say that he thought there was a "deficiency in their training program" (page 71), in response to a leading question, but that was based on his own experience training someone other than Spikes who he claimed was defiant and resistant to his training (this comes from pages 69 and 70 of the deposition, which Plaintiff conveniently omitted from her exhibit, but which are attached here as Exhibit A.)  In fact, Jackson admits that he was not even employed by the district at the time Spikes went through her training.  (Pl. Ex. 7, pp. 67-68.)  Any testimony by Jackson as to his general dissatisfaction with training in the District is insufficient to show that Spikes herself was poorly trained, or that such deficient training caused Plaintiff's injuries, both of which are required to support a constitutional failure to train claim.

### III.

For the foregoing reasons, as well as the reasons more fully developed in the District's Motion for Summary Judgment, Defendant Beaumont Independent School District respectfully requests that the court grant it summary judgment, dismiss all claims against it, and grant it such relief, both at law and in equity, to which as it has shown itself entitled.

Respectfully submitted,

**THOMPSON & HORTON LLP**

By: /s/ Christopher B. Gilbert
    Christopher B. Gilbert
    Attorney-in-Charge
    State Bar No. 00787535
    Frances R. Broussard
    State Bar No. 24055218

3200 Southwest Freeway, Suite 2000
Houston, Texas 77027
Telephone:  (713) 554-6744
Facsimile:  (713) 583-7698

**ATTORNEYS FOR DEFENDANT BEAUMONT INDEPENDENT SCHOOL DISTRICT**

## CERTIFICATE OF SERVICE

      I certify that a true and correct copy of the above and foregoing has been served on all counsel of record through the Court's electronic filing system, on January 29, 2015.

      Kenneth W. Lewis
      Stephen L Townsend
      Bush Lewis, P.L.L.C.
      595 Orleans Street, Suite 500
      Beaumont, Texas  77701
      *Attorneys for Plaintiff*

      James E. Byrom
      Kelley L. Kalchthaler
      Walsh, Anderson, Gallegos, Green & Trevino, P.C.
      10375 Richmond Avenue, Suite 750
      Houston, Texas  77042
      *Attorneys for Defendant, Tamara Spikes*

        /s/ Christopher B. Gilbert
      Christopher B. Gilbert