IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| CHRISTINE JONES § | |
| § | CIVIL ACTION NO. 1:14-CV-00103 |
| VS. § | |
| § | Judge Keith Giblin |
| TAMARA SPIKES and § | |
| BEAUMONT INDEPENDENT § | |
| SCHOOL DISTRICT POLICE § | |
| DEPARTMENT § | |

**PLAINTIFF'S SUR-REPLY TO DEFENDANT TAMARA SPIKES' REPLY TO PLAINTIFF'S OPPOSITION TO SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT AND SUPPLEMENTAL MOTION TO DISMISS**

## I. INTRODUCTION

For purposes of this entire sur-reply, plaintiff would direct the court to her response to Spikes' supplemental motion for summary judgment and supplemental motion to dismiss. (Doc. 51). The facts and arguments addressed in that response address defendant's reply in its entirety. Plaintiff files this sur-reply to address or clarify certain matters discussed in defendant's reply.

2.  Defendant's reply brief only serves to point out the disputes of material facts that should be submitted to and weighed by a jury.

3.  The depositions of Dispatcher Jada Day and BISD Officer Donald Jackson were taken since the filing of plaintiff's response.

## II. SPIKES UNLAWFULLY USED EXCESSIVE FORCE

4.  Evidence presented by Jones in her response and this sur-reply show that Spikes used force that (1) caused an injury to Jones (2) which resulted directly and only from the use of force that was excessive to the need and (3) the force used by Spikes was objectively unreasonable. *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir.2001) (quoting

*Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir.2000)).

    (1)    <u>Spikes' Actions Caused Injuries to Jones</u>

5.    An injury does not need to be "significant" to support an excessive force claim. *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir.2001). Substantial psychological injuries along with bruising are sufficient enough injuries to demonstrate the violation of a clearly established constitutional right. *Flores* at 398 *citing Dunn v. Denk*, 79 F.3d 401, 402 (5th Cir.1996).

6.    Officers Spikes and Custer handcuffed Jones. (Ex. 1, Custer Depo. 13:1-8) Jones suffered abrasions and pain in her knees and wrists, as well as an injury to her back. (Doc. 51, p.5) *Id.* The most serious injuries Jones suffered are emotional and psychological. *Id.* Having someone point a gun at her head while threatening to shoot her caused her to fear for her life. *Id.* Jones' injuries are significant enough to support an excessive force claim. Additionally, Spikes criminalized Jones' non-criminal conduct.

    (2)    <u>Spikes' Actions were Excessive to the Need</u>

7.    In her reply, Spikes attempts to fault plaintiff for discussing the different levels of force; focusing on the definition of deadly force. Jones' response analyzes Spikes' use of force as excessive, including the threat of deadly force and possible deadly force. (Doc.51, ¶48-55). As plaintiff plainly outlined in her response, even if the Court does not recognize threatening to shoot an individual as deadly force, it is clearly excessive to the need. (Doc. 51, ¶34-55).

8.    Spikes focuses on debunking the classification of her use of force as that of deadly force. (Doc. 53, p.5-8). Spikes admits that other circuits define similar use of force as a *threat of deadly force.* (Doc. 53, p.6).

9.  There is no evidence that Spikes reasonably believed Jones would cause death or serious bodily injury to her or another. Jones had parked her vehicle, was at a school, and her vehicle was surrounded by other vehicles. She was unarmed, and had complied with Spikes' instructions to move her vehicle. Spikes used force or the threat of force (pulling a gun and threatening to shoot) that had a substantial risk of causing death or serious bodily harm to Jones (and others). Arguably, Spikes unlawfully used deadly force in seizing Jones. At a minimum, Spikes used the threat of deadly force.

10. The force Spikes used (pointing a deadly weapon and threatening to shoot) could be considered deadly and the situation did not require the use of deadly force. Even if it does not rise to the level of deadly force, Spikes obviously used force by threatening deadly force that was excessive to the need.

11. The Supreme Court, in Graham v. Connor, established three factors for determining whether a particular use of force was "excessive to the need":

   a)  the severity of the crime at issue;

   b)  whether the suspect posed an immediate threat to police officers or civilians; and

   c)  whether the suspect was actively resisting arrest or attempting to evade arrest by fleeing the scene.

*Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

   *(a) Jones had not committed a crime*

12. The Fourth Amendment secures the right to be free from arrest without probable cause. *DeLeon v. City of Dallas*, 345 F. App'x 21, 23 (5th Cir. 2009)(*Citing Daniel v. Ferguson*, 839 F.2d 1124, 1129 (5th Cir.1988).

13. A reasonable officer would have known its violates the Fourth Amendment to deliberately provide false material information in an affidavit in support of a warrant or arrest. *See Hart v. O'Brien*, 127 F.3d 424, 448–49 (5th Cir.), abrogated on other grounds by *Kalina v. Fletcher*, 522 U.S. 118, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997).

14. Spikes never notified Jones she was under arrest or she was being charged with a crime. Spikes never notified Jones what charges were being brought against her or why she was being detained. (Ex. 2, Jones Depo. 16:23-17:13). Officer Custer did not recall anyone ever notifying Jones that she was under arrest. (Ex. 1, Custer Depo. 15:1-20). Officer Jackson testified that Jones had been put in the police car, but not put under arrest or notified of charges against her. (Ex. 3, Jackson Dep. 28:25-29:5). As Jones sat in the police car, she asked the police officers what she had done. (Ex. 3, Jackson Dep. 28:17-20). Jackson recalled being asked by Spikes and their supervisor, Sergeant Hall, on what to do. (Ex. 3, Jackson Dep. 29:5-16). Jackson advised Hall, their supervisor, that he would not arrest her for aggravated assault. (Ex. 3, Jackson Dep. 61:1-23).

15. Jones was charged with the crimes of aggravated assault against a public servant and a misdemeanor failure to identify. At the time of the incident, Spikes did not know if Jones had even committed a crime. (Ex. 3, Jackson Dep. 29:5-16). Spikes asked for Jones' driver's license, but Spikes walked away from Jones before she could give her license to Spikes. (Ex. 2, Jones Depo. 111:1-15). Spikes never advised Jones she had committed a crime. She had not been put under arrest or notified of charges against her. (Ex. 3, Jackson Dep. 28:25-29:5). When conferring with Jackson and Hall on what to do, Spikes did not claim that Jones had steered into her. (Ex. 3, Jackson Dep. 32:15-20).

16.     In her sworn declaration, Spikes fails to mention whether she ever notified Jones she was under arrest.  (Doc. 48-2, p.1-4). Spikes only mention of arrest is that, "at some point" she claims for the first time that she contacted her supervisor, Sergeant Payne, to ask whether she should arrest Jones, yet she fails to indicate when.  (Doc. 48-2, p.4). Jones did not find out the charges against her until after she had been booked at the jail, and it was not Officer Spikes who informed her. (Ex. 2, Jones Depo. 50:12-51:19). Without intent to assault, there cannot be an assault charge.  (Ex. 1, Custer Depo. 38:19–39:12). Spikes filed a lawsuit seeking a monetary award against Jones claiming Jones hit her negligently rather than intentionally well before the criminal charges against Jones were dismissed. (Ex. 4, Petition; Ex. 5, Motion to Dismiss ). Spikes was aware there was no intent, yet seized and brought charges on Jones anyway.

17.     Video evidence shows Jones turned her vehicle *away* from Spikes in order to pull to the open parking space. Spikes instructed Jones to pull forward into the open space on Jones' right. With Spikes on the left (driver's side) of Jones' vehicle, Jones notified Spikes she was about to pull into the newly opened parking spot on the right, turned her wheels away from Spikes, pulled into the open parking spot, and stopped her vehicle. Jones had committed no crime. Even after Jones was handcuffed and placed in a patrol car, Spikes and the other officers did not know if she had committed an offense at all, let alone one severe enough to have a gun pulled on her and her life threatened. Jones did not commit (nor was it alleged she committed) an offense severe enough to have a gun pulled on her and pointed at her head while threatened to be shot. She did not commit an offense requiring her to be pulled out of her car at gunpoint in front of her children, handcuffed, and sent to jail.

> (b) *Jones posed no immediate threat to police officers or civilians*

18. Jones' response provides the evidence, along with the authorities, showing that she posed no immediate threat to police officers. (Doc. 51, p.15). Jones had pulled into an enclosed space, as Spikes had instructed her to. She complied with the orders she was given, and she showed no signs of having any weapons. (Ex. 1, Custer Depo. 12:22-13:14).

> (c) Jones did not actively resist arrest or attempt to evade arrest by fleeing the scene.

19. Once Jones had pulled into the spot Spikes had instructed her to, she parked her vehicle. There were vehicles behind and in front of her. The video shows Jones exhibiting zero signs of attempting to flee or evade arrest. (Doc. 51-6). Once Jones recovered from the shock of having someone point a gun at her and threaten to shoot her, she complied with the instructions of the officers. (Ex. 1, Custer Depo. 12:22-13:14)

20. The standard is an objective one – whether the use of force was "'objectively reasonable' in light of the facts and circumstances confronting [the officer]" at the time force was employed. *Graham*, 490 U.S. at 397. Spikes did not believe that Jones posed a threat of imminent danger yet she went to the highest use of force and threatened Jones with a deadly weapon.

21. Analyzing Spikes' actions in light of the facts confronting her, at the time, Spikes did not know if Jones had even committed a criminal violation. Even if Spikes felt Jones had committed a violation that required arrest, she chose the most life threatening method available to her. She pulled a gun and threatened another human being's life. As she pointed her gun at Jones, children could be seen directly in her line of fire.

      (3) <u>The force used by Spikes was objectively unreasonable</u>.

22.    Dispatch records show that Spikes arrived at Vincent Middle School for traffic duty at 15:40 and only eight minutes later (at 15:48) had managed to escalate a minor traffic dispute into a drawn gun situation and created so much commotion that BISD police department emergently dispatched seven officers to the scene to assist Spikes in handling an unarmed, non-confrontational, quiet parent. (Ex. 6, Day Depo. 48:8-17; Ex. 7 ¶ 2-14).

23.    Jones' actions were not criminal. The reactions by the officers arriving were in response to Spikes' overreaction. Once Spikes realized she had stepped over the line, Spikes searched for an excuse for her actions. After the event, Spikes did not know if Jones had committed a crime. As Jones sat in a police car asking officers what she had done, Spikes stood with her supervisor and asked the same question. At some point after the escalation, she discussed the event with her training officer, Eric Payne, who advised her to arrest Jones. (Doc. 48-2, p.4). Spikes knew at that time, and later when she filed a negligence lawsuit against Jones, that Jones did not possess the criminal intent to charge her with a crime; yet she chose to continue with her story that Jones intended to assault her.

24.    As Jones outlined in her response, Spikes violated the polices of BISD in arresting and seizing Jones. (Doc. 51, ¶21-23, ¶50-55). Her user of force was in violation of those polices. *Id*. Her actions, when compared to what other officers in her department would have done, were objectively unreasonable. Seizing someone and not notifying them of why you are arresting them is objectively unreasonable according to BISD Officer Custer. (Ex. 1, Custer Depo. 49:2-16). BISD Officer Custer admitted it is inappropriate to *draw* a handgun outside of a school with students, parents, and school personnel present and

pace back and forth with the gun drawn. (Ex. 1, Custer Depo. 25:19-25). When viewed from the objectiveness of her fellow officer, her actions were unreasonable.

### III. SPIKES' STATEMENTS ARE UNRELIABLE

25. Contrary to what the video shows, Spikes, in her sworn declaration, states Jones turned the steering wheel towards her. (Doc. 48-2, p.3). After Jones pulled up, Spikes' declaration states that Jones was digging in her purse, so she thought she had a gun. (Doc. 48-2, p.3). Jones did not reach in her purse. (Ex. 2, Jones Depo. 50:12-51:19). In her report shortly after the incident, Spikes states she had drawn her weapon *before* she even noticed Jones had a purse on her driver seat. (Ex. 8, BISD0002-3). The video shows Spikes with her gun drawn and stalking behind Jones' vehicle while a school employee talks with Jones and apparently Spikes perceives no threat from Jones and Spikes does not intervene to "protect" the employee. (Doc. 51-6). When Officer Custer arrived, he did not see any indication that Jones had a weapon. (Ex. 1, Custer Depo. 12:22-13:14).

26. Spikes statement indicates she and Officer Custer had difficulties getting Jones to comply with their commands. (Doc. 48-2, p.3). Officer Custer testified that Jones complied with their commands and got down on the ground. (Ex. 1 Custer Depo. 13:17–14:13)

27. Spikes states she was injured during the event. (Doc. 48-2, p.3). When asked at the scene, Spikes told the firemen she was not hurt. (Ex. 2, Jones Depo. 153:24-154:9). The video shows Spikes walking around without any difficulty after being allegedly hit by Jones' vehicle. (Doc. 51-6). Officers Jackson and Custer testified that she did not appear injured. (Ex. 3, Jackson Dep. 30:7-14 & Ex. 1, Custer Depo. 60:8-9)

28. After Jones had been booked, Spikes filled out an Arrest Affidavit. (Ex. 9, BISD0011). In the affidavit, she again stated Jones turned into her, and she swears that

8

there was probable cause for aggravated assault against a public servant and failure to identify. (Ex. 9, BISD0011). Without intent to assault, there cannot be an assault charge. (Ex. 1, Custer Depo. 38:19–39:12). On September 19, 2013, Spikes filed a lawsuit seeking a monetary award against Jones claiming Jones was negligent. (Ex. 4, Petition). Spikes' claims against Jones are based on negligence, not the intentional tort of assault. (Ex. 4, Petition). On November 20, 2013, Jones was called to trial in the matter of the charges of assault against a public servant (Ex. 5, Motion to Dismiss) and the charges were dismissed. As a defendant in this case, Spikes claims that Jones intentionally assaulted her. However, as a plaintiff seeking monetary relief from Jones, Spikes claims no intent on Jones' part, only negligence.

### IV. SPIKES NEVER IDENTIFIED HERSELF AS A POLICE OFFICER

29. BISD Officer Custer admitted that many people do not think the BISD police officers are actual police (Ex. 1, Custer Depo. 68:6-15) and, in addition to police carrying radios, administrators at the Vincent Middle School campus had radios of their own. (Ex. 1, Custer Depo. 32:2-33:3). The school also had a public safety officer, a non-police officer that was a security guard. (Ex.3, Jackson Dep. 27:14-25). All Jones could see was a name tag that said, "Spikes." (Ex. 7, ¶ 4; Ex. 2, Jones Depo. 98:10-13).

30. After having been threatened to be shot with a gun pointed at her and getting handcuffed and put into a police vehicle, a person could, in hindsight, realize that Spikes was a police officer. Given that other non-police "officers" patrol the school, non-police officers carrying radios patrol the school, Spikes wore a vest displaying only her last name, and the fact most of the public does not realize BISD officers are actual police officers; it is not unreasonable for a person in line picking up their child at school to not recognize

9

Spikes as a police officer; especially if she never identified herself as one.

## V.  JONES PROBABLY DID NOT HIT SPIKES

31. Defendant has mis-characterized Jones' testimony as it relates to whether her vehicle made contact with Spikes. Jones' testified that, at the time of the incident, she did not think she hit Spikes. (Ex. 2, Jones Depo. 196:4-9). After watching the video in her deposition, she testified that Spikes reacts as though she was hit. *Id.* The video does not show actual contact between the vehicle and Spikes; only her reaction. (Doc. 51-6). Spikes contends a black streak on Jones' car is proof of contact, but Jones testified this black mark was on the vehicle before the incident. (Ex. 2, Jones Depo. 78:19-79:1).

32. Even if Spikes was hit by Jones' mirror, Spikes had placed herself in its path and any such accidental impact was by far too insignificant to justify escalation to use or threaten the use of deadline force by Spikes.  Jones advised Spikes she was pulling into the open parking spot to comply with Spikes' command.  Spikes cannot put herself in a position to get hit by a vehicle, tell someone to move the vehicle, and then claim to have the authority to arrest someone for incidental contact from the mirror of a vehicle turning away from her – if Spikes was even struck by the mirror.  Spikes' actions were unjustified and unrelated to circumstances of the situation.

## VI.  CONCLUSION

33. In determining whether there is a genuine dispute of material fact that prevents summary judgment, a court must consider all evidence in the light most favorable to plaintiff as the nonmovant. *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1236-37 (10th Cir. 2002). The court must also resolve all reasonable doubts about the facts in favor of plaintiff as the nonmovant. *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 455-56 (5th

Cir. 2005). Jones had produced enough evidence in her response and this reply to create a genuine dispute of material fact. In considering the evidence in favor of the plaintiff as the nonmovant, the Court should deny Spikes' motion for summary judgment.

        Respectfully submitted,

        BUSH LEWIS, PLLC
        595 Orleans Street, Suite 500
        Beaumont, TX 77701
        409/835-3521
        409/835-4194 (Fax)

By: _____
        Kenneth W. Lewis
        Ken.L@bushlewis.com
        Texas Bar #12295300
        Stephen L. Townsend
        Stephen.T@bushlewis.com
        Texas Bar #24071539

        ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

    I certify that a true and correct copy of the above and foregoing has been served on all counsel of record through the Court's electronic filing system, this 30th day of January, 2015.

_____
Kenneth W. Lewis