IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| CHRISTINE JONES | § § | |
| VS. | § § | CIVIL ACTION NO. 1:14-CV-00103 |
| | § | Magistrate Judge Keith Giblin |
| TAMARA SPIKES and BEAUMONT INDEPENDENT SCHOOL DISTRICT POLICE DEPARTMENT | § § § § § | |

**PLAINTIFF'S SUR-REPLY TO DEFENDANT BEAUMONT INDEPENDENT SCHOOL DISTRICT'S REPLY TO PLAINTIFF'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT**

1.  Plaintiff, Christine Jones (Jones), incorporates the evidence, authorities, and arguments presented in her response (Doc. 52) in this sur-reply to defendant Beaumont Independent School District's (BISD) reply.

**I.
SPIKES UNLAWFULLY USED EXCESSIVE FORCE**

To succeed on an excessive force claim, Jones must show an injury which resulted directly from Spikes' use of force that was excessive to the need and objectively unreasonable. With school children in the line of fire, Spikes decided to point her weapon at Jones and threaten to shoot before forcing Jones to exit her vehicle, lie on the ground, and applying handcuffs. Was Spikes' use of force excessive?

2.  Yes. Jones suffered both physical and mental injuries as a result of Spikes' actions. Other BISD officers have stated that pulling her weapon out at the school with children in the line of fire is objectively unreasonable. In determining if Spikes' force was excessive to the need, the fact finder looks to the severity of the crime at issue; if Jones posed an immediate threat; and if Jones was actively resisting or evading arrest by fleeing the scene. Spikes' use of force was excessive to the need.

3.  To succeed on an excessive force claim, a plaintiff bears the burden of showing an

injury which resulted directly and only from the use of force that was excessive to the need and that the force used was objectively unreasonable. *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir.2001).

4.      Spikes' anger began when Jones turned into the student pickup line from the left, even though it was not a traffic violation and there were no signs to indicate from which way to turn. (Doc. 52, ¶13). The anger intensified when she asked Jones to move forward and Jones could not do so. Jones called her husband, which further incensed Spikes to the point Jones' husband could hear Spikes yelling over the phone. (Ex. 1, Jones Depo. 106:18-11:25). In her reply, Spikes attempts to place this phone call at the point in time *after* Jones moved her vehicle forward, but in the time-line of events, this call happened *before* she pulled forward. *Id.* By the time a spot had become available, Spikes was infuriated. Jones notified Spikes she was going to move up and did so. (Doc. 52, ¶13). The video does not show any contact between Spikes and Jones' vehicle. (Doc. 52, Ex. 6). Spikes does appear to fall down as though she has been hit, reminiscent of a flopping basketball player. *Id*. Jones pulled to the side and parked. (Doc. 52, p. 3). Spikes, already boiling over with anger and aggravated by Jones, allowed her emotions to take control over her better judgment. She drew her pistol with students in her line of fire. She went to Jones' vehicle, pointed the gun at her, and threatened to shoot. (Doc. 52, ¶13-14). Spikes and Officer Custer secured Jones on the ground, and brought her to a police car. (Doc. 52, ¶15)

5.      Pointing a gun at a suspect and threatening to shoot is a threat of deadly force. (Doc. 52, p.15). The display of weapons, and the pointing of firearms directly at persons inescapably involves the immediate threat of deadly force. *Holland ex rel. Overdorff v.*

*Harrington*, 268 F.3d 1179, 1192 (10th Cir. 2001). Actions permissible in controlling a riotous mob or in dealing with a life-threatening situation might weigh differently when taken against a peaceful pedestrian. *Shillingford v. Holmes*, 634 F.2d 263, 265 (5th Cir. 1981), abrogated by *Valencia v. Wiggins*, 981 F.2d 1440 (5th Cir. 1993).

6. Jones' response details the arguments and authorities with respect to injuries sustained from the unlawful seizure. (Doc. 52, p.16). The Fifth Circuit does not require significant injuries and recognizes substantial psychological injuries. *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir.2001). Jones' injuries are significant enough to support an excessive force claim. (Doc. 52, p.16).

7. Spikes' use of force was objectively unreasonable. BISD Officer Custer's testimony confirms that Spikes' actions were objectively unreasonable. (Doc.52, Ex.4, Custer Depo. 25:19-25). Spikes' violation of BISD polices not only demonstrates the customs and practices of not following policies, but her violation of policies substantiates the objective unreasonableness of her actions. (Doc. 52, p.6-7, 19-22).

8. Jones' response provides sufficient evidence satisfying the *Graham* factors establishing Spikes' use of force was excessive to the need. *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Jones incorporates that evidence, relevant authorities, and arguments presented in her response. (Doc. 52, p 2-10,15-22).

9. Spikes threatened Jones with deadly force. Jones had not violated any laws, she posed no immediate threat to officers or civilians, and had not attempted to evade arrest. Jones had followed Spikes' instructions to pull forward. Jones did not steer into her, and as the evidence presented in Jones response demonstrates, Spikes knew at the time of the incident that Jones did not intentionally hit her. (Doc. 52, p. 8-12). The investigator from

3

BISD, Officer Moore, testified that he did not see Spikes get hit in the video. Moore stated the only evidence he had indicating Spikes had been hit had been provided by Spikes herself. (Ex. 2, Moore Depo. 23:6-24:5). Jones' response, supplemented with this sur-reply, evaluates the evidence using the relevant authorities and makes it clear: Spikes used unlawful excessive force when seizing Jones.

## II.
## SPIKES UNLAWFULLY SEIZED & ARRESTED JONES

The Fourth Amendment secures the right to be free from arrest without probable cause. Probable cause cannot exist where the affidavit supporting a warrant contains material false statements, omissions that are deliberate falsehoods, or a reckless disregard for the truth. Did Spikes violate the Fourth Amendment by seizing and arresting Jones based on Spikes' false statements and reckless disregard for the truth?

10.  Yes. Spikes' affidavit for arrest of Jones contains facts she knew were false and for crimes she knew Jones did not have the intent to commit.

11.  Spikes' reply discusses Second Circuit cases in an attempt to validate her arrest and seizure of Jones. (Doc. 58, p.4-6). Those Second Circuit cases are distinct from the case before this Court. In *Ricciuti,* after a fight at a Yankees game, the arresting officer did not witness the alleged crimes and based his probable cause on what other witnesses said. *Ricciuti v. N.Y.C. Transit Auth*., 124 F.3d 123 (2d Cir. 1997) The arrest in *Krause* took place after a warrant was issued days after stolen property was found in the arrested individual's home. *Krause v. Bennett,* 887 F.2d 362 (2d. Cir. 1989). The Supreme Court case Spikes cites, *Baker,* analyzes violations of Fourteenth Amendment in an arrest and detention done pursuant to a warrant issued by a magistrate. *Baker v. McCollan*, 443 U.S. 137, 145, 99 S. Ct. 2689, 2695, 61 L. Ed. 2d 433 (1979). *Baker* does require that probable cause be determined by judicial officer either before or promptly after arrest. *Id.*

12. Spikes also cites *Devenpeck v. Alford, 543 U.S. 146, 155, 125 S. Ct. 588, 594, 160 L. Ed. 2d 537 (2004)*. On page seven of her reply, Spikes quotes from *Devenpeck,* "while it is assuredly good police practice to inform a person of the reason for his arrest at the time he is taken into custody, we have never held that to be constitutionally required." *Devenpeck* at 595. Spikes failed to quote the footnote cited at the end of that statement: "Even absent a requirement that an individual be informed of the reason for arrest when he is taken into custody, he will not be left to wonder for long." *Devenpeck* at 595n.3(*citing County of Riverside v. McLaughlin*, 500 U.S. 44, 53, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991)). *Devenpeck* does not stand for the premise that probable cause is not needed for an arrest or that a person being arrested does not need to be informed of the reason for the arrest.

13. Not one case cited by Spikes negates the requirement of probable cause or allows for probable cause based on the officer's false statements, deliberate falsehoods, or reckless disregard for the truth. The Fourth Amendment secures the right to be free from arrest without probable cause. *DeLeon v. City of Dallas*, 345 F. App'x 21, 23 (5th Cir. 2009)(*Citing Daniel v. Ferguson*, 839 F.2d 1124, 1129 (5th Cir.1988). Probable cause cannot exist where the affidavit supporting a warrant contains material false statements or omissions that are deliberate falsehoods or evidence a reckless disregard for the truth. *Deleon* at 23 (*Citing Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)). A police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest. *City Of St. Petersburg v. Austrino*, 898 So. 2d 955, 959 (Fla. Dist. Ct. App. 2005)

14. Jones' response outlines the evidence and authorities establishing Spikes recklessly

disregarded the truth and did not have probable cause to arrest Jones. (Doc. 52, p.2-12, 22-25). Spikes charged Jones with aggravated assault against a public servant and failure to identify giving false/fictitious information in violation of Texas Penal Code 38.02(b). (Doc. 52, Ex.10).  As discussed in Jones' response, Jones did not have the intent required to commit aggravated assault. (Doc. 52, p. 22-25).  Spikes' probable cause affidavit states Jones turned into her vehicle into Spikes. (Doc. 52, Ex.10) Jones did not intentionally swerve her vehicle into Spikes; quite the opposite, she turned away from Spikes and proceeded to pull forward as Spikes instructed. (Doc. 52, p. 22-25). The video proves Spikes' affidavit for arrest contained material false statements and deliberate falsehoods. (Doc. 52, Ex.2 E&F). Spikes actions after putting Jones into a police car indicate she did not have probable cause to arrest Jones. (Doc. 52, p. 22-25). Davita Douglas, a school employee, gave a statement to Moore declaring that Jones did not intentionally hit Spikes. (Ex. 3, Douglas' Statement BISD0009). Moore, the BISD officer investigating the scene testified he did not see the assault in the video and witnesses he interviewed did not see Jones intentionally hit Spikes.  (Ex. 2, Moore Depo. 21:9-22:6, 23:6-24:5).

15.     In her factual reasons for probable cause, Spikes swears she asked for identification from Jones before she was allegedly hit by Jones' vehicle.  (Doc. 52, Ex.10)  Spikes' sworn statement (Doc. 48-2) and sworn probable cause affidavit (Doc. 52, Ex.10) fail to provide any facts indicating Jones provided false or fictitious information. Spikes' probable cause affidavit does not state she asked for identification after seizing and arresting Jones.  (Doc. 52, Ex.10)

16.     Texas Penal Code § 38.02(b), the offense Spikes charged Jones with, states:

>   (b)     A person commits an offense if he intentionally gives a false or fictitious

    name, residence address, or date of birth to a peace officer who has:
    (1) lawfully arrested the person;
    (2) lawfully detained the person; or
    (3) requested the information from ...witness to a criminal offense

17. Spikes' probable cause affidavit does not state anything about Jones providing false or fictitious information at all, let alone after arrest or being detained. (Doc. 52, Ex.10).

18. Spikes' factual reason for probable cause does not state she even asked for identification after she lawfully arrested or detained Jones, or that Jones failed to provide identification after being lawfully arrested. (Doc. 52, Ex.10).

19. A reasonable person surely would realize that "framing" someone for a crime that she did not commit deprives that person of her constitutional rights. *Young v. Biggers*, 938 F.2d 565, 570 (5th Cir. 1991). Jones had not committed either of the crimes Spikes charged with. Spikes knew at the time of the incident that Jones had not committed the crimes. Her affidavit for probable cause, filled out after arresting Jones, contains false or fictitious information and evidences a reckless disregard for the truth. Spikes, after realizing she had escalated the situation, framed Jones to protect her own interests.

### III.
### BISD'S CUSTOMS & POLICIES

BISD is liable under § 1983 if a policy or unofficially adopted practice or custom was a moving force in the violation of Jones' constitutional rights. BISD Police Department has policies, but well-established practices and customs within the department allow for officers to disregard those polices. Was the unofficially adopted practice and custom of not following those polices a moving force in the violation of Jones' constitutional rights?

20. Yes. Evidence shows BISD police department adopted the practice of not following polices. That customary practice led to the violation of Jones' constitutional rights.

21. In its reply, BISD continues its misguided argument regarding the sufficiency of its policies. It states that plaintiff admits that if the policies were followed, there would be no

7

liability on the part of BISD. (Doc. #58, p.8). Somehow, BISD makes the leap that its policies were constitutional and effective, even arguing plaintiff agrees. *Id.* Plaintiff's response did not state she believed the policies were effective. (Doc. 52, p.26). BISD has polices. The problem is: BISD does not enforce the polices, BISD does not provide the policies to its officers, and custom within the BISD police force is to bypass or neglect the polices. Jones' response provided the Court with enough evidence and authority to allow a fact finder to comfortably find that adopted practice and customs in the BISD police force led to the constitutional violations of Jones. (Doc. 52, p.26-27).

22. As discussed above, Officer Moore investigated the incident. His investigation found evidence contradicting the statements Spikes provided in her probable cause affidavit. Although he had evidence that Jones had not committed the crimes, Moore, following the customary practice of the department, forwarded the charges to the district attorney without question. (Ex. 2, Moore Depo. 41:11-42:24). The customs also evidence a fault in the supervisory chain of command, discussed below. Moore admitted the facts Spikes provided on the probable cause affidavit did not meet what the evidence showed. Had Moore followed policy and not customary accepted BISD practice, he would have recognized Spikes' violation of malicious prosecution (Doc. 52, Ex. 5 p.BISD00044), unnecessary and excessive violence, and arrest procedures (Doc. 52, Ex. 5 p.BISD00085). Officer Hall, now the Chief of Police of BISD, admitted the written policies are only as effective as their enforcement, and if they are not enforced they are not useful. (Ex. 4, Hall Depo. 11:15-24). In fact, Hall is now trying to change the culture within the department to make the department more accountable for its actions and instill integrity and transparency. (Ex. 4, Hall Depo. 4:13-7:17). Hall's testimony is representative of the fact that BISD

officers do not know the polices.  For example, he did not realize that BISD had policies for radio dispatch procedures, which he stated were customarily not followed.  (Ex. 4, Hall Depo. 13:3-16:16 & Ex. 6, BISD000133-137). Hall admitted that BISD's reputation for following polices is not good.  (Ex. 4, Hall Depo., 9:11-10:10).  The customary practice of not following policies and procedures led to the constitutional violations against Jones.

## IV.
## BISD'S FAILURE TO SUPERVISE, DISCIPLINE, AND TRAIN RESULTED IN CONSTITUTIONAL VIOLATIONS TO JONES

BISD is liable under § 1983 for failure to train or supervise if the failure was done with deliberate indifference, and a causal link exists between the failure to train or supervise and the violation of Jones' rights.  BISD customary practice was to not completely train new officers and not supervise them; but allow them to use their own discretion and not review their decisions. Did BISD customary practices with regards to training and supervising lead to the violation of Jones' constitutional rights?

23.    Yes. The customary practice ingrained at the BISD police department and followed by supervisors on May 2, 2013 was to not question anything, not provide supervision, and to  allow  the  officers  they supervise to make their own decisions and choices without repercussions.   This ingrained custom led to the constitutional violations of Jones.

24.    The only evidence Moore found of criminal violations was supplied by Spikes.  (Ex. 2, Moore Depo. 23:6-24:5). Even after his investigation at the scene showed evidence contrary to what Spikes stated, he allowed Spikes to later fill out a probable cause affidavit stating facts in contrast with the evidence.  Moore testified, in following the customs of the department,  he  supplied  his  information  to  the  district  attorney  and  would  not  review Spikes'  probable  cause  affidavit.   Hall,  Spikes'  supervisor  at  the  time,  testified  the customary practice of supervisors would be to leave the decision to review the probable cause affidavit to the detective (Moore).  (Ex. 4, Hall Depo., 29:7-32:4).   Hall stated that,

9

as a supervisor, he left the decisions to the officers he supervised and hoped they did the right thing. *Id.* Officer Payne testified the supervisor should have reviewed the charges. (Ex. 5, Payne Depo. 123:14-124:8). Hall did not do, nor was he aware, of any internal investigation into Spikes' actions in the event. (Ex. 4, Hall Depo., 27:18-28:3). Following BISD customary practice, nobody was sure who was supposed to review Spikes' actions.

25. Spikes claimed Officer Payne advised her to arrest Jones. (Doc. 48-2). Payne testified that he did recall advising her. (Ex. 5, Payne Depo. 123:2-13). Payne was Spikes' training officer. As Jones discussed in her response, Payne lacked the qualifications.(Doc. 52, p.9-10). Jones' response provides evidence showing the lack of training BISD gave new officers. *Id.* Contrary to what his sworn statement said, Payne testified Spikes did not complete the entire training program. (Ex. 5, Payne Depo. 111:20-113:12).

26. Supervisors at BISD Police Department followed the mantra of do not question anything. They did not provide supervision, opting to allow the officers to supervise themselves. Given the insufficient training BISD offered its officers, it should have been no surprise to BISD that Spikes would have acted as she did and that her supervisors would not have corrected it. Her actions, due in part to her lack of training and supervision, and the ratification of those actions by her supervisors resulted in violations of Jones' constitutional rights.

## V.
## CONCLUSION

27. Jones has provided more than sufficient evidence showing Spikes used unlawful excessive force when seizing Jones  The evidence establishes Spikes based her probable cause on untruthful and false facts.  BISD customary practice of not following policies and

its failure to supervise, discipline, and train Spikes led to constitutional violations against Jones. Jones has provided enough evidence, when considered in the light most favorable to Jones as the nonmovant, to overcome BISD's motion for summary judgment.

        Respectfully submitted,

        BUSH LEWIS, PLLC
        595 Orleans Street, Suite 500
        Beaumont, TX 77701
        409/835-3521
        409/835-4194 (Fax)

By: _____
        Kenneth W. Lewis
        Ken.L@bushlewis.com
        Texas Bar #12295300
        Stephen L. Townsend
        Stephen.T@bushlewis.com
        Texas Bar #24071539

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

    I certify that a true and correct copy of the above and foregoing has been served on all counsel of record through the Court's electronic filing system, this 9th day of February, 2015.

_____
Kenneth W. Lewis